United States District Court
Southern District of Texas
FILED

JUL 2 5 2002

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

EUGENIO REYNA-MONTOYA,                 )
                                       )
v.                                     )     c.a. B-02-144
                                       )
AARON CABRERA,  INS                    )
   ACTING DIRECTOR, HLG/DO and         )
                                       )
JOHN ASHCROFT, ATTORNEY                )
   GENERAL OF THE UNITED STATES.       )
_____)

## PETITION FOR WRIT OF HABEAS CORPUS

Eugenio Reyna-Montoya, ("Mr. Reyna"), by and through the undersigned, files the instant Petition for Writ of Habeas Corpus, under 28 U.S.C. §2241, and *INS v. St. Cyr*, 121 S.Ct. 2271 (2001).

### I.  JURISDICTION AND VENUE

1.  Petitioner Eugenio Reyna-Montoya is under an administratively final order of removal (Petitioner's Exhibits A and B, incorporated by reference), and is detained by Respondents at the Port Isabel Service Processing Center, within the jurisdiction of this Court .

2.  Respondent Cabrera maintains his offices, and Petitioner's removal proceedings were conducted, in Cameron County, Texas, also within the jurisdiction of this Court.

### II.  THE PARTIES

3.  Eugenio Reyna-Montoya has been a lawful permanent resident, ("LPR"), since 1981, when he was eight years old.

4.  Aaron Cabrera is Acting Director HLG/DRO of the Immigration and Naturalization Service, and is sued in his official capacity only.

5.  Respondent John Ashcroft is the Attorney General of the United States.  He is also sued in his official capacity only.

### III.  THE FACTS

6.  Eugenio Reyna is a native and citizen of Mexico. He entered the United States as a lawful permanent resident on March 8, 1981, and has resided here continuously since that date.  Mr. Reyna's entire family is lawfully in the United States. He has a history of steady employment, and has other significant equities.

7.  On or about January 7, 2000, Mr. Reyna was charged in Brooks County, Texas, with the offense of (simple) possession of marijuana.  On or about November 1, 2001, pursuant to a plea bargain, he was granted deferred adjudication, and placed on probation for a period of three years.  After leaving Court, Mr. Reyna returned to the Rio Grande Valley, to make certain arrangements, and on later that day, on his way home, he was detained at the INS checkpoint, after he truthfully disclosed his legal problems to the officers on duty.

8.  A Notice to Appear and Warrant of Arrest were issued.  They alleged, and Mr. Reyna conceded, the above facts relating to nationality and entry.   It also alleged that he had been "convicted" of possession of a controlled substance.  Removability was charged under 8 U.S.C. §1227(a)(2)(B)(i), for conviction of an offense relating to a controlled substance, and under §1227(a)(2)(A)(iii), for conviction of an aggravated felony.  Mr. urged that he was not subject to removal, in accordance with *Matter of Manrique,* 21 I&N Dec. 58 (BIA 1995), and, in the alternative, requested an opportunity to seek relief, in the form of cancellation of removal, under 8 U.S.C. §1229b(a).

9 Mr. Reyna argued that it would violate Substantive Due Process to conclusively presume that no LPR given deferred adjudication for a marijuana offense which **could have been** classified as a felony if the State of Texas had opted to proceed to adjudication, was worthy of remaining in the U.S.. Consequently, he asserted that the BIA

2

was bound to adopt any other reasonable interpretation of the statute, which would avoid that result. *See, Webster v. Reproductive Health Services*, 492 U.S. 490,562 (1989) (where fairly possible, statutes must be construed to avoid serious constitutional problems); *INS v. Cardoza-Fonseca,* 94 L.Ed2d 434,459 (1987) (reaffirming "the long-standing principle of construing any lingering ambiguities in deportation statutes in favor of the alien."). *See also, Zadvydas, v. Davis,* 121 S.Ct. 2491 (2001) reading a "reasonable time" limitation into statute authorizing detention of aliens who could not be promptly deported.

10. Mr. Reyna also asserted that such a reasonable interpretation exists, notwithstanding the Fifth Circuit's decision in *Hernandez-Avalos,* which criticized *Matter of K-V-D-,* Int. Dec. 3422 (BIA 1999). Mr.Reyna urged that said criticism was *dicta,* [1] and urged

------

[1]  As stated by the Court in *Hernandez-Avalos, id.* at 509 (footnote in original) (emphasis added):

However, **if we were reviewing Hernandez's removal order** on direct appeal, **and if the issue of statutory interpretation were properly preserved for review**, we would hold that the BIA's interpretation of section 924(c) is plainly incorrect and that Hernandez was an aggravated felon. We see no reason why the procedural posture of this case requires us to hold that it was fundamentally unfair to treat Hernandez as an aggravated felon because he should have the benefit of an agency's erroneous interpretation of applicable law. [FN3]

FN3. **Because the question presented by this appeal relates only to the fundamental fairness of the proceeding, we need not consider Hernandez's argument that we must defer to the BIA's interpretation of these general criminal statutes.** *Cf. Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842-43 & n. 9, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984)

that the Board follow *K-V-D-*, in order to avoid the serious constitutional problems which would otherwise arise. [2]

11. Given his lengthy residence in the U.S., his strong family ties, employment history, and other equities, it is highly likely that Mr. Reyna would have earned cancellation of removal, had he received the opportunity to apply for said form of relief.

## IV.  THE CAUSES OF ACTION

Petitioner asserts that the deprivation of liberty complained of herein violates the laws and Constitution of the United States, as well as international law and treaty obligations with his native country of Mexico, which claims are cognizable in habeas corpus under 28 U.S.C. §2241.

--------------------

> (citations omitted)("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.... The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.  If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.").

Such "if we were reviewing" and "if the issue of statutory construction were properly preserved" are classic indicia of *dicta*. Similarly, the Court's acknowledgment that it did not consider the possibility of deference further shows that its criticism of *K-V-D-* was *dicta*, and that said decision continues to be binding herein.

[2] Ironically, this was exactly the procedural posture of *K-V-D-*. The Immigration Judge declined to follow *In re L-G-, supra*, because the Fifth Circuit had issued *U.S. v. Hinojosa-Lopez*, 130 F.3d 691 (5th Cir. 1997), in the context of the U.S. Sentencing Guidelines, holding that whether an offense was an aggravated felony depended on its characterization under state law, rather than it would have been treated under federal law.

4

## 1.  STATUTORY CONSTRUCTION
### a.  AGGRAVATED FELONY

Mr. Reyna first urges that the Board erred as a matter of law in its conclusion that *U.S. v. Avalos-Hernandez, supra,* controls the resolution of the question of whether the disposition of the criminal charges constitutes an aggravated felony.  The language therein disapproving of *Matter of K-V-D-* was clearly *dicta,* and the Board should not have applied it to Mr. Reyna.  To the contrary, Mr. Reyna asserts that the Board correctly decided *Matter of K-V-D-* and that it erred in not applying said decision herein.  *See, Gerbier v. Holmes,* 280 F.3d 297 (3rd Cir. 2002) (State felony drug conviction without trafficking element constitutes an "aggravated felony" under the INA, thus rendering alien ineligible for cancellation of removal, only when that same crime would be punishable as a felony under federal Controlled Substances Act).

### b.  *MATTER OF ROLDAN,*  INT. DEC. 3377 (BIA 1999)

Mr. Sandoval also urges that, as a question of law, *Matter of Roldan, supra,* was incorrectly decided, and that (new) 8 U.S.C. §1101(a)(48)(A) was not intended to, and did not, legislatively overrule *Matter of Manrique, supra.  See,* Dissenting Opinion by Board Member Lory Rosenberg, in which Board Members Villageliu, and Espenoza, joined.  (*Matter of Salazar*, 23 I&N Dec. at 237-251). *See also,* Dissenting Opinion of Board Member Moscato, in which Board Member Villageliu, joined.  (*Id.*, 23 I&N Dec. at 251-252).

## 2.  EQUAL PROTECTION
### a.  FEDERAL FIRST OFFENDER ACT

Mr. Reyna next asserts that, for the reasons set forth in *Lujan-Armendariz,* 222 F.3d 728 (9th Cir. 2000), it violates Equal Protection for a determination of whether a given disposition of

criminal charges for simple possession of a controlled substance renders an immigrant subject to deportation to be based solely on whether the immigrant was processed in state, or federal, court.

### b.   DIFFERING RESULTS IN DIFFERENT JURISDICTIONS

Mr. Reyna also asserts that, given the national character of immigration law, it violates Equal Protection for the result of his case to depend solely on the federal jurisdiction in which it arose, such that, had he been placed in removal proceedings within the Ninth, rather than the Fifth Circuit, he might not be subject to removal at all, and that, had he been placed in such proceedings in any jurisdiction other than the Fifth, and most particularly, within the Third Circuit, he would have been held to qualify for cancellation of removal, which relief, he urges, he would in all likelihood have earned in the exercise of discretion.

### 3.   SUBSTANTIVE DUE PROCESS

As a permanent resident, Mr. Reyna has a fundamental liberty interest in being able to live and work in the U.S., and to remain here with his family. *See,* Dissenting Opinion of Board Member Rosenberg, *Salazar v. Trominski, supra* at 238. *See also, Landon v. Plasencia,* 459 U.S. 21,34 (1982), citing *Bridges v. Wixon,* 326 U.S. 135,154 (1945); *Moore v. City of East Cleveland*, 431 U.S. 494,499 (1977), and *Stanley v. Illinois*, 405 U.S. 645, 651 (1972):

> Plasencia's interest here is, without question, a weighty one.  She stands to lose the right "to stay and live and work in this land of freedom," ... Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual. ...

*Moore* and *Stanley* are both fundamental rights cases, involving family relationships. *Stanley* struck down a conclusive presumption, similar to that involved herein, and *Moore* simply concluded that the interest advanced by the State was insufficient to justify the

6

particular intrusion into the family unit. As a lawful permanent resident, Mr. Reyna enjoys the same Due Process rights, including substantive Due Process rights, to develop and enjoy intimate family relationships in the United States.

Mr. Reyna asserts that the combination of provisions enacted by IIRIRA, 8 U.S.C. §1101(a)(48)(A), together with the repeal of §212(c) of the Act, and its replacement with 8 U.S.C. §1229b(a), which contains an absolute prohibition on granting discretionary relief to anyone convicted of an "aggravated felony," and the overly expansive definition of what constitute such "aggravated felonies," constitutes an unconstitutional "conclusive presumption" that all LPRs who have been convicted of any offense in that list are unworthy of being able to stay with their families in the United States, even where the State has deemed it appropriate to grant rehabilitative treatment to a first time offender. Similarly, by failing to permit any showing of countervailing equities, these provisions are unjustifiable, as they are not sufficiently narrowly tailored to meet a compelling state interest.

### 4. PROCEDURAL DUE PROCESS

Mr. Reyna also asserts that the Board's decision deprives him of Procedural Due Process, as seen by another series of Supreme Court cases, involving "fair notice." To apply *U.S. v. Hernandez-Avalos* converts a disposition which, at the time of the offense, and of his plea, would have permitted him to seek relief from deportation, into one which requires mandatory deportation. Although not "punishment" for a criminal offense, deportation has long been recognized as a "penalty." *See, Reno v. American-Arab Anti Discrimination Committee*, 525 U.S. 471, 497-98 (1999), Justice Ginsberg, concurring in Part I and the result:

> As this Court has long recognized, "[t]hat deportation is a penalty - at times a most serious one - cannot be doubted." *Bridges*, 326 U.S., at 154, 65 S.Ct. 1443; see also *ibid.* (Deportation places "the liberty of an

> also *ibid.*    (Deportation places "the liberty of an
> individual ... at stake....  Though deportation is not
> technically a criminal proceeding, it visits a great
> hardship on the individual and deprives him of the right
> to stay and live and work in this land of freedom.")

Deportation then becomes an additional penalty, retroactively
attached to the "criminal offense," not by any amendment to the
statute, but by virtue of changed administrative and judicial
interpretations thereof.

Therefore, §1101(a)(48)(A), as interpreted and applied herein, is
unconstitutional in that it retroactively makes qualitative changes
in the penalty imposed, in a wholly unexpected manner. *See,* Nancy
Morawetz, "Rethinking Retroactive Deportation Laws and the Due
Process Clause," NYU Law Rev., Vol 73, No. 1, April 1998.  *See
also, Arce v. Walker*, 139 F.3d 329,333-34 (2nd Cir. 1998):

> [T]he Due Process Clause protects against restraints or
> conditions of confinement that "exceed[ ] the sentence in
> ... an unexpected manner." *Sandin,* 515 U.S. at 484, 115
> S.Ct. at 2300; *see id.* at 479 n. 4, 115 S.Ct. at 2297 n.
> 4 (observing that proscribed conditions of confinement
> must be "qualitatively different from the punishment
> characteristically suffered by a person convicted of
> crime, and [have] stigmatizing consequences." (citation
> and internal quotation marks omitted)); *see, e.g., Vitek
> v. Jones,* 445 U.S. 480, 493, 100 S.Ct. 1254, 1264, 63
> L.Ed.2d 552 (1980) (holding that "involuntary commitment
> to a mental hospital is not within the range of
> conditions of confinement to which a prison sentence
> subjects an individual"); *Washington v. Harper,* 494 U.S.
> 210, 221-22, 110 S.Ct. 1028, 1036-37, 108 L.Ed.2d 178
> (1990) (holding that inmate has a liberty interest under
> the Due Process Clause to refuse the involuntary
> administration of psychotropic drugs).

These protections exist even though deportation is a civil penalty,
rather than criminal punishment, is involved.  As the Supreme Court
recently held in *BMW of North America v. Gore,* 517 U.S. 559,574
(1996) (footnote 22 in original):

constitutional jurisprudence dictate that a person
receive fair notice not only of the conduct that will
subject him to punishment but also of the severity of the
penalty that a State may impose. FN22

FN22. See *Miller v. Florida*, 482 U.S. 423, 107 S.Ct.
2446, 96 L.Ed.2d 351 (1987) (*Ex Post Facto* Clause
violated by retroactive imposition of revised sentencing
guidelines that provided longer sentence for defendant's
crime); *Bouie v. City of Columbia*, 378 U.S. 347, 84
S.Ct. 1697, 12 L.Ed.2d 894 (1964) (retroactive
application of new construction of statute violated due
process); *id.*, at 350-355, 84 S.Ct., at 1701-1703
(citing cases); *Lankford v. Idaho*, 500 U.S. 110, 111
S.Ct. 1723, 114 L.Ed.2d 173 (1991) (due process violated
because defendant and his counsel did not have adequate
notice that judge might impose death sentence). The
strict constitutional safeguards afforded to criminal
defendants are not applicable to civil cases, but the
basic protection against "judgments without notice"
afforded by the Due Process Clause, *Shaffer v. Heitner*,
433 U.S. 186, 217, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683
(1977) (STEVENS, J., concurring in judgment), is
implicated by civil *penalties*. [3]

For a lawful permanent resident such as Mr. Reyna, there can be no
question but that deportation is a "civil penalt[y]" imposed as a
result of his criminal "conviction" for possession of marijuana.

It therefore violates Due Process to retroactively apply a new
construction of a statute, as in *Bouie v. City of Columbia, supra*,
and because it imposes a "civil penalt[y]" without prior notice, as
in *Shaffer v. Heitner, supra*. And, as in *BNW of North America v.
Gore, supra*, it confounds the "[e]lementary notions of fairness
enshrined in this Court's constitutional jurisprudence" which

---

[3] This is very similar to, and is reinforced by, the "void for
vagueness" analysis of *Jordan v. DeGeorge*, 341 U.S. 223,231 (1951)
(statute relating to deportation would be tested under "void for
vagueness" doctrine, notwithstanding that statute was not criminal
statute, in view of grave nature of deportation).

"dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose."

## 5.  INTERNATIONAL LAW AND TREATY OBLIGATIONS

Finally, Mr. Reyna urges that the instant order violates international law, and treaty obligations with Mexico, his country of origin. *See, Nicholson v. Williams,* _____ F.Supp.2d _____, (E.D.N.Y. March 18, 2002), 2002 WL 448452, at *78: [4]

> Substantive due process comes into play where, regardless of the procedures followed, a governmental decision or action is so contrary to a fundamental right that it cannot be countenanced. *See Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (Substantive due process rights bar "certain government actions regardless of the fairness of the procedures used to implement them ...."). Substantive due process depends upon the outcome itself.

*See also, Beharry v. Reno,* 183 F.Supp.2d 584 (E.D.N.Y. 2002) [5] holding that where a statute appears to contradict international law, an appropriate remedy is to construe it so as to resolve the contradiction.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586

Thelma O. Garcia, Attorney
301 E. Madison
Harlingen, TX 78550

---

[4]  Although *Nicholson* involved the removal of children from the parent, rather than removal of the parent from the child, the principles are the same.

[5]  *Beharry* concluded that relief was still available where an offense was committed before IIRIRA, but the guilty plea did not occur until after its enactment.

10

(956) 421-3226                          (956) 425-3701
(956) 421-3423 (fax)                    (956) 428-3731 (fax)
Fed. ID. 1178, Texas Bar 03052800

### VERIFICATION OF COUNSEL

I, Lisa S. Brodyaga, hereby certify that I am familiar with
Petitioner's case and that the facts as stated with respect thereto
are true and correct to the best of my knowledge and belief.

_____

### CERTIFICATE OF SERVICE

I, Lisa S. Brodyaga, hereby certify that a courtesy copy of the
foregoing, with exhibit, was personally delivered to the office of
Nancy Masso, AUSA, Brownsville, Texas, this 25th day of July, 2002.

_____

11

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


EUGENIO REYNA-MONTOYA,                      )
                                            )
v.                                          )        C.A. B-02-144
                                            )
AARON CABRERA,   INS                        )
   ACTING DIRECTOR, HLG/DO and              )
JOHN ASHCROFT, ATTORNEY                     )
   GENERAL OF THE UNITED STATES.            )
_____    )


EXHIBIT "A" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS

**U.S. Department of Justice**
Executive Office for Immigration Review

Falls Church, Virginia 22041

Decision of the Board of Immigration Appeals

File:    A36-740-936 - Harlingen

Date:

In re:  REYNA-MONTOYA, EUGENIO

JUL 18 2002

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:  Garcia, Thelma O.

ON BEHALF OF SERVICE·  Cheri L. Jones, Assistant District Counsel

ORDER:

   PER CURIAM.  The Board affirms, without opinion, the results of the decision below.  The decision below is, therefore, the final agency determination.  *See* 8 C.F.R. § 3.1(a)(7).

FOR THE BOARD

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

EUGENIO REYNA-MONTOYA,                    )
                                          )
v.                                        )     C.A.  B-02-144
                                          )
AARON CABRERA,  INS                       )
  ACTING DIRECTOR, HLG/DO and             )
JOHN ASHCROFT, ATTORNEY                   )
  GENERAL OF THE UNITED STATES.           )
_____   )


EXHIBIT "B" IN SUPPORT OF

PETITION FOR WRIT OF HABEAS CORPUS

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
Los Fresnos, Texas


File No.:  A 36 740 936                    March 5, 2002


In the Matter of

EUGENIO REYNA-MONTOYA,            )          IN REMOVAL PROCEEDINGS
                                 )
          Respondent             )


CHARGES:        Section 237(a)(2)(B)(i) Immigration and
                Nationality Act; Section 237(a)(2)(A)(iii)
                Immigration and Nationality Act

APPLICATIONS:   Termination of proceedings; cancellation of
                removal for certain permanent residents; Section
                240(A)(a) Immigration and Nationality Act;
                voluntary departure; Section 240(B) Immigration
                and Nationality Act


ON BEHALF OF RESPONDENT:          ON BEHALF OF SERVICE:

Thelma O. Garcia, Esquire         Flavio Ecsobar, Jr.,
                                  Assistant District Counsel

                ORAL DECISION OF THE IMMIGRATION JUDGE

         The Immigration Service issued a Notice to Appear with

respect to respondent on November 1st, 2001, and properly served

it upon him (Exhibit 1).  The Notice to Appear was filed with the

Court on November 9th, 2001, which commenced this removal

proceeding.  The Notice to Appear alleges that respondent has

been admitted into the United States but that he is deportable

for the reasons as stated in the Notice to Appear.  Specifically,

the Notice to Appear alleges that respondent is not a citizen or

cjs

national of the United States and that he is a native and citizen
of Mexico who was admitted to the United States at Hidalgo, Texas
on or about March 12th, 1981, as an immigrant.  It is further
alleged that on November 1st, 2001, respondent was convicted in
the 79th Judicial District Court at Brooks County, Falfurrias,
Texas, for the offense of possession of a controlled substance
to wit: marijuana in violation of state law.  The Notice to
Appear charges that respondent is subject to removal from the
United States under Section 237(a)(2)(B)(i) of the Immigration
and Nationality Act (the Act).

The Immigration Service has filed with the Court and
served upon respondent's counsel a document entitled Additional
Charges of Inadmissibility/Deportability, which is a Form I-261
(Exhibit 1-A).  That document contains the additional charge
under Section 237(a)(2)(A)(iii) of the Act charging that
respondent is removable because at any time after admission he
has been convicted of an aggravated felony as defined in Section
101(a)(43)(B) of the Act.

Respondent, through his attorney of record, has denied
all of the allegations of fact in the Notice to Appear and he has
also denied both charges of removability.

On January 22nd, 2002, a hearing was held with respect
to the merits of all of the issues of removability.  The
Immigration Service offered into the record a record of
deportable/inadmissible alien, Form I-213; a border patrol report

A 36 740 936                  2                  March 5, 2002

ɔjs

of apprehension or seizure, Form I-144; and an order of deferred
adjudication, placement on community supervision, in the case of
the State of Texas versus Eugenio Montoya Reyna in the District
Court, Brooks County, Texas, 79th Judicial District.  All of
those documents were admitted into the record without objection.
Further, counsel for respondent made a judicial admission at the
hearing on January 22nd, 2002, that respondent did not appeal the
order of deferred adjudication which was admitted into the record
as Exhibit 4.

At that hearing, counsel for respondent stated to the
Court that respondent has no evidence to present with respect to
the issues of removability.  The Immigration Service stated that
it had no further evidence with respect to the issues of
removability apart from the documents admitted into the record as
Exhibits 2, 3, and 4.

The Court concludes that the documentary evidence
presented by the Immigration Services establishes by clear and
convincing evidence that respondent is subject to removal from
the United States under both charges; those being Section
237(a)(2)(B)(i) and Section 237(a)(2)(A)(iii) of the Act as
charged in the Notice to Appear and the Form I-261.

The Form I-213, which is the record of
deportable/inadmissible alien, states that respondent was born in
the country of Mexico and that he is a citizen of Mexico.  Since
respondent was born in Mexico, is presumed to be an alien within

ɔjs

United States at Hidalgo, Texas on or about March 12th, 1981, as an immigrant.

The record also contains clear and convincing evidence that on November 1st, 2001, respondent was convicted in the 79th Judicial District Court at Brooks County, Texas for the offense of possession of marijuana in violation of the state law of Texas. Marijuana is a controlled substance as defined in Section 102 of the Controlled Substances Act, 21 United States Code, Section 802. The order of deferred adjudication in the case of the <u>State of Texas versus Eugenio Montoya</u> (Exhibit 4) shows that the respondent pled guilty to the charge in the indictment for possession of marijuana and that the offense was committed on January 7th, 2000. That document states that the degree or class of the offense is 3rd. A review of the Texas Penal Code demonstrates clearly that this refers to a 3rd degree felony under Texas law. Thus, it is noted that misdemeanors in Texas are classified as class A, B, or C. See Section 12.03 of the Texas Penal Code. Felonies are classified as capital felonies, felonies of the 1st degree, felonies of the 2nd degree, felonies of the 3rd degree, and state jail felonies. See Section 12.04 of the Texas Penal Code. Therefore, where the order of deferred adjudication refers to the degree or class offense as "3rd," it is referring to a 3rd degree felony. It is also noted that the offenses for possession of marijuana under Section 481.121 of the Texas Health and Safety Code also use this same sentencing

:js

the meaning of Section 101(a)(3) of the Act, respondent has not

come forward with any evidence or even made any contention that

he is a citizen of the United States.  Therefore, the presumption

of alienage has not be rebutted.  In addition, in the border

patrol of apprehension of seizure, Form I-44, it states that

Eugenio Reyna-Montoya, when he was asked by the border patrol

agent as to his citizenship, replied that he was a resident alien

of the United States.  Further, that document states that the

respondent showed the officer his Form I-551.  The Court

concludes that that Form I-551 shows that respondent is a

permanent legal resident of the United States since that is the

card issued to persons who have that status.  See 8 C.F.R. 299.1.

Since respondent has been admitted to the United States

as a permanent legal resident, he is considered to have been

admitted into the United States whether his status was granted

through a visa and then admission or through adjustment of status

under the Act.

The Form I-213 states that, according to the central

index system, respondent emigrated to the United States on or

about March 12th, 1981, through the port of entry at Hidalgo,

Texas.

Based upon the above discussion, the Court concludes

that the record contains clear and convincing evidence that

respondent is not a citizen or national of the United States and

that he is a native and citizen of Mexico who was admitted to the

ɔjs

scheme.  The misdemeanors are class A and class B while the
felonies are a state jail felony, a felony of the 3rd degree, and
a felony of the 2nd degree.  Therefore, the record is clear that
respondent pled guilty to a 3rd degree felony under Texas law.

In the criminal proceeding alleged in allegation four
of the Notice to Appear (Exhibit 4) after the respondent pled
guilty to the offense of possession of marijuana, the Court
stated that having heard all the evidence from the state and the
defendant, and having heard argument of counsel for both parties,
the Court found that there was sufficient evidence to support the
defendant's plea.  The court in the criminal proceeding, however,
determined that it was in the best interest of society and the
defendant to defer further proceedings without entering an
adjudication of guilt pursuant to Texas Code of Criminal
Procedure, Article 42.12, Section 5.  Therefore, the court
ordered that the further proceedings in that criminal proceeding
be deferred and the respondent was placed on community
supervision for three years with a fine in the amount of $2,000.
The three-year period of community supervision was to begin on
the date that the judgment was signed, which was November 1st,
2001.  That document also contains the conditions of the
community supervision imposed upon the respondent.

The Court concludes that this order of deferred
adjudication constitutes a conviction under the immigration laws
within the meaning of Section 101(a)(48)(A) of the Act.  That

ɔjs

statutory provision which defines the term "conviction" states
that if adjudication guilt has been withheld, it is considered a
conviction where the alien has entered a plea of guilty and the
judge has ordered some form of punishment, penalty, or restraint
on the alien's liberty to be imposed.  In the present case, the
Court concludes that there is clear and convincing evidence that
respondent pled guilty to the charge of possession of marijuana
and that the judge ordered some form of penalty and restraint on
the respondent's liberty to be imposed.  The Court concludes that
the $2,000 fine is clearly a penalty within the meaning of
Section 101(a)(48)(A) of the Act.  In addition, the conditions of
community supervision clearly demonstrate that respondent's
liberty was restrained by the conditions imposed.  The Court will
state only a few of those provisions that place restraint on
respondent's liberty to show that that requirement has been met.
As part of the conditions, respondent was required to report in
person during the term of probation to the adult probation
officer once each month between the 1st and 10th days of the
month.  He was also required to permit the probation officer to
visit him in his home or elsewhere in order to supervise his
probation.  He was not permitted to leave the State of Texas or
the county of approved residence without first obtaining
permission in writing from the probation officer showing that the
court authorized such removal.  He was required to abide by a 10
o'clock p.m. curfew every night.  He was required to submit a

urine specimen at the direction of the probation officer daily if ordered.  He was required to attend and participate with drug counseling on an out-patient basis and remain until officially discharged by the proper authorities.  He was also required to attend and participate with the community service restitution program and complete 160 hours beginning November 1st, 2001, at 16 hours per month.  These provisions clearly show that they impose a significant restraint on respondent's liberty. Accordingly, the record demonstrates by clear and convincing evidence that respondent has been convicted of the offense of possession of marijuana within the meaning of Section 101(a)(48)(A) of the Act.

The Board of Immigration Appeals has held that a deferred adjudication under Article 42.12, Section 5, of the Texas Code of Criminal Procedure is a conviction for Immigration purposes pursuant to Section 101(a)(48)(A) of the Act.  See Matter of Punu, Int. Dec. 3364 (BIA 1998).  The Board of Immigration Appeals reaffirmed this determination in Matter of Salazar, Int. Dec. 3462 (BIA 2002).

In Matter of Salazar, supra, the Board of Immigration Appeals also held that it will not apply its decision in the case of Matter of K-V-D-, Int. Dec. 3422 (BIA 1999), in cases arising within the jurisdiction of the United States Court of Appeals for the 5th Circuit because of the decisions of the United States Court of Appeals for the 5th Circuit in United States v.

A 36 740 936                     8                     March 5, 2002

ɔjs

Hernandez-Avalos, 251 F.3d 505 (5th Cir. 2000), cert. denied, 122
Supreme Court 305 (2001), and United States v. Hinojosa-Lopez,
130 F.3d 691 (5th Cir. 1997).  In Matter of Salazar, the Board
was determining whether a respondent who pled guilty to
possession of marijuana, which was a 3rd degree felony under
Texas law, had been convicted of an aggravated felony within the
meaning of Section 101(a)(43)(B) of the Act.  That is the same
offense to which the respondent in the present case pled guilty.
The Board held in Matter of Salazar that because this case is in
the 5th Circuit, we find that the offense to which the respondent
pled guilty is an aggravated felony.  The present case also
arises within the jurisdiction of the United States Court of
Appeals for the 5th Circuit, and this Court is bound to apply the
law of that Circuit as the Board did in Matter of Salazar.

As discussed above, in the present case respondent was
convicted within the meaning of the immigration law for the
offense of possession of marijuana, which is a 3rd degree felony
under Texas law.  The offense of possession of marijuana is also
clearly an offense that is punishable under the Controlled
Substances Act, 21 United States Code, 801 @ e.t. seq.
Therefore, respondent's offense is consider within the
jurisdiction of the United States Court of Appeals for the 5th
Circuit as a drug trafficking crime within the meaning of 18
United States Code, Section 924(c)(2).  As such, it is an
aggravated felony within the meaning of Section 101(a)(43)(B) of

A 36 740 936                    9                    March 5, 2002

'js

the Act.  Accordingly, a respondent is subject to removal under Section 237(a)(2)(A)(iii) of the Act because he has been convicted of an aggravated felony as defined in Section 101(a)(43)(B) of the Act.

Respondent is also subject to removal under Section 237(a)(2)(B)(i) of the Act because at any time after admission he has been convicted of a violation of a law of a state of United States relating to a controlled substance as defined in Section 102 of the Controlled Substances Act, 21 United States Code, Section 802, other than a single offense involving possession for one's own use of 30 grams or less of marijuana.  It is noted that in order to be 3rd degree felony under Texas law, the offense of possession of marijuana clearly requires that an individual unlawfully possess marijuana in an amount of more than 30 grams. Therefore, the Court concludes that both charges of removability have been established by clear and convincing evidence.

Respondent selected Mexico as the country for removal if removal is ordered.

Respondent has requested relief from removal in the form of cancellation of removal for certain permanent residents pursuant to Section 240(A)(a) of the Act and, in the alternative, voluntary departure under Section 240(B) of the Act.

The Court concludes that respondent is not eligible to be considered for cancellation of removal for certain permanent residents under Section 240(A)(a) because he has been convicted

A 36 740 936                    10                    March 5, 2002

·js

of an aggravated felony as discussed above.

Further, with respect to voluntary departure, respondent's application is considered to be an application for voluntary departure at the conclusion of proceedings under Section 240(B)(b)(1) of the Act because respondent has applied for other relief from removal.  See 8 C.F.R. 240.26(b)(1)(B).  In any event, respondent would not be eligible for voluntary departure under either Section 240(B)(a)(1), which is voluntary departure prior to the conclusion of proceedings, or Section 240(B)(b)(1) of the Act, which is voluntary departure at the conclusion of proceedings because he is deportable under Section 237(a)(2)(A)(iii) of the Act.

Consequently, respondent's applications for cancellation of removal for certain permanent residents under Section 240(A)(a) and voluntary departure under Section 240(B) of the Act will both be denied because respondent is not eligible under the statute to be considered for either of those forms of relief from removal.

ORDERED

Wherefore, it is hereby ordered that respondent's applications for cancellation of removal for certain permanent residents under Section 240(A)(a) of the Act and voluntary departure under Section 240(B) of the Act be denied.

It is further ordered that respondent be removed from

A 36 740 936                    11                    March 5, 2002

›js

the United States to Mexico pursuant to Sections 237(a)(2)(B)(i)
and 237(a)(2)(A)(iii) of the Act.

Dated this 5th day of March 2002.

HOWARD E. ACHTSAM
U.S. Immigration Judge

<u>CERTIFICATE PAGE</u>

I hereby certify that the attached proceeding before

HOWARD E. ACHTSAM, in the matter of:

EUGENIO REYNA-MONTOYA

A 36 740 936

Los Fresnos, Texas

was held as herein appears, and that this is the original

transcript thereof for the file of the Executive Office for

Immigration Review.

*Brenda Shields*
Brenda Shields (Transcriber)

Deposition Services, Inc.
6245 Executive Boulevard
Rockville, Maryland  20852
(301) 881-3344

May 2, 2002
(Completion Date)