IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 1 8 2002

Michael N. Milby
Clerk of Court

| | |
|---|---|
| EUGENIO REYNA-MONTOYA, )<br><br>v. )<br><br>AARON CABRERA, ACTING )<br>DIRECTOR, HLG/DO, THE )<br>IMMIGRATION & NATURALIZATION )<br>SERVICE, and )<br>JOHN ASHCROFT, UNITED STATES )<br>ATTORNEY GENERAL )<br>——————————————————— ) | CIVIL ACTION NO. B-02-144 |

## RESPONDENTS' RETURN AND
## MOTION TO DISMISS
### PETITION FOR WRIT OF HABEAS CORPUS

COME NOW the Respondents, by and through Michael T. Shelby,

United States Attorney for the Southern District of Texas, and file

this Return and Motion to Dismiss the Petition for Writ of Habeas

Corpus in this case. The petition for writ of habeas corpus should

be dismissed because the issues presented therein have been decided

by the Fifth Circuit Court of Appeals.[1]

---

[1] The issues presented and arguments made herein are identical to
those presented to this Court in Salazar-Regino v. Trominski, et
al., Civil Action No. B-02-045.

## STATEMENT OF THE FACTS

The Petitioner, Eugenio Reyna-Montoya ("Reyna-Montoya") entered the United States as a lawful permanent resident on March 12, 1981. Government Exh. "A". A criminal indictment was filed against Reyna-Montoya for possession of marijuana. He was entered a plea of guilty on November 1, 2001, in the District Court, Brooks County, Texas, to the offense of possession of marijuana, a third degree felony. Adjudication of guilt was deferred and he was placed on community supervision for a period of three years. Government Exh. "B".

The Immigration and Naturalization Service (the "Service") issued a Notice to Appear to Reyna-Montoya on November 1, 2001, charging that he was removable for having been convicted of a violation of a law relating to a controlled substance pursuant to §237(a)(2)(B)(i) of the Immigration and Nationality Act ("Act"), 8 U.S.C. §1227 (a)(2)(B)(i). Government Exh. "C". On January 2, 2002, an additional charge of removability was lodged against Reyna-Montoya for having been convicted of an aggravated felony pursuant to §237(a)(2)(A)(iii) of the Act, 8 U.S.C. §1227 (a)(2)(A)(iii). Government Exh. "D".

Reyna-Montoya, through counsel, denied the allegations of fact set out in the Notice to Appear and denied removability for a violation of a law relating to a controlled substance. The matter

was then set over for a hearing on the merits of removability for
January 22, 2002.

    At the hearing on January 22, 2002, the immigration judge took
up the additional lodged charge of removability for having been
convicted of an aggravated felony.  Reyna-Montoya also denied that
charge.  After presenting the immigration judge with evidence
consisting of a Form I-213 (Record of Deportable/Inadmissible
Alien); I-44 (Border Patrol Report of Apprehension or Seizure) and
the conviction record, the immigration judge found Reyna-Montoya
removable pursuant to both grounds of removabilty.  Government Exh.
"E", 3.  The immigration judge then found that Reyna-Montoya had
been "convicted" for immigration purposes, that he was removable for
having been convicted of an aggravated felony and for having
violated a law relating to a controlled substance.  Government Exh.
"E", 6-10.

    Reyna-Montoya sought to have his removal cancelled by filing an
application pursuant to §240A(a) of the Act.  The immigration judge
found that, because he was convicted of an aggravated felony, Reyna-
Montoya was ineligible for relief from removal.  Government Exh.
"E", 10-11.  As a consequence, the immigration judge ordered his
removal to Mexico.  Government Exh. "F".

    Reyna-Montoya reserved his right to appeal and timely filed his
Notice of Appeal with the Board of Immigration Appeals ("Board").  In
his appeal brief, Reyna-Montoya argued many of the same issues

present herein. Specifically, he argued, among other things, that
the Board was required to construe the statute to avoid serious
constitutional problems, that it violated due process to apply the
term "aggravated felony" to Reyna-Montoya, and that the Ninth
Circuit Court of Appeals decision in <u>Lujan-Armendariz v. INS</u>, 222
F.3d 728 (9th Cir. 2000) should be applied nationwide.

In a decision dated July 18, 2002, the Board dismissed Reyna-
Montoya's appeal. The Board affirmed without opinion the decision
of the immigration judge pursuant to 8 C.F.R. §3.1(a)(7). Government
Exh. "G". Reyna-Montoya then filed the instant petition.

## ARGUMENT

### I. REYNA-MONTOYA HAS BEEN CONVICTED OF AN OFFENSE THAT IS A VIOLATION OF A LAW RELATING TO A CONTROLLED SUBSTANCE EVEN THOUGH, AFTER A PLEA OF GUILTY, ADJUDICATION OF GUILT WAS DEFERRED AND HE WAS PLACED ON THREE YEARS COMMUNITY SUPERVISION.

Reyna-Montoya argues that he is not removable as charged
because he is not properly considered convicted under the
definition set forth at §101(a)(48) of the Act, 8 U.S.C.
§1101(a)(48). Because Reyna-Montoya's petition is dependant on the
construction of §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), the
Court should have an understanding of the history and policy
concerns that determined whether an alien would be considered to be
convicted for immigration purposes prior to 1996.

4

Prior to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3546 (September 30, 1996) ("IIRIRA"), the Act did not contain a definition of the term "conviction."   Its meaning was determined on a case-by-case basis in administrative and judicial decisions. Depending upon the policies and procedures involved, an alien's guilty plea and criminal disposition might -- or might not -- constitute a "conviction" for immigration purposes.

For example, the Board had a 40-year policy that a state conviction for a crime involving moral turpitude which had been set aside or vacated for rehabilitative reasons would not count as a conviction for deportation purposes.  See Matter of Ozkok, 19 I & N Dec. 546, 548-59 (BIA 1988); Matter of Ibarra-Obando, 12 I & N Dec. 576 (BIA 1966; A.G. 1967); Matter of G-, 9 I & N Dec. 159 (BIA 1960; A.G. 1961); Matter of A-F-, 8 I & N Dec. 429, 455 (BIA, A.G. 1959).[2]  The Attorney General refused to extend this policy to drug convictions, however.  Thus, in 1959 the Attorney General decided that an alien's drug conviction would still count for immigration purposes, regardless of whether it had been vacated, expunged, or dismissed for rehabilitative reasons under state law, because this would promote uniform application of the immigration laws and would

---

[2]    This policy was repeatedly challenged within the agency during the 1960's, but the Board maintained its policy toward expunged or vacated state convictions involving moral turpitude because the policy  was longstanding and there was no congressional intent to the contrary.  See Matter of G-, 9 I & N at 164-65.

be consistent with Congress' strict policy against drug offenders. Matter of A-F-, 8 I & N Dec. 429, 455 (BIA, A.G. 1959).

In 1972, the First Circuit Court of Appeals ("First Circuit"), decided not to consider a conviction that had been set aside under the Federal Youth Corrections Act ("FYCA") to be a "conviction" for immigration purposes, because the First Circuit made the policy decision that it was more important to give greater priority to Congress' criminal policy of leniency toward youthful offenders than to its immigration policy of deporting drug offenders. Mestre Morera v. INS, 462 F.2d 1030 (1st Cir. 1972). Two years later, in 1974, the Board also made this policy choice, deciding not to consider a drug charge that had been expunged under the FYCA to be a conviction for immigration purposes. Matter of Zingis, 14 I & N Dec. 621 (BIA 1974).

That same year then-Solicitor General Bork urged the Board to construe the term "conviction" generously in favor of aliens, give effect to state rehabilitative statutes, and extend to state youthful and first-time drug offenders guilty of simple possession the same policy of leniency the Board had extended to federal offenders. Matter of Andrade, 14 I & N Dec. 651, 654 (BIA 1974) (Memorandum of Solicitor General). The Board followed this recommendation, holding that the Federal First Offender Act ("FFOA") was the equivalent of the FYCA, and that as a matter of policy a drug conviction "expunged" under the FFOA, or a state

6

"counterpart," would not be considered a conviction for immigration purposes. Matter of Werk, 16 I & n Dec. 234 (BIA 1977); Matter of Kaneda, 16 I & N Dec. 677 (BIA 1979); Matter of Haddad, 16 I & N Dec. 253 (BIA 1977). The Board chose to apply this new policy narrowly, however, and considered drug offenders who were given rehabilitative treatment under state statutes that were broader in scope than the federal first-offender statute to have a "conviction" for immigration purposes. Matter of Deris, 20 I & N Dec. 5 (BIA 1989).

The policy decisions were made against the backdrop of an administrative construction of "conviction" that also required the following: (1) a judicial finding of guilt, (2) some court action removing a defendant's case from active consideration, such as a fine, sentence, or suspension of sentence, and (3) that the disposition was considered to be a conviction by the state, at least for some purpose. See Matter of L-R, 8 I & N Dec. 269 (BIA 1959). By 1988, however, the Board had concluded that its interpretation of what constituted a conviction was unsatisfactory, because it did not fully encompass conviction-deferral procedures or prejudgment probation, i.e. dispositions in which aliens formally admitted their guilt but thereafter deferred proceedings and avoided a formal conviction, through a variety of state procedures. See Matter of Ozkok, 19 I & N Dec. 546. In addition, the Board was concerned that the variety of state rehabilitative

procedures and the rulings regarding expungements were leading to "anomalous and unfair results" and were permitting aliens who were clearly guilty of criminal conduct, and whom Congress intended to be considered convicted, to escape the immigration consequences of their conduct.  Id. at 551. The Board adopted what it hoped would be a uniform federal standard defining "conviction." Id.  For formal judgments, the Board concluded that it would consider a person to be convicted if "the Court has adjudicated him guilty or has entered a formal judgment of guilt."  Id.

For "deferred adjudications"  -- where a formal judgment was deferred or  withheld pending probation --  the Board decided that a "conviction" should exist for immigration purposes if the following requirements were met:

> (1)  a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt;
>
> (2)  the judge has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed (including but not limited to incarceration, probation, a fine or restitution, or community-based sanctions such as a rehabilitation program, a work-release or study-release program, revocation or suspension of a driver's license, deprivation of non-essential activities or privileges, or community service); and
>
> (3)  a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding

the person's guilt or innocence of the original
charge.

Matter of Ozkok, 19 I & N Dec. at 551-52.

This did not lead to the uniformity of result the Board had
intended. Instead, criminal aliens who pled or were found guilty
of an offense and had been sentenced to probation could still
escape the immigration consequences of their conduct depending on
the state procedures involved. Compare Martinez-Montoya v. INS,
904 F.2d 1018, 1021 (5th Cir. 1990) (holding that Texas guilty
plea, withheld conviction, and probation is not a conviction for
immigration purposes), with Yanez-Popp v. INS, 998 F.2d 231 (4th
Cir. 1993) (holding that Maryland guilty plea without entry of
judgment, plus probation, is a conviction) and Molina v. INS, 981
F.2d 14 (1st Cir. 1992) (holding that Rhode Island nolo contendere
plea plus probation is a conviction).

In the 1990s, the Board reconsidered its policy toward first-
time state drug offenders whose convictions had been vacated or
expunged. In Matter of Manrique, Int. Dec. 3250, 1995 WL 314732
(BIA 1995), the Board decided that it would not consider a vacated
state drug offense to be a conviction for immigration purposes if
(1) the alien was convicted of simple possession; (2) it was his
first offense; (3) he had received no previous first-offender
treatment, and (4) the court entered an order pursuant to a state
rehabilitative statute under which "the alien's criminal

proceedings have been deferred pending successful completion of probation or the proceedings have been or will be dismissed after probation." Id. at 12.

Thus, as shown above, by 1996 there was no one, uniform federal definition of conviction for immigration purposes. Instead, there were a variety of exceptions that had evolved by balancing concerns about finality, respect for state dispositions, uniformity of results, strict federal drug policies, federal rehabilitation policies for youthful offenders and first-time drug offenders -- and by attempting to take into account the distinctions between conviction-deferral or pre-judgment probation procedures and post-conviction expungement procedures.

These various exceptions caused discrepant results. Depending on the procedures and competing policies involved, an alien who admitted his guilt and was given some form of probation, and subsequently obtained a dismissal or vacatur of the charge might, or might not, be convicted for federal immigration purposes. The problems of uneven enforcement of federal immigration laws, and of aliens escaping the consequences of their criminal conduct because of a variety of rehabilitative procedures, which the Board had sought to remedy in Ozkok, still remained. See generally Matter of Ozkok, 19 I & N Dec. at 550 -51.

It was in this context that Congress enacted IIRIRA, which was signed by the President on September 30, 1996. IIRIRA added a new

provision to the Act.  Section 101(a)(48) of the Act, 8 U.S.C.

§1101(a)(48), sets forth for the first time a uniform statutory

definition of the term "conviction."  See IIRIRA §322(a) codified

at §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48) (1998).  That new

definition states as follows:

> (A)  The term 'conviction' means, with respect
> to an alien, a formal judgment of guilt of the
> alien entered by a court or, if adjudication of
> guilt has been withheld, where--
>
> (i)  a judge or jury as found the alien guilty
> or the alien has entered a plea of guilty or
> nolo contendere or has admitted sufficient
> facts to warrant a finding of guilt, and
>
> (ii) the judge has ordered some form of
> punishment, penalty, or restraint on the
> alien's liberty to be imposed.
>
> (B)  Any reference to a term of imprisonment or
> a sentence with respect to an offense is deemed
> to include the period of incarceration or
> confinement ordered by a court of law
> regardless of any suspension of the imposition
> or execution of that imprisonment or sentence
> in whole or in part.

See §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48).  The Joint

Conference Report commented on the congressional intent in drafting

this provision as follows:

> This section deliberately broadens the scope of
> the definition of "conviction" beyond that
> adopted by the Board of Immigration Appeals in
> Matter of Ozkok, 19 I & N Dec. 546.  As the
> Board noted in Ozkok, there exist in the
> various States a myriad of provisions for
> ameliorating the effects of a conviction.  As a
> result, aliens who have clearly been guilty of
> criminal behavior and whom Congress intended to

be considered "convicted" have escaped the
immigration consequences normally attendant
upon a conviction.  Ozkok, while making it more
difficult for alien criminals to escape such
consequences, does not go far enough to address
situations where a judgment of guilt or
imposition of sentence is suspended,
conditioned upon the alien's future good
behavior.  For example, the third prong of
Ozkok requires that a judgment or adjudication
of guilt may be entered if the alien violates a
term or condition of probation, without the
need for any further proceedings regarding
guilt or innocence on the original charge.  In
some States, adjudication may be "deferred"
upon a finding or confession of guilt, and a
final judgment of guilt may not be imposed if
the alien violates probation until there is an
additional proceeding regarding the alien's
guilt or innocence.  In such cases, the third
prong of the Ozkok definition prevents the
original finding or confession of guilt to be
considered a "conviction" for deportation
purposes.

This new provision, by removing the third
prong of Ozkok, clarifies Congressional intent
that even in cases where adjudication is
"deferred," the original finding or confession
of guilt is sufficient to establish a
"conviction" for purposes of the immigration
laws.

H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess. 224 (1996) 1996 WL

563320 *496-97 [Leg.History](emphasis added).

Section 101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), creates

a uniform definition of conviction that is no longer dependent upon

the vagaries of state law, and that requires an alien who has pled

guilty and received a deferred adjudication and some form of

probation to be considered convicted for immigration purposes,

regardless of whether there are further proceedings available on the issue of guilt or innocence upon his violation of probation. Moosa v. INS, 171 F.3d 994, 1004-06 (5th Cir. 1999); see also Matter of Punu, Int. Dec. 3364 (BIA 1999) (the third prong of Ozkok for determining whether a conviction exists with regard to deferred adjudication has been eliminated by §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48) and deferred adjudication in Texas is a conviction for immigration purposes); Matter of Roldan-Santoyo, Int. Dec. 3377 (BIA 1999) (an alien has been convicted for immigration purposes where there is a finding or admission of guilt and some punishment is imposed).

As shown, Reyna-Montoya pled guilty in state court to possession of marijuana and was placed on probation. Pursuant to §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), this properly constitutes a conviction because there was a guilty plea and some form of punishment or restraint on liberty. Section 101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), eliminates the prior administrative and judicial exceptions for state deferred adjudications, prejudgment probations, vacated or expunged offenses, or first-time state drug offenses. The plain reading of the statute supports this conclusion.

A.   Congress' intent is clear and
unambiguous:  the plain language of the
statute requires only a formal judgment of
guilt, or a plea and some form of
restraint on liberty, and there is no
exception for vacated, dismissed, or
expunged convictions or first-time drug
offenses of simple possession, and none
may be implied.

The starting point for statutory construction is the language

of the statute.  See INS v. Phinpathya, 464 U.S. 183, 188 (1984);

see also INS v. Cardoza-Fonseca, 480 U.S. 421. 431 (1987).  The

plain meaning of the words used is the paramount indicia of

congressional intent.  Cardoza-Fonseca, 480 U.S. at 431.  It is

assumed that the legislative purpose is expressed by the plain

meaning of the words used.  Phinpathya, 464 U.S. at 189.

The plain language of §101(a)(48) of the Act, 8 U.S.C.

§1101(a)(48), states that "the term 'conviction' means . . . the

alien has entered a plea of guilty . . . and the judge has ordered

some form of punishment, penalty, or restraint on the alien's

liberty to be imposed." §101(a)(48)(A) of the Act, 8 U.S.C.

§1101(a)(48)(A).  As the Fifth Circuit has noted, the language of

the statute is plain and clear.  See Moosa v. INS, 171 F.3d at

1005.  Under the Fifth Circuit's reading of the statute, there is

no question that Reyna-Montoya's disposition comes squarely within

this definition, because he pled guilty to his drug offense and was

given probation.

When a definition declares what a term "means" -- as opposed to what it "includes" -- it excludes any meaning that is not stated.  Colautti v. Franklin, 439 U.S. 379 (1978).  In addition, as the Supreme Court has made very clear, exceptions to a statutory definition of "conviction" must be expressly stated and may not be implied.  See Dickerson v. New Banner Institute, Inc., 460 U.S. 103, 111 (1983), superseded by statute as stated in United States v. Sherbondy, 865 F.2d 996 (9th Cir. 1988); Andrus v. Glover Construction Co., 446 U.S. 608 (1980).

The definition of a conviction states, inter alia, that it "means" a guilty plea and some form of imposition on liberty. §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48) (emphasis added).  See Moosa v. INS, 171 F.3d at 1005. "No modifier is present, and nothing suggest[s] any restriction on the scope of the term 'convict[ion].'"  Dickerson, 460 U.S. at 111.  "Nothing on the face of the statute suggests a congressional intent to limit its coverage."  Id.  There are no exceptions for the kinds of state dispositions that the Board previously determined would not be considered a "conviction" for reasons of policy, such as vacated or expunged state convictions, or first-time drug offenses of simple possession under federal or state law.

Since this is the case, Reyna-Montoya has been "convicted" for federal immigration purposes under the plain meaning of the statute.  He pled guilty to possession of marijuana and he was

given three years community supervision.  It is clear that Congress

intended him to be considered convicted for immigration purposes.

Congress has spoken to the precise question at issue.  Its intent

is clear.

> B.   Congress' intent is also clear and
> unambiguous, because the Committee Report
> shows that  Congress intended to
> "broade[n]" the definition of
> "conviction," eliminate the effects of
> ameliorating statutes, make guilt not
> rehabilitation  the dispositive factor,
> and prevent aliens who are guilty of
> criminal conduct from escaping the
> immigration consequences of their crimes.

A clear statement of legislative purpose in a committee report

is powerful evidence of Congress' intent and should be given

effect.  See Cardoza-Fonseca, 480 U.S. 428; Mastro Plastics Corp.

v. NLRB, 350 U.S. 270 (1956); Church of the Holy Trinity v. United

States, 143 U.S. 457 (1892).

Congress explicitly stated in the Committee Report that the

purpose of adding §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48),

was to "**deliberately broade[n]**" the preexisting definition of a

conviction set forth in Ozkok.  See H.R. Conf. Rep. No. 828, 104th

Cong., 2nd Sess. 224 (1996) (emphasis added).  This shows that

Congress was dissatisfied with the preexisting interpretation of

what constituted a conviction, and intended to expand it to include

more kinds of dispositions than previously covered -- thus clearly

encompassing Reyna-Montoya's first-time state drug offense, which

previously would not have qualified as a conviction under <u>Matter of Manrique</u>.

The Committee Report shows that Congress clearly intended the dispositive factor for determining whether an alien has been convicted for immigration purposes to be whether he is **guilty of criminal conduct** -- not the type of disposition he received or whether he is eligible for rehabilitative treatment of some type. Thus, in the Committee Report Congress states:

> As a result [of ameliorating provisions], aliens who have clearly been guilty of criminal behavior and whom Congress intended to be considered "convicted" have escaped the immigration consequences normally attendant upon a conviction.

H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess. 224 (1996). The Committee Report also states that Congress wanted to stop treatment "that **prevents the original finding or confession of guilt to be considered a 'conviction' for deportation purposes**" and that Congress was seeking **to "clarif[y] [its] intent that . . . the original finding or confession of guilt is sufficient to establish a 'conviction' for purposes of the immigration laws."** <u>Id.</u> (emphasis added).[3]

---

3/  These latter two statements were made by Congress addressing, by way of example, "deferred adjudications," or the types of state dispositions that deferred or withheld judgment upon probation but then required some further proceeding on guilt or innocence upon a violation of probation.

The Committee Report demonstrates a clear and unambiguous intent on Congress' part to make the type of disposition that Reyna-Montoya received a conviction for immigration purposes. It states that Congress wants to ensure that an alien who pleads guilty -- as Reyna-Montoya did -- cannot escape the immigration consequences of his criminal conduct. Most importantly, it rejects the policies of leniency, rehabilitation, and deference to differing laws that led the Board and the courts to adopt the preexisting state exceptions to the definition of a conviction. Accordingly, the Committee Report -- like the plain language of the statute -- makes clear that Congress intended Reyna-Montoya to be "convicted" for immigration purposes because of his guilty plea and probation.

> C.    Congress' intent is clear and unambiguous:  other related provisions of the Act and their legislative history show that Congress has now implemented a tough new immigration policy toward criminal aliens that rejects leniency and rehabilitation in favor of removal.

It is well settled that in determining the meaning of a statute, all related parts of the statute should be construed together.  See, e.g., Sanford v. Commissioner, IRS, 308 U.S. 39 (1939).  Each provision that pertains to the same subject must be construed in pari materia with other sections on the same subject, and this rule has the greatest force where statutes were enacted at

the same time.  United States v. Steward, 311 U.S. 60 (1940);

Erlenbaugh v. United States, 452 U.S. 967 (1972);  2B Singer,

Sutherland Statutory Construction §51.03 at 140 (5th ed. 1992).

Construing §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), in pari

materia with other provisions enacted in IIRIRA, it is clear that

the Board's construction in the present case reflects a new,

tougher policy on Congress' part toward criminal aliens, which does

not want them to be treated leniently.  Section 101(a)(48) of the

Act, 8 U.S.C. §1101(a)(48), was one of several amendments in IIRIRA

that were designed to implement this policy.  In addition to

enacting the section, Congress also enacted a provision that

expands the number of crimes that render an alien deportable for

commission of an "aggravated felony.  See §101(a)(43) of the Act, 8

U.S.C. §1101(a)(43) (Supp. IV 1998).  It created new custody rules

mandating the detention of criminal aliens pending their

proceedings.  See §236(c) of the Act, 8 U.S.C. §1226(c) (Supp. IV

1998).  It withdrew discretionary relief for criminal aliens.  See

§242A of the Act, 8 U.S.C. §1229a (Supp. IV 1998).  And, Congress

eliminated judicial review for several kinds of criminal aliens.

See §242(a)(2)(C) of the Act, 8 U.S.C. §1229(a)(2)(C).

Indeed, the legislative history of the bills that eventually

became IIRIRA are replete with concerns about recidivism.  It was

in this context that Congress enacted IIRIRA in 1996 and the

definition of "conviction" in §101(a)(48) of the Act, 8 U.S.C.

§1101(a)(48).  Congress' concerns about the unacceptably high rate
of recidivism of criminal aliens, and the threat they pose to
public safety shows a clear intent to reach all aliens - like
Reyna-Montoya - who are guilty of criminal conduct and to not
afford them any leniency, especially by giving effect to
rehabilitative procedures or policies that would permit them to
avoid removal.  Section 101(a)(48) of the Act, 8 U.S.C.
§1101(a)(48), implements that intent.

### II. REYNA-MONTOYA HAS BEEN CONVICTED OF AN AGGRAVATED FELONY AND IS INELIGIBLE FOR RELIEF.

Reyna-Montoya argues that he has not been convicted of an
aggravated felony because his crime was simple possession of a
controlled substance and not a drug trafficking crime.  He bases
his position on the Board's holding in Matter of L-G-, 21 I&N Dec.
89 (BIA 1995) and Matter of K-V-D-, Int. Dec. 3422 (BIA 1999).
Reyna-Montoya contends that the Fifth Circuit's position in U.S. v.
Hernandez-Avalos, 251 F.3d 505 (5th Cir. 2001), upon which the
immigration judge relied in deciding his case, was dicta and,
therefore, not controlling.  Petitioner believes that the
immigration judge should have relied on the Board's prior holding in
K-V-D-, in deciding his case.  Reyna-Montoya fails to consider that,
prior to K-V-D-, the Fifth Circuit held that a crime that violated
the Controlled Substances Act and is a felony under either state or

federal law is an aggravated felony, albeit in a sentencing guidelines context. <u>U.S. v. Hinojosa-Lopez</u>, 130 F.3d 691 (5th Cir. 1997).

In <u>Matter of L-G-</u>, the Board held that the federal definition of "felony" within the meaning of 18 U.S.C. §924(c)(1994) applied in determining whether a crime was an aggravated felony.  <u>Matter of L-G-</u> at 94.  Further, the Board found that for immigration purposes, a state drug crime would qualify as a "drug trafficking crime" if it were punishable as a felony under the Controlled Substances Act (21 U.S.C. §801, et seq.).  Finally, the Board declared its disagreement with the Second Circuit Court of Appeals decision in <u>Jenkins v. INS</u>, 32 F.3d 11 (2d Cir. 1994) (a state conviction for a drug offense which is a felony under state law, but a misdemeanor under federal law is a conviction classified as an aggravated felony) and declined to apply the decision in cases arising outside the Second Circuit.  <u>Matter of L-G-</u> was decided in 1995 - prior to the enactment of IIRIRA.

The term "aggravated felony" was first added to the Act by §7342 of the Anti-Drug Abuse Act of 1988, Pub. L. 100-690, 102 Stat. 4181.  The term was first defined within the federal sentencing guidelines.  The types of crimes with immigration consequences have expanded over the years to its present definition. §101(a)(43) of the Act, 8 U.S.C. §1101(a)(43).  Included in the definition of "aggravated felony" is "illicit trafficking in a controlled

substance (as described in section 102 of the Controlled Substances Act) including a drug trafficking crime (as defined in section 924(c) of title 18, United States Code)." §101(a)(43)(B) of the Act, 8 U.S.C. §1101(a)(43)(B).

In December 1997, the Fifth Circuit, in addressing the issue for the first time, found that a Texas felony conviction for possession of marijuana to be an "aggravated felony" as that term was defined within the sentencing guidelines. U.S. v. Hinojosa-Lopez, 130 F.3d 691 (5th Cir. 1997). The United States Code defines a "drug trafficking crime" as "any felony **punishable** under the Controlled Substances Act (21 U.S.C. §801 et seq.) ... ." 18 U.S.C. 924(c)(2) (emphasis added). The Controlled Substances Act defines a "felony" as "any Federal or **State offense** classified by applicable Federal or State law as a felony." 21 U.S.C. §802(13) (emphasis added). Further, the Controlled Substances Act defines "felony drug offense" as "an **offense** that **is punishable** by imprisonment for more than 1 year under any law of the United States or **of a State** ... ." 21 U.S.C. §802(44) (emphasis added); see generally, U.S. v. Sandle, 123 F.3d 809, 811-812 (5th Cir. 1997) (applying 21 U.S.C. §802(44) to a Texas possession of cocaine offense, for which the individual received deferred adjudication, and finding that a prior Texas state conviction was properly considered a prior felony drug offense sufficient to trigger the enhancement provisions of the federal Sentencing Guidelines).

In interpreting 18 U.S.C. §924(c)(2), the Fifth Circuit in Hinojosa-Lopez found that this provision "defines a 'drug trafficking crime' as 'encompassing *two separate* elements: (1) that the offense be punishable under the Controlled Substances Act (or one of the other two statutes defined); and (2) that the offense be a felony.'" Hinojosa-Lopez at 694 quoting U.S. v. Restrepo-Aguilar, 74 F.3d 361, 364 (1st Cir. 1996). The Fifth Circuit further explained that "a state drug offense is properly deemed a 'felony' within the meaning of 18 U.S.C. §924(c) as incorporated by application of note 7 to U.S.S.G. §2L1.2, if the offense is classified as a felony under the law of the relevant state, even if the same offense would be punishable only as a misdemeanor under federal law." Id.

Reyna-Montoya was convicted under the Texas Controlled Substances Act §481.121 for possession of marijuana. He was charged and convicted for possessing marijuana. This offense is a third degree felony. In the State of Texas, a third degree felony is punishable by a term of imprisonment of not more than ten years or less than two years. *Tex. Penal Code Ann.* §12.34 (Vernon 1998). The fact that adjudication of guilty was deferred and that the respondent received community supervision and not a term of imprisonment is irrelevant. The offense Reyna-Montoya was convicted of is a **felony** which is **punishable** for a term of more than one year and is a violation of the Controlled Substances Act. Therefore, the

23

definition of "aggravated felony" applies to this case and Reyna-Montoya has been convicted of a crime classified as an aggravated felony.

In December 1999, the Board ignored the Fifth Circuit holding in Hinojosa-Lopez, finding that the decision defined the term "aggravated felony" in a sentencing guideline context and the Board was free to interpret that term differently in an immigration context. Matter of K-V-D-, Int. Dec. 3422 (BIA 1999). The Board then went on to hold that a Texas felony conviction for simple possession of a controlled substance, which is a misdemeanor under federal law, is not a conviction of an aggravated felony within the meaning of §101(a)(43)(B) of the Act, 8 U.S.C. §1101(a)(43)(B). Thus, it affirmed its prior decision in Matter of L-G-.

The Fifth Circuit revisited the issue of aggravated felony in May 2001. U.S. v. Hernandez-Avalos, 251 F.3d 505 (5th Cir. 2001). First, the Fifth Circuit affirmed its earlier holding in Hinojosa-Lopez that a state drug conviction is a "drug trafficking crime" and, therefore, an "aggravated felony" if the offense is punishable under the Controlled Substances Act and if the offense is a felony under state law. The Hernandez-Avalos Court then went on to address some of the same concerns expressed by Reyna-Montoya – the lack of uniform application of the law, both within the Circuit and throughout the United States.

Like Hernandez-Avalos, Reyna-Montoya suggests that it is fundamentally unfair to apply the strict interpretation of "aggravated felony" as set out in Hinojosa-Lopez in some cases and the more lenient Board precedent to other cases. He contends that since he was found by the Board of having been convicted of an aggravated felony, he was not afforded the same opportunities as an alien whose removal proceedings were conducted at an earlier time and followed then-existing Board precedent. The Fifth Circuit clearly rejected that contention finding no reason "to hold that it is fundamentally unfair to treat Hernandez [or Reyna-Montoya] as an aggravated felon because he should have the benefit of an agency's erroneous interpretation of applicable law." Hernandez-Avalos at 509.

Finally the Fifth Circuit found no validity in interpreting 18 U.S.C. §924(c) "differently based on this distinction between sentencing and immigration cases; it is, after all, the same words of the same phrase from the same statute that is being interpreted in each instance." Id.

> We agree that the plain language of the statutes "indicate[s] that Congress made a deliberate policy decision to include as an 'aggravated felony' a drug crime that is a felony under state law but only a misdemeanor under the [Controlled Substances Act]," [U.S. v.] Briones-Mata, 116 F.3d [308] at 310, and that the lack of a uniform substantive test for determining which drug offenses qualify as "aggravated felonies" "is the consequence of a deliberate policy choice by Congress" that the BIA and the

> courts cannot disregard.   [U.S. v.] Restrepo-
> Aguilar, 74 F.3d [361] at 366.  We are therefore
> unpersuaded by the BIA's and Second Circuit's
> approach to interpreting the identical statutory
> term differently depending upon whether the case
> involves sentencing or immigration.

Hernandez-Avalos at 510.

Based on the Fifth Circuit's decision in Hernandez-Avalos, the Board recently held that an alien whose adjudication of guilt had been deferred following a plea of guilty to possession of a controlled substance is considered to have been convicted of the offense for immigration purposes.  See Matter of Salazar-Regino, 23 I&N Dec. 223 (BIA 2002).  Additionally, the Board held that a conviction for possession of a controlled substance is a conviction of an aggravated felony.  Id. at 235.  The Board also held that it would not apply the Ninth Circuit's decision in Lujan-Armendariz outside the Ninth Circuit and that Matter of K-V-D-, Int. Dec. 3422 (BIA 1999) would not be applied to cases arising within the Fifth Circuit's jurisdiction.  Id.

In a later decision, the Board held that a determination of whether a state drug offense is a "drug trafficking crime", and thus an aggravated felony, will be based on the decisional authority of the federal circuit courts of appeal and not by reference to any legal standard adopted by the Board.  Matter of Yanez-Garcia, 23 I&N Dec. 390 (BIA 2002).  The Board reexamined its decisions in Matter of K-V-D-, Matter of L-G-, and Matter of Davis, 20 I&N Dec. 536 (BIA 1992).  The Board overruled its decision in Matter of K-V-D-, and modified its decisions in Matter of L-G- and Matter of Davis to the

extent they are inconsistent with its ruling in <u>Matter of Yanez-Garcia</u>. <u>Matter of Yanez-Garcia</u> at 396.

Reyna-Montoya's claim that applying the Board's decision in <u>Matter of Roldan-Santoyo</u> and the Fifth Circuit's decision in <u>Hernandez-Avalos</u> to his case deprives him of procedural due process involving "fair notice" is suspect. Reyna-Montoya's conviction was entered in November 2001, several years after the enactment of IIRIRA. It is absurd to believe that Reyna-Montoya considered the immigration consequences of his actions prior to engaging in his criminal activity. Likewise, if Reyna-Montoya had truly considered the immigration consequences as strategy in his criminal proceedings, he would have been alerted to the sweeping statutory changes brought about by IIRIRA and would have been cautious in relying on decisions rendered prior to its enactment.

"[T]he United States has always been a nation of immigrants; it is one of our greatest strengths. But aliens arriving at our shores must understand that residency in the United States is a *privilege*, not a *right*. For those aliens ... who engage in ... criminal acts during their stay here, this country will not offer its embrace." <u>Matter of Jean</u>, 23 I&N Dec. 373, 384 (A.G. 2002). Having no **<u>right</u>** to remain in this country, Reyna-Montoya should have been aware of the possibility that his **privilege** to reside here legally was in jeopardy at the time he was arrested for his drug offense. To believe otherwise is unconscionable.

27

Until the Board has rendered its decision, there is no administratively final decision. As an ongoing application, the alien runs the risk that, during the pendency of the appeal, the law may change, perhaps in an unfavorable way. The law in this area is always evolving and what may be the law today may not be the law tomorrow. A case decided according to Board precedent yesterday may be decided differently today based on changes in the law, either statutorily or through court decisions. Reyna-Montoya has been convicted of an offense defined by the Controlled Substances Act. The crime for which he was convicted - possession of marijuana - is a felony in the State of Texas. In the Fifth Circuit, this amounts to a "drug trafficking crime" and, therefore, an aggravated felony.

Reyna-Montoya further argues that he was erroneously denied his right to apply for relief from removal in the form of cancellation of removal pursuant to §240(A)(a) of the Act. Section 240A(a) allows the Attorney General to cancel the removal of an individual who:

> (1) has been an alien lawfully admitted for permanent residence for not less than 5 years,
>
> (2) has resided in the United States continuously for 7 years after having been admitted in any status, and
>
> (3) has not been convicted of any aggravated felony.

Since Reyna-Montoya has been convicted of an aggravated felony, he is statutorily ineligible for cancellation of removal. §240A(a)(3) of the Act. The immigration judge did not err in finding Reyna-Montoya ineligible for relief from removal.

### III. THE RULING ON THE NINTH CIRCUIT COURT IN LUJAN-ARMENDARIZ v. INS SHOULD NOT BE APPLIED IN THIS CASE AS IT HAS NO EFFECT ON REYNA-MONTOYA'S CONVICTION.

In Lujan-Armandariz v INS, 222 F.3d 728 (9th Cir. 2000), the Ninth Circuit consolidated the cases of Mauro Roldan-Santoyo[4] and Lujan-Armendariz to determine whether the definition of "conviction" enacted in §101(a)(48)(A) of the Act, 8 U.S.C. §1101(a)(48)(A), repealed the Federal First Time Offender Act[5], and whether such treatment should be extended to the FFOA's state counterparts. The first-time drug possession convictions of Roldan and Lujan had been set aside pursuant to state rehabilitative statutes. Finding that their convictions satisfied the

---

[4] Roldan's appeal to the Board resulted in Matter of Roldan-Santoyo, Int. Dec. 3377 (BIA 1999).

[5] The FFOA applies to first-time federal drug offenders guilty of simple possession, who have the charges against them dismissed after they plead guilty and serve their term of probation. The FFOA provides that after such a charge is dismissed, it "shall not be considered a conviction for the purpose of disqualification or disability imposed by law upon conviction of a crime, or for any purpose." 18 U.S.C. §3607(b). Further, the person shall be restored, "in the contemplation of the law to the status he

rehabilitative state statutes.  It should be noted that even the

Lujan majority noted that its decision did not effect that the

conviction definition has on state expungements under state

rehabilitation laws in general.  Lujan, 222 F.3d at 742.

The analysis applied by the panel in Lujan reached the issue

of whether the conviction definition repeals the First Offender Act

in whole or in part.  The Court concluded that it does not and that

the FFOA trumps the clear language of §101(a)(48) of the Act, 8

U.S.C. §1101(a)(48).  Lujan, 222 F.3d at 742.  However, the

conclusion is contrary to the longstanding rule of statutory

construction that a general statute will not govern if a specific

statute covers the case.  Resolution Trust Corp v Seale, 13 F.3d

850, 854 (5th Cir. 1994) citing Green v Bock Laundry Mach. Co., 490

U.S. 504, 524 (1989); Morton v Mancari, 417 U.S. 535, 550-551

(1974). Applying these principles sub judice, §101(a)(48)(A) of the

Act, 8 U.S.C. §1101(a)(48)(A), which specifically deals with the

effects of rehabilitative expungements for immigration purposes,

takes precedence over the FFOA.

To the extent that it has addressed the issue, the Fifth

Circuit has agreed with the Board in finding that the definition of

"conviction" encompasses Texas deferred adjudications.  See Moosa v

INS, 171 F.3d 994, 1005 (holding that Texas deferred adjudication

---

expressly barred the use of deferred adjudication, Reyna-Montoya'
treatment should not be given effect.

was a "conviction" for purposes of determining an alien's

eligibility for permanent residency pursuant to § 245A of the Act,

8 U.S.C. §1255a); Garnica-Vasquez v Reno, 210 F.3d 558 (5th Cir.

2000)(a habeas case of a petitioner with a deferred adjudication of

guilty for indecency with a child in which the Court cited Moosa

and noted that a deferred adjudication is a conviction for

immigration purposes).

Additionally, two other courts of appeals have construed

§101(a)(48) of the Act, 8 U.S.C. §1101(a)(48) differently than the

Lujan majority as to the clarity and meaning of the statute's

language as applied to rehabilitative expungements.  See Herrera-

Inirio v INS, 208 F.3d 299 (1st Cir. 2000)(holding expunged crime

of domestic violence is still a conviction for immigration

purposes); Griffiths v INS, 243 F.3d 45 (1st Cir. 2001)(First

Circuit defers to Board's interpretation of "conviction" where

petitioner was subject to a "guilty filed" disposition as a result

of a firearm violation under Massachusetts law) United States v

Campbell, 167 F.3d 94 (2d Cir. 1999)(Texas drug conviction vacated

upon completion of probation is a "conviction" within the meaning

of new statute as incorporated by federal sentencing guidelines).

As argued, §101(a)(48) of the Act, 8 U.S.C. §1101(a)(48),

makes "guilt" the dispositive factor in whether there is a

"conviction" for immigration purposes - not what type of

rehabilitative treatment a criminal received, and Congress intended

32

to prevent aliens who were clearly guilty of criminal conduct from using a variety of rehabilitative procedures to escape the immigration consequences of their crimes.

Finally, the court in Lujan misunderstands the prior extension of federal first offender treatment to state offenders. In Carr v. INS, 86 F.3d 949, 951-52 (9th Cir, 1996), affirming that this extension had no effect for state firearms offenders, the Ninth Circuit repeatedly described the agency's extension of FFOA treatment to state offenders as a "policy," "practice," or "approach". In addition, in Paredes-Urrestarazu v. INS, 36 F.3d 801, 814-15 (9th Cir. 1994), the Ninth Circuit also repeatedly described the agency's extension of FFOA treatment to state offenders as a "policy" or "a long-standing practice." Accordingly, the Ninth Circuit has clearly acknowledged that the extension of FFOA treatment derived out of Board policy and not a constitutional mandate.

Given that the extension of FFOA treatment resulted of Board policy, it is well-established that the Board may elect to proceed upon a different course. Rust v. Sullivan, 500 U.S. 173, 186-87 (1991) ("An agency is not required to 'establish rules of conduct to last forever'"). As the Supreme Court has acknowledged:

> The fact that the agency has from time to time
> changed its interpretation of the term . . .
> does not . . . lead us to conclude that no
> deference should be accorded the agency's
> interpretation of the statute. . . .  On the

> contrary, the agency, . . . must consider
> varying interpretations and the wisdom of its
> policy on a continuing basis.

Chevron, 467 U.S. at 863-64.  An agency need only justify its

decision to change policy by providing a "reasoned analysis."

Motor Vehicle Manufacturers Association v. State Farm Mutual

Automobile Insurance, 463 U.S. 29, 42 (1983); Davila-Bardales v.

INS, 27 F.3d 1, 5(1st Cir. 1994).

        With the Board free to reconsider the wisdom of its

interpretation on a continuing basis, the Board was justified in

taking occasion to re-evaluate its policy regarding state

expungements of convictions for at least two reasons.  First,

Congress, in enacting §101(a)(48) of the Act, 8 U.S.C.

§1101(a)(48), provided a uniform definition of a "conviction" - a

definition which had previously been provided only by the Board's

interpretation.  Second, it was appropriate for the Board to

interpret the definition of a "conviction" and its policy regarding

expungements in light of the decisions of the Fifth Circuit

regarding the role of equal protection in the expungement context.

As such, this Court should follow the Board and find that under

§101(a)(48) of the Act, 8 U.S.C. §1101(a)(48), Reyna-Montoya stands

convicted for immigration purposes.  The plain language of the

statute provides that Reyna-Montoya is removable by reason of

having committed criminal offenses covered by §237(a)(2)(A)(iii) of

34

the Act, 8 U.S.C. §1227(a)(2)(A)(iii), and §237(a)(2)(B)(i) of the
Act, 8 U.S.C. §1227(a)(2)(B)(i).

It bears noting that Reyna-Montoya was convicted of having
marijuana in his possession.  He was convicted in Brooks County,
Texas, a remote county between Brownsville, Texas, and Houston,
Texas, in which there is an immigration checkpoint.  However, he
resides in the Rio Grande Valley of south Texas.  The circumstances
of his arrest are set out in the I-44 and shows that marijuana was
found secreted in Reyna-Montoya's vehicle and that he was on his
way to Austin, Texas.  Government Exh. "H".

Unlike the federal statutes, Texas statutes do not provide for
possession with intent to deliver - an offender is either charged
with possession or delivery regardless of the amount involved.
However, based solely on the amount involved, drug trafficking can
be inferred.  See e.g., Nunez-Payan v. INS, 811 F.2d 264, 267,
rehrng denied 815 F.2d 384, 385 (5th Cir. 1987); Matter of Rico, 16
I&N Dec. 181, 186 (BIA 1977); Matter of R-H-, 7 I&N Dec. 675, 676
(BIA 1958).  The Board has held that a state drug offense is an
aggravated felony under state law if it is a felony under state law
and has a nexus to the unlawful trading, dealing, or selling of a
controlled substance to be considered illicit trafficking as
commonly defined.  Matter of Davis, 20 I&N Dec. 536 (BIA 1992).
Construed as a drug trafficking crime, Reyna-Montoya would not have
been afforded FFOA treatment.  He is not being treated differently

because he was convicted of possession of marijuana in the State of Texas.

Reyna-Montoya's position that just because the Ninth Circuit reached a result that was favorable to the aliens in Lujan-Armendariz, he should be afforded the same consideration regardless of the fact that he falls within the jurisdiction of the Fifth Circuit is also unreasonable. Such a broad statement has been rejected by both the Eleventh Circuit Court of Appeals ("Eleventh Circuit") and the Eighth Circuit Court of Appeals ("Eighth Circuit"). Fernandez-Bernal v. Attorney General, 257 F.3d 1304 (11th Cir. 2001); Vasquez-Velezmoro v. INS, 281 F.3d 693 (8th Cir. 2002).

The Eleventh Circuit in Fernandez-Bernal found that it was not a violation of equal protection to treat an alien convicted under a state rehabilitative statute differently than an alien convicted under FFOA if the term of probation was different. "[T]reating aliens differently based on the nature of the sentence they receive" does not violate equal protection. Fernandez-Bernal at 1317. "[N]othing requires that aliens whose sentences would not have been expunged under the FFOA be given better treatment under immigration laws merely because they received their sentences and expungements under state law." Id. at 1317, n.12.

Echoing the Eleventh Circuit's findings, the Eighth Circuit found that although a state defendant and a defendant under FFOA

may be "similarly situated (in that the intent of the judge was to provide them with the opportunity to have their convictions expunged), we still see a rational basis for treating differently state and federal convictions that are expunged." <u>Vasquez-Velezmoro</u> at 698. "There are conceivable states of facts to explain treating differently aliens with state expunged convictions and aliens with FFOA expunged convictions." <u>Id</u>.

The term of Reyna-Montoya's probation was three years – significantly longer than the one-year-or-less sentence of probation that defendants need to be eligible for FFOA relief. Since Reyna-Montoya's sentence is different, treating him differently here is not arbitrary or unreasonable.

**CONCLUSION**

Reyna-Montoya has been "convicted" of a criminal offense as that term is defined by the Act and interpreted by the Board and the Fifth Circuit. Additionally, Reyna-Montoya has been convicted

///

///

///

///

///

///

37

of an "aggravated felony" as that term is defined by the

Act and interpreted by the Fifth Circuit.  For the foregoing

reasons, the Court should dismiss the petition for writ of habeas

corpus.


Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney
Southern District of Texas

LISA M. PUTNAM
Special Assistant U.S. Attorney
P.O. Box 1711
Harlingen, Texas 78551
Tel:  (956) 389-7051
Georgia Bar No. 590315
September 18th, 2002    Federal Bar No. 23937


38

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Respondents' Return and Motion to Dismiss the Petition for Writ of Habeas Corpus was mailed via first class mail, postage prepaid to:

Lisa Brodyaga, Esquire
Refugio Del Rio Grande
17891 Landrum Park Rd.
San Benito, TX  78586

on this 18th day of September, 2002.


LISA M. PUTNAM
Special Assistant United States Attorney

39



OPTIONAL FORM 155 (REV 4-77)
(Formerly _____)
DEPT OF STATE

50155-102

**IGF HAS PROCESSED**

SLB CHECKED ~~MAR 1 X 1981~~
(Date)    (Init.)

## IMMIGRANT VISA AND ALIEN REGISTRATION

IV 6740936

THE IMMIGRANT
[X] HAS    [ ] HAS NOT
BEEN PREVIOUSLY IN
THE UNITED STATES

OF: 39 *(Family Name)*    *(First Name)*    *(Middle Name)*
REYNA MONTOYA , EUGENIO

I & NS FILE NUMBER, IF
KNOWN #LG

ACTION BY IMMIGRANT INSPECTOR
U.S. IMMIGRATION
403 HID 20
MAR 11 1981
ADMITTED 1403
UNTIL _____ *(CLASS)*

THE IMMIGRANT NAMED ABOVE ARRIVED IN THE UNITED
STATES VIA
!403 HID
*(Name of vessel or flight no. of arrival)*

INELIGIBILITY FOR VISA WAIVED UNDER SECTION
[ ] 212(e)    [ ] 212(h)
[ ] 212(g)    [ ] 212(i)

SEC. 212(a)(14)
LABOR CERTIFICATION
[X] NOT APPLICABLE
[ ] ATTACHED
[ ] NOT REQUIRED

| MO-DAY-YR OF BIRTH | COUNTRY OF BIRTH | OCCUPATION | COUNTRY OF RESIDENCE | MARITAL STATUS | SEX | NATIONALITY |
|---|---|---|---|---|---|---|
| 01-19-72 | MEXICO | Student /50 | MEXICO | [ ]M [X]S [ ]W [ ]D [ ]SEP | M | MEXICAN 82 |

FINAL ADDRESS IN THE UNITED STATES: STREET ADDRESS Route 3 Box 222 R    CITY, STATE AND ZIP CODE, IF AVAILABLE Mission, Texas    78572 421

ACTION OF S.I.O.    ACTION ON APPEAL    U.S.P.H.S. PROCESSED FOR I-551
TEMPORARY EVIDENCE OF
LAWFUL ADMISSION FOR
PERMANENT RESIDENCE
AUTHORIZED

This visa is issued under Section 221 of the Immigration and Nationality Act, and upon the basis of
the facts stated in the application. Possession of a visa does not entitle the bearer to enter the United
States if at the time he seeks to enter he is found to be inadmissible. Upon arrival in the United States,
it must be surrendered to a United States Immigration Officer.

AMERICAN    **CONSULATE GENERAL**

AT    **MONTERREY, N. L., MEXICO**

*(signature)*
of the United States of America.
Roy E. Chavers
Consul of the United States
of America

### IMMIGRANT CLASSIFICATION

CLASSIFICATION SYMBOL
SA-1 006

FOREIGN STATE/OTHER AREA LIMITATION

IMMIGRANT VISA NO.

ISSUED ON
MAR 11 1981    *(Day)*    *(Month)*    *(Year)*

THE VALIDITY OF THIS VISA EXPIRES MIDNIGHT AT THE END OF:
*(Day)*    *(Month)*    *(Year)*
JUL 1981

**PASSPORT**

NO.
—969—

OR OTHER TRAVEL DOCUMENTS (Describe)

ISSUED
TO    Eugenio Reyna Reyna

BY    Mexican Consulate
McAllen, Texas

ON
February 27, 1981    SCT

EXPIRES
February 26, 1982    IV 6740936

Tariff Item No. 21
Fee Paid $20
Local Cy Equiv.



Cause No. <u>00-11-07208</u>

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | BROOKS COUNTY, TEXAS |
| | § | |
| **EUGENIO MONTOYA REYNA** | § | 79TH JUDICIAL DISTRICT |

## ORDER OF DEFERRED ADJUDICATION
## PLACEMENT ON COMMUNITY SUPERVISION

Judge Presiding: _Terry A. Canales_          Date of Judgment: ~~October 25~~ *Nov. 1*, 2001

-----------------------------------------------------------------------

States' Attorney:          Carlos Omar Garcia
Defendant's Attorney:      Juan Hinojosa

-----------------------------------------------------------------------

Offense convicted of:      POSSESSION OF MARIHUANA

FILED
AT _10-23_ O'CLOCK __ M
NOV 01 2001
_____, Dist. Clerk, Brooks Co., TX
BY _____ Deputy

-----------------------------------------------------------------------

Degree or class of offense:   3rd.
Date Offense Committed:       01/07/2000

-----------------------------------------------------------------------

Charging Instrument:       Indictment

-----------------------------------------------------------------------

Plea:  Guilty

-----------------------------------------------------------------------

Term of Plea Agreement (In Detail):      3 years deferred adjudication community supervision

-----------------------------------------------------------------------

Plea to enhancement:       N/A

-----------------------------------------------------------------------

Total Amount of Restitution: $0

-----------------------------------------------------------------------

Restitution to be paid to:   Name:      _____
                             Address:   _____

Findings on Special Issue (In Detail):  N/A

-----------------------------------------------------------------------

Period of Supervision:  3 years                Fine: $2,000.00

-----------------------------------------------------------------------

Court Costs: $272.25 / ~~247.25 instanter~~    Date to Commence: ~~October 25~~ *Nov. 1*, 2001

-----------------------------------------------------------------------

**This sentence is to be served concurrent with any other sentence unless otherwise specified.**

-----------------------------------------------------------------------



On the date stated above, the above numbered and entitled cause was reached and called for trial, and the State appeared by the attorney stated above, and the Defendant and the Defendant's attorney were also present. Thereupon, both sides announced ready for trial, and the Defendant, Defendant's attorney, and the State's attorney agreed in open court and in writing to waive a jury trial of this cause and to submit it to the Court. The Court consented to the waiver of a jury herein. The Defendant further waived the reading of the indictment and, upon been asked by the Court as to how the Defendant pleaded, entered a plea of guilty to **POSSESSION OF MARIHUANA**. Thereupon, the Defendant was admonished by the Court of the consequences of said plea, and, it appearing to the Court that the Defendant was competent to stand trial and that the Defendant was not influenced in making said plea by any consideration of fear or by any persuasion prompting a confession of guilt, the free and voluntary plea of guilty was received by the Court and is now entered of record in the minutes of the Court as the plea of the Defendant. The Court, having heard all evidence from the State and the Defendant, and having heard argument of counsel for both parties, found that there was sufficient evidence to support the Defendant's plea.

However, the Court, after due consideration, and after reviewing the presentence investigation report, is of the opinion that the best interest of society and the Defendant will be served in this cause by deferring further proceedings without entering an adjudication of guilty pursuant to TEX. CODE CRIM. PRO. art. 42.12 § 5.

It is therefore ORDERED that further proceedings in this cause shall be and are hereby deferred and the Defendant is place on community supervision in this cause for **3 years with a fine in the amount of $2,000.00**, beginning on this date, subject to the conditions of supervision imposed by the Court and served on the Defendant.

SIGNED this ___1___ day of ____Nov____, 200_1_.

_____
JUDGE PRESIDING

Notice of Appeal: _____

The Defendant shall:

1.  Commit no offense against the laws of this State or any other State or of the United States of America;

2.  Abstain from the consumption of alcohol in any form at any time and do not go upon any premises where alcoholic beverages are served or sold as the primary business purposes;

3.  Avoid injurious or vicious habits and abstain from the use of harmful substance, narcotic drug or other controlled substances in any form, except as prescribed by a licensed physician for medical purposes;

4.  Avoid places and persons of harmful or disreputable character, including places where controlled substances or dangerous drugs are illegally possessed, sold or used and specifically not associate with persons with felony criminal records;

5.  Report in person, during the term of probation, to the Adult Probation Officer of this County, once each month, between the first and tenth days of the month;

6.  Permit the probation Officer to visit you in your home or elsewhere in order to supervise this probation;

7.  Not leave the State of Texas or the County of approved residence without first obtaining permission in writing from the Probation Officer showing that the Court authorizes such removal;

8.  Support your dependents, if any;

9.  Report in person or by letter to the Probation Officer within five days after any charge of violating any law of the State of Texas or any other state or of the United States of America has been made against the defendant, stating the offense charged, the Court in which the charges is filed, and disposition of the charge.

10. Furnish the Probation Officer with accurate information concerning background and present status and report in person or by letter, within five days, any changes in employment or marital status.

11. Not purchase nor have in possession a rifle, shotgun, revolver, or any other weapon, either at home, in an automobile or on the defendant's person;

12. Submit to a breath test for alcohol and a urinalysis immediately upon arrest for any offense or when requested by the Probation Officer for the purpose of determining whether or not you are using or under the influence of alcohol, narcotic drugs, marijuana or any other controlled substance:

13. Abide by an 10:00 P.M. curfew every night.  The defendant shall be in the defendant's home or place of residence before 10:00 P.M. each night and shall not leave such home or place of residence between 10:00 P.M. and 5:00 A.M. without written permission of the Probation Officer.  The written permission, when issued, is to be kept on the defendant's person when away from place of residence.

14.  Report all income and the sources of income from whatever source to the Probation Officer.  Income means wages, salary, commission, gifts, loans, found property and anything else of value, no matter how acquired.

15.  Pay to the Probation Officer of this county, a probation supervision fee of $50.00 per month every month of the probationary period beginning in the month next following entry of this Order;

16.  Pay a fine of $ _2,000.00_ _____ payable:

   _____ A.  Instanter

   _____ B.  Within _____ days of the date of this judgment.

   __✓___ C.  $___75.00___ per month, beginning on _Nov. 15, 2001_____, and on the 1st day of the month thereafter until paid in full.

   _____ D.  $_____ instanter, and $_____ per month, beginning on _____, and payable thereafter on the 1st day of each month until paid in full.

   Payment to be made to the: Brooks County District Clerk's Office, P. O. Box 534, Falfurrias, Brooks County, Texas 78355.

17.  Pay Court Costs of $272.25 and the fee for court appointed counsel of $___Referred_____, payable:

   _____ A.  Instanter

   __✓___ B.  Within 180 days of the date of this judgment.

   _____ C.  $_____ per month beginning on _____, and on the 1st day of each month until paid in full.

   _____ D.  $_____ instanter, and $_____ per month, beginning on _____, and payable thereafter on the 1st day of each month until paid in full.

   Payment to be made to the: Brooks County District Clerk's Office, P. O. Box 534, Falfurrias, Brooks County, Texas 78355.

18.  Make restitution to _____ in the amount of $_____ payable:

   _____ A.  Instanter

   _____ B.  Within __ days of the date of this judgment.

   _____ C.  $_____ per month beginning on_____, and payable thereafter on the 1st day of each month until paid in full.

   _____ D.  $_____ instanter, and $_____ per month, beginning on _____, and payable thereafter on the 1st day of each month until paid in full.

Payment to be made to the Brooks County District Clerk's Office, P. O. Box 534, Falfurrias, Brooks County, Texas 78355.

19. Pay to the Texas Department of Public Safety, Restitution Accounting, P. O. Box 4087, Austin, Texas 78773, in the sum of **$140.00** as reimbursement for costs incurred in the confiscation, analysis, storage, or disposal of raw materials, controlled substances, chemical precursors, drug paraphernalia, or other materials seized in connection with this offense, as follows:

_____ A.  Instanter

_____ B.  Within <u>180</u> days of the date of this judgment.

_____ C.  At $_____ per month, beginning on _____, and payable thereafter on the first day of each month until paid in full.

_____ D.  $_____, instanter, and $_____ per month, beginning on _____ and payable thereafter on the 1st day of each month until paid in full.

Payment to be made to the Brooks County District Clerk's Office, P O. Box 534, Falfurrias, Brooks County, Texas 78355.

### CHECK OFF THE FOLLOWING IF APPLICABLE

_____ Assigned to Intensive Probation (Intensive Supervision Project) for one (1) year or until the level of supervision is changed by the Court and/or the Probation Officer.  Submit a urine specimen at the direction of the Probation Officer, daily if ordered.  Report twice monthly or as directed by the Adult Probation Department.

_____ Assigned to Intensive Probation for Specialized Caseload--(circle one: Mental Health/ Developmentally Disabled/ Alcohol/ Drug) Offenders (in lieu of incarceration if TDC) for a period of one (1) year or until the level of supervision is changed by the Court and/or the Probation Officer.  Report twice monthly or as directed by the Adult Probation Department.

$\checkmark$ Submit a urine specimen at the direction of the Probation Officer, daily if ordered.

$\checkmark$ Attend and participate with drug counseling (out-patient) and remain until officially discharged by the proper authorities.

_____ Attend and participate with professional counseling and/or psychological/psychiatric treatment (out-patient) as directed by the Adult Probation Department and continue with said counseling until officially discharged by the proper authorities.

_____ Attend and Participate with alcohol counseling (out-patient) and remain until officially discharged by the proper authorities.

_____ Attend and participate with residential treatment and remain until officially discharged by the proper authorities.

_____ Attend and participate with Alcoholics Anonymous meetings (2 times per week) until discharged by your Probation Officer.

✓ Obtain and keep gainful employment during the period of this probation.

~~✗~~ Obtain your General Equivalency Diploma (GED) within (1) one year from the date of your probation. Must complete an Adult Education and/or English Literacy course.

_____ Enroll in high school and remain there until successful completion of all requirements necessary to obtain a high school diploma. The defendant shall have no unexcused absences while enrolled in high school.

_____ Upon obtaining a high school diploma, attend either a vocational school, college or university and remain there until successful completion of all requirements necessary to obtain a degree or certificate.

_____ Enroll in an Adult Education or English Literacy Program and remain until officially discharged by proper authorities.

_____ Enlist in the Armed Services of the United States of America and remain there until successful completion of the term of enlistment.

✓ Attend and participate with the Community Service Restitution Program and complete ~~80~~ (160)/ ~~240~~ hrs. beginning _Nov. 1, 2001_ at _16_ hours per month. (A minimum of 16 hours per month.)

_____ Attend and participate with the Job Corp Program beginning _____. Defendant shall continue with said program until discharged by proper authorities.

_____ The defendant shall submit to Acquired Immune Deficiency Syndrome (HIV) testing and/or counseling as directed by the Brooks County Community Supervision and Corrections Department within thirty (30) days from the date of the signing of this Order.

_____ Pay _____ to Community Supervision and Corrections Department of Brooks County for the local crime stoppers program within _____ days of the date this order is signed by the Court.

_____ Pay _____ ($1,000.00 or less for felony) to Community Supervision and Corrections Department of Brooks County for Abused Children's Counseling Fund within _____ days of the date this order is signed by the Court.

_____ The defendant is hereby committed as pursuant to TEX. CODE CRIM. PRO. art. 42.12 § 14(b) or 22(a)(4); the Court finds that you have been convicted of a felony other than aggravated sexual assault, sexual assault, indecency with a child or an attempt of the foregoing offense, need drug or alcohol supervision, and that you are a suitable candidate for treatment pursuant to the criteria established by the Texas Board of Criminal Justice under TEX. GOV. CODE § 493.009(b). Therefore, you shall remain confined in a Substance Abuse Felony Treatment Facility, as established in TEX. GOV. CODE § 493.009, for no less than ninety days or more than twelve months. Comply with all rules and regulations of the facility, attend and successfully complete any treatment programs, and remain in such facility until discharged by the

Court.  Remain in the Brooks County Jail until you are transported to a Substance Abuse Treatment Facility.

_____ Voluntarily commit yourself, by _____, to the outpatient chemical abuse treatment program approved by the Court and the adult supervision officer in charge of the case. Participate in all programs offered, abide by all rules of the program, and do not leave or withdraw from the program without the permission of the Court and the adult supervision officer in charge of the case and the director of the treatment facility or his official designate, be responsible for any costs of the program, and provide the adult supervision officer with satisfactory written proof of attendance.

_____ Attend and participate in the chemical abuse treatment approved by the Court and the adult supervision officer in charge of the case. Participate in all programs offered, abide by all rules of the program, and do not leave or withdraw from the program without the permission of the Court and the adult supervision officer in charge of the case and the director of the treatment facility or his official designate, be responsible for any costs of the program, and provide the adult supervision officer with satisfactory written proof of attendance.

_____ Attend and successfully complete the National Corrective Training Institute Hot Check Course, by _____, as instructed by the adult supervision officer in charge of your case, provide the officer with satisfactory written proof of completion and be responsible for any costs of the classes.

_____ Have no contact, whether in person, by electronic communication, in writing, by and through a third party, or otherwise, with _____.

_____ Write a letter of apology for the offense you committed against _____, by _____, to be approved by the Court and delivered by the adult supervision officer in charge of your case to _____.

_____ The defendant is hereby committed to the Brooks County Jail for _____ days.

## JAIL:

_____ The Court finds that the Defendant is not indigent, willfully refused to pay, or failed to make sufficient bona fide legally to acquire the resources to pay and that no alternative method of discharging fine and costs is appropriate for the Defendant. Therefore, the Court orders the Defendant to discharge the fine and costs; the Defendant shall receive credit of $50.00 for each day of confinement.

## RESTITUTION CENTER

_____ Enter and remain in a community correctional facility established for the payment of restitution, namely, _____ for not less than _____ months and not more than 24 months, beginning on _____. Obey the following orders:

(a)  Participate in all programs, obey all rules and regulations of the facility until successful completion of the program.  Follow and complete all recommendations regarding restitution and length of stay as set forth by the staff of the facility.

(b)  Remain confined in the facility at all times, except, as authorized by the facility director or his designee, time spend attending and traveling to and from and education or rehabilitation program, time spent attending and traveling to and from a community service project, time spend away from the facility for the purpose of restitution and time spent traveling to and from word, if applicable.

(c)  Submit urine, breath, blood and saliva samples when requested by the facility staff.

(d)  Participate in _____ hours of community service projects as assigned by the facility staff, either during off-work hours if employed or during any time if you are unable to find employment.

(e)  If employed during confinement in the facility, pay a percentage of you income to your dependents for their support, to the facility for room and board, necessary travel expenses to and from work and community service projects, restitution to _____ and any other incidental expenses you may incur.

(f)  Remain in the Brooks County Jail until you are transported to the facility.

## LOCAL BOOT CAMP

_____ Enter and remain in a community correctional facility established for a local boot camp program, namely, _____ for not less than _____ months and not more than 24 months, beginning on _____.  Obey the following orders:

(a)  Participate in all programs, obey all rules and regulations of the facility until successful completion of the program.  Follow and complete all recommendations regarding restitution and length of stay as set forth by the staff of the facility.

(b)  Remain confined in the facility at all times, except, as authorized by the facility director or his designee, time spend attending and traveling to and from and education or rehabilitation program, time spent attending and traveling to and from a community service project, time spend away from the facility for the purpose of restitution and time spent traveling to and from word, if applicable.

(c)  Submit urine, breath, blood and saliva samples when requested by the facility staff.

(d)  Participate in _____ hours of community service projects as assigned by the facility staff, either during off-work hours if employed or during any time if you are unable to find employment.

(e)  If employed during confinement in the facility, pay a percentage of you income to your dependents for their support, to the facility for room and board, necessary travel expenses to and from work and community service projects, restitution to _____ and any other incidental expenses you may incur.

(f)  Remain in the Brooks County Jail until you are transported to the facility.

## FOR SEX OFFENDERS:

_____ The Court further finds that the Defendant has been convicted for a sex offense requiring sex offender registration with your local municipal or county law enforcement agency as a sex offender within 30 days.  If you move to a new residence, register with your local municipal or county law enforcement agency within seven days of moving to the new residence.

_____ Report to _____, a licensed Therapist on the date specified by the adult supervision officer in charge of your case for an evaluation,

including psychological, psychiatric and/or psychophysiological testing, a clinical evaluation and a clinical polygraph and be responsible for all costs of said evaluation and testing.

_____ Attend and participate in the sex offender program approved by the Court and the adult supervision officer in charge of your case.  Participate in psychological, psychiatric, and psychophysiological testing and report for clinical polygraph examinations as directed by the therapist.  Abide by all rules and regulations of the program and do not leave or withdraw from the program without the permission of the Court, the adult supervision officer in charge of your case and the program director or his/her official designee, and be responsible for any costs of the program.

_____ Have no unsupervised contact with children under the age of seventeen.  Do not frequent, remain about, or enter any place where children under the age of seventeen congregate.

_____ Do not reside in any household with children under the age of seventeen until such residence is approved in writing by the sex offender program therapist, the Court, and the adult supervision officer in charge of your case.

_____ Do not reside in any building located within 1,000 feet of a school, playground, or child care center.

_____ Do not accept any employment and do not participate in any volunteer activity requiring unsupervised contact with children under the age of seventeen.

_____ Pay all costs of therapy and medical treatment incurred by _____ as a result of your criminal misconduct, namely, _____.

## FOR DRUG OFFENDERS:

_____ If the Defendant is under the age of 21 years, his/her driver's license shall be suspended for 12 months beginning on the date of this judgment and ending on _____.

_____ If the Defendant is 21 years of age or older, his/her driver's license shall be suspended for a period of 180 days immediately following the date of this judgment and ending on _____.

_____ Other: _____
_____
_____

**FOR D. W. I. DEFENDANTS:**

_____ a. SUCCESSFULLY COMPLETE within 60 days of the date of this Order the Brooks County Traffic Safety Education Program (for rehabilitation of persons who have **driven while intoxicated**). Note: a $35.00 fee is charged for this program. This fee is to be paid within 30 days from the date of this Order.

_____ b. If you operate any motor vehicle, you must obtain and maintain at least the minimum limits of Automobile Liability Insurance as required by: V.C.S. 670(1)(h)(1A). Proof of such insurance shall be shown to the Probation Officer within 15 days of the date of this ORDER, and monthly throughout the probation term.

_____ c. Participate in a community-based Alcohol/Drug Abuse Program: _____

_____ d. Probation review: Driver's License suspended for 12 months, probated for 24 months.

_____ e. Defendant is ordered to serve _____ days in Brooks County Jail, as follows: _____.

_____ f. Driver's license suspended beginning _____ and ending on _____.





Defendant's Right Thumb                    Defendant **EUGENIO MONTOYA REYNA**

The court further finds there was in existence a plea bargaining agreement between the state and the defendant and that the punishment assessed does not exceed the punishment recommended.

Done in Open Court this _1_ day of _Nov_, 200_1_.

Defendant **EUGENIO MONTOYA REYNA**
acknowledges that he has read and received a copy of
the above order.

Judge Presiding



U. S. Department of Justice
Immigration and Naturalization Service

# Notice to Appear

## In removal proceedings under section 240 of the Immigration and Nationality Act

File No: **A036 740 936**
Case No: **FLF0211000003**

In the Matter of:

Respondent: **Eugenio REYNA-MONTOYA**             currently residing at:

**PORT ISABEL SERVICE PROCESSING CENTER ROUTE 3, BOX 341**
**LOS FRESNOS TEXAS 78566**        **(956)547-1700**
(Number, street, city state and ZIP code)        (Area code and phone number)

☐ 1. You are an arriving alien.
☐ 2. You are an alien present in the United States who has not been admitted or paroled.
☒ 3. You have been admitted to the United States, but are deportable for the reasons stated below.

The Service alleges that you:

       **See Continuation Page Made a Part Hereof**

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

       **See Continuation Page Made a Part Hereof**

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution.

☐ Section 235(b)(1) order was vacated pursuant to: ☐ 8 CFR 208.30(f)(2)    ☐ 8 CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at: _____
**201 East Jackson Street Harlingen TEXAS US 78550**
(Complete Address of Immigration Court, Including Room Number, if any)

on **a date to be set** at **a time to be set** to show why you should not be removed from the United States based on the
   (Date)        (Time)
charge(s) set forth above.

**ELIGIO PENA**
**ACTING PATROL AGENT IN CHARGE**
(Signature and Title of Issuing Officer)

Date: **November 1, 2001**           **Falfurrias, Texas**
(City and State)

See reverse for important information

Form I-862 (Rev. 4-1-97)

## Notice to Respondent

**Warning:  Any statement you make may be used against you in removal proceedings.**

**Alien Registration:**  This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings.  You are required to carry it with you at all times.

**Representation:**  If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 3.16.  Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this Notice.

**Conduct of the hearing:**  At the time of your hearing, you should bring with you any affidavits or other documents which you desire to have considered in connection with your case.  If any document is in a foreign language, you must bring the original and a certified English translation of the document. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or deportable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge.

You will be advised by the immigration judge before whom you appear, of any relief from removal for which you may appear eligible including the privilege of departing voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:**  You are required to provide the INS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form.  Notices of hearing will be mailed to this address.  If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS.

---

### Request for Prompt Hearing

To expedite a determination in my case, I request an immediate hearing.  I waive my right to have a 10-day period prior to appearing before an immigration judge.

_(Signature of Respondent)_

Before: _____
         Sra   Vargas, Roy Jr.
         (Signature and Title of INS Officer)

Date:  11 - 1 - 01

---

### Certificate of Service

This Notice to Appear was served on the respondent by me on __November 1, 2001__ , in the following manner and in
_(Date)_

compliance with section 239(a)(1)(F) of the Act:

☒ in person          ☐ by certified mail, return receipt requested          ☐ by regular mail

☒ Attached is a list of organizations and attorneys which provide free legal services.          Pg. Index

☒ The alien was provided oral notice in the __SPANISH__ language of the time and place of  his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____                    ROY VARGAS JR
(Signature of Respondent if Personally Served)    SENIOR PATROL AGENT
                                                  _____
                                                  (Signature and Title of Officer)

Form I-862 (Rev. 4-1-97)

| Alien's Name | File Number<br>Case No: FLF0211000003 | Date |
|---|---|---|
| Eugenio REYNA-MONTOYA | A036 740 936 | November 1, 2001 |

**The Service alleges that you:**

1) You are not a citizen or national of the United States;

2) You are a native of MEXICO and a citizen of MEXICO;

3) You were admitted to the United States at HIDALGO, TEXAS on or about   March 12, 1981 as a IMMIGRANT;

4) You were, on November 01, 2001 , convicted in the 79th Judicial District Court [at] Brooks County, Falfurrias, Texas for the offense of Possession of a Controlled Substance, to wit: Marijuana in violation of State Law.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 237(a)(2)(B)(i) of the Immigration and Nationality Act, as amended, in that, at any time after admission, you have been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in Section 102 of the Controlled Substances Act, 21 U.S.C. 802), other than a single offense involving possession for one's own use of 30 grams or less of marijuana.

| Signature<br>ELIGIO PENA | Title<br>ACTING PATROL AGENT IN CHARGE |
|---|---|

<u>  3  </u> of <u>  3  </u> Pages

Form I-831 Continuation Page (Rev. 6/12/92)



Immigration and Naturalization Service          Additional Charges of Inadmissibility/Deportability

In: ☒  Removal proceedings under section 240 of the Immigration and Nationality Act

☐  Deportation proceedings commenced prior to April 1, 1997 under former section 242 of the Immigration and
Nationality Act

**In the matter of:**

Alien/Respondent:  EUGENIO REYNA MONTOYA

File No:  A36 740 936        Address
:        C/O THELMA GARCIA, ESQ. 301 E MADISON, HARLINGEN, TX
78550

There is/are hereby lodged against you the additional charge(s) that you are subject to being taken into custody and deported or
removed from the United States pursuant to the following provision(s) of law:

Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (Act), as amended, in that, at any time after admission, you have been convicted of an aggravated felony as defined in section 101(a)(43)(B) of the Act.

In support of the additional charge(s) there is submitted the following factual allegation(s)  in addition to  in lieu of those set forth in the original charging document:

Dated:  **January 2, 2002**

_____
(Signature of Service Counsel)

Form I-261 (Rev. 4/1/97)N

4/22/2002
Ex la
CO| HER

FILE COPY

**Additional allegations (continued):**

Notice of Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office of the Immigration Review. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this Notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents which you desire to have considered in connection with you case. If any document is a foreign language, you must bring the original and a certified English translation of the document. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all the allegations in the charging document and that you are inadmissible or deportable on the charges contained in the charging document. You will have an opportunity to present evidence on you own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government.

You will be advised by the immigration judge before whom you appear, of any relief from removal for which you may appear eligible including the privilege of departing voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the INS, in writing, with you full mailing address and telephone number. You must notify the Immigration Court immediately by using form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide and address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the INS.

---

**Certificate of Service**

This charging document was served on the respondent ___ January 2, 2002 ___ in the following manner and in by me on

(Date)

compliance with section 239(a)(1)(F) of the Act:

| in person | ☐ | by certified mail, return receipt requested | x | by regular mail |

to: Eugenio Reyna Montoya, C/O Thelma Garcia, Esq. 301 E Madison, Harlingen, TX 78550

(Alien's Address)

☐  The alien was provided oral notice in the ___ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____          _____
(Signature and title of officer)          (Signature and title of officer)

Form I-261(Rev. 4/1/97)N



UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
Los Fresnos, Texas


File No.:  A 36 740 936                          March 5, 2002


In the Matter of


EUGENIO REYNA-MONTOYA,           )           IN REMOVAL PROCEEDINGS
                                 )
          Respondent             )


CHARGES:       Section 237(a)(2)(B)(i) Immigration and
               Nationality Act; Section 237(a)(2)(A)(iii)
               Immigration and Nationality Act


APPLICATIONS:  Termination of proceedings; cancellation of
               removal for certain permanent residents; Section
               240(A)(a) Immigration and Nationality Act;
               voluntary departure; Section 240(B) Immigration
               and Nationality Act


ON BEHALF OF RESPONDENT:         ON BEHALF OF SERVICE:

Thelma O. Garcia, Esquire        Flavio Ecsobar, Jr.,
                                 Assistant District Counsel

## ORAL DECISION OF THE IMMIGRATION JUDGE

        The Immigration Service issued a Notice to Appear with

respect to respondent on November 1st, 2001, and properly served

it upon him (Exhibit 1).  The Notice to Appear was filed with the

Court on November 9th, 2001, which commenced this removal

proceeding.  The Notice to Appear alleges that respondent has

been admitted into the United States but that he is deportable

for the reasons as stated in the Notice to Appear.  Specifically,

the Notice to Appear alleges that respondent is not a citizen or

ɔjs

national of the United States and that he is a native and citizen
of Mexico who was admitted to the United States at Hidalgo, Texas
on or about March 12th, 1981, as an immigrant.  It is further
alleged that on November 1st, 2001, respondent was convicted in
the 79th Judicial District Court at Brooks County, Falfurrias,
Texas, for the offense of possession of a controlled substance
to wit: marijuana in violation of state law.  The Notice to
Appear charges that respondent is subject to removal from the
United States under Section 237(a)(2)(B)(i) of the Immigration
and Nationality Act (the Act).

 The Immigration Service has filed with the Court and
served upon respondent's counsel a document entitled Additional
Charges of Inadmissibility/Deportability, which is a Form I-261
(Exhibit 1-A).  That document contains the additional charge
under Section 237(a)(2)(A)(iii) of the Act charging that
respondent is removable because at any time after admission he
has been convicted of an aggravated felony as defined in Section
101(a)(43)(B) of the Act.

 Respondent, through his attorney of record, has denied
all of the allegations of fact in the Notice to Appear and he has
also denied both charges of removability.

 On January 22nd, 2002, a hearing was held with respect
to the merits of all of the issues of removability.  The
Immigration Service offered into the record a record of
deportable/inadmissible alien, Form I-213; a border patrol report

A 36 740 936                          2                      March 5, 2002

>js

of apprehension or seizure, Form I-144; and an order of deferred adjudication, placement on community supervision, in the case of the State of Texas versus Eugenio Montoya Reyna in the District Court, Brooks County, Texas, 79th Judicial District.  All of those documents were admitted into the record without objection.  Further, counsel for respondent made a judicial admission at the hearing on January 22nd, 2002, that respondent did not appeal the order of deferred adjudication which was admitted into the record as Exhibit 4.

At that hearing, counsel for respondent stated to the Court that respondent has no evidence to present with respect to the issues of removability.  The Immigration Service stated that it had no further evidence with respect to the issues of removability apart from the documents admitted into the record as Exhibits 2, 3, and 4.

The Court concludes that the documentary evidence presented by the Immigration Services establishes by clear and convincing evidence that respondent is subject to removal from the United States under both charges; those being Section 237(a)(2)(B)(i) and Section 237(a)(2)(A)(iii) of the Act as charged in the Notice to Appear and the Form I-261.

The Form I-213, which is the record of deportable/inadmissible alien, states that respondent was born in the country of Mexico and that he is a citizen of Mexico.  Since respondent was born in Mexico, is presumed to be an alien within

A 36 740 936                          3                   March 5, 2002

:

sf:

the meaning of Section 101(a)(3) of the Act, respondent has not come forward with any evidence or even made any contention that he is a citizen of the United States. Therefore, the presumption of alienage has not be rebutted. In addition, in the border patrol of apprehension of seizure, Form I-44, it states that Eugenio Reyna-Montoya, when he was asked by the border patrol agent as to his citizenship, replied that he was a resident alien of the United States. Further, that document states that the respondent showed the officer his Form I-551. The Court concludes that that Form I-551 shows that respondent is a permanent legal resident of the United States since that is the card issued to persons who have that status. See 8 C.F.R. 299.1.

Since respondent has been admitted to the United States as a permanent legal resident, he is considered to have been admitted into the United States whether his status was granted through a visa and then admission or through adjustment of status under the Act.

The Form I-213 states that, according to the central index system, respondent emigrated to the United States on or about March 12th, 1981, through the port of entry at Hidalgo, Texas.

Based upon the above discussion, the Court concludes that the record contains clear and convincing evidence that respondent is not a citizen or national of the United States and that he is a native and citizen of Mexico who was admitted to the

A 36 740 936                    4                    March 5, 2002

ojs

United States at Hidalgo, Texas on or about March 12th, 1981, as
an immigrant.

　　　　The record also contains clear and convincing evidence
that on November 1st, 2001, respondent was convicted in the 79th
Judicial District Court at Brooks County, Texas for the offense
of possession of marijuana in violation of the state law of
Texas.  Marijuana is a controlled substance as defined in Section
102 of the Controlled Substances Act, 21 United States Code,
Section 802.  The order of deferred adjudication in the case of
the State of Texas versus Eugenio Montoya (Exhibit 4) shows that
the respondent pled guilty to the charge in the indictment for
possession of marijuana and that the offense was committed on
January 7th, 2000.  That document states that the degree or class
of the offense is 3rd.  A review of the Texas Penal Code
demonstrates clearly that this refers to a 3rd degree felony
under Texas law.  Thus, it is noted that misdemeanors in Texas
are classified as class A, B, or C.  See Section 12.03 of the
Texas Penal Code.  Felonies are classified as capital felonies,
felonies of the 1st degree, felonies of the 2nd degree, felonies
of the 3rd degree, and state jail felonies.  See Section 12.04 of
the Texas Penal Code.  Therefore, where the order of deferred
adjudication refers to the degree or class of offense as "3rd,"
it is referring to a 3rd degree felony.  It is also noted that
the offenses for possession of marijuana under Section 481.121 of
the Texas Health and Safety Code also use this same sentencing

A 36 740 936                    5                    March 5, 2002

scheme.  The misdemeanors are class A and class B while the felonies are a state jail felony, a felony of the 3rd degree, and a felony of the 2nd degree.  Therefore, the record is clear that respondent pled guilty to a 3rd degree felony under Texas law.

In the criminal proceeding alleged in allegation four of the Notice to Appear (Exhibit 4) after the respondent pled guilty to the offense of possession of marijuana, the Court stated that having heard all the evidence from the state and the defendant, and having heard argument of counsel for both parties, the Court found that there was sufficient evidence to support the defendant's plea.  The court in the criminal proceeding, however, determined that it was in the best interest of society and the defendant to defer further proceedings without entering an adjudication of guilt pursuant to Texas Code of Criminal Procedure, Article 42.12, Section 5.  Therefore, the court ordered that the further proceedings in that criminal proceeding be deferred and the respondent was placed on community supervision for three years with a fine in the amount of $2,000.  The three-year period of community supervision was to begin on the date that the judgment was signed, which was November 1st, 2001.  That document also contains the conditions of the community supervision imposed upon the respondent.

The Court concludes that this order of deferred adjudication constitutes a conviction under the immigration laws within the meaning of Section 101(a)(48)(A) of the Act.  That

A 36 740 936                      6                    March 5, 2002

ɔjs

statutory provision which defines the term "conviction" states
that if adjudication guilt has been withheld, it is considered a
conviction where the alien has entered a plea of guilty and the
judge has ordered some form of punishment, penalty, or restraint
on the alien's liberty to be imposed.  In the present case, the
Court concludes that there is clear and convincing evidence that
respondent pled guilty to the charge of possession of marijuana
and that the judge ordered some form of penalty and restraint on
the respondent's liberty to be imposed.  The Court concludes that
the $2,000 fine is clearly a penalty within the meaning of
Section 101(a)(48)(A) of the Act.  In addition, the conditions of
community supervision clearly demonstrate that respondent's
liberty was restrained by the conditions imposed.  The Court will
state only a few of those provisions that place restraint on
respondent's liberty to show that that requirement has been met.
As part of the conditions, respondent was required to report in
person during the term of probation to the adult probation
officer once each month between the 1st and 10th days of the
month.  He was also required to permit the probation officer to
visit him in his home or elsewhere in order to supervise his
probation.  He was not permitted to leave the State of Texas or
the county of approved residence without first obtaining
permission in writing from the probation officer showing that the
court authorized such removal.  He was required to abide by a 10
o'clock p.m. curfew every night.  He was required to submit a

A 36 740 936                        7                    March 5, 2002

urine specimen at the direction of the probation officer daily if

ordered.  He was required to attend and participate with drug

counseling on an out-patient basis and remain until officially

discharged by the proper authorities.  He was also required to

attend and participate with the community service restitution

program and complete 160 hours beginning November 1st, 2001, at

16 hours per month.  These provisions clearly show that they

impose a significant restraint on respondent's liberty.

Accordingly, the record demonstrates by clear and convincing

evidence that respondent has been convicted of the offense of

possession of marijuana within the meaning of Section

101(a)(48)(A) of the Act.

The Board of Immigration Appeals has held that a

deferred adjudication under Article 42.12, Section 5, of the

Texas Code of Criminal Procedure is a conviction for Immigration

purposes pursuant to Section 101(a)(48)(A) of the Act.  See

Matter of Punu, Int. Dec. 3364 (BIA 1998).  The Board of

Immigration Appeals reaffirmed this determination in Matter of

Salazar, Int. Dec. 3462 (BIA 2002).

In Matter of Salazar, supra, the Board of Immigration

Appeals also held that it will not apply its decision in the case

of Matter of K-V-D-, Int. Dec. 3422 (BIA 1999), in cases arising

within the jurisdiction of the United States Court of Appeals for

the 5th Circuit because of the decisions of the United States

Court of Appeals for the 5th Circuit in United States v.

A 36 740 936                    8                  March 5, 2002

bjs

Hernandez-Avalos, 251 F.3d 505 (5th Cir. 2000), cert. denied, 122

Supreme Court 305 (2001), and United States v. Hinojosa-Lopez,

130 F.3d 691 (5th Cir. 1997).  In Matter of Salazar, the Board

was determining whether a respondent who pled guilty to

possession of marijuana, which was a 3rd degree felony under

Texas law, had been convicted of an aggravated felony within the

meaning of Section 101(a)(43)(B) of the Act.  That is the same

offense to which the respondent in the present case pled guilty.

The Board held in Matter of Salazar that because this case is in

the 5th Circuit, we find that the offense to which the respondent

pled guilty is an aggravated felony.  The present case also

arises within the jurisdiction of the United States Court of

Appeals for the 5th Circuit, and this Court is bound to apply the

law of that Circuit as the Board did in Matter of Salazar.

As discussed above, in the present case respondent was

convicted within the meaning of the immigration law for the

offense of possession of marijuana, which is a 3rd degree felony

under Texas law.  The offense of possession of marijuana is also

clearly an offense that is punishable under the Controlled

Substances Act, 21 United States Code, 801 @ e.t. seq.

Therefore, respondent's offense is consider within the

jurisdiction of the United States Court of Appeals for the 5th

Circuit as a drug trafficking crime within the meaning of 18

United States Code, Section 924(c)(2).  As such, it is an

aggravated felony within the meaning of Section 101(a)(43)(B) of

ijs

the Act.  Accordingly, a respondent is subject to removal under
Section 237(a)(2)(A)(iii) of the Act because he has been
convicted of an aggravated felony as defined in Section
101(a)(43)(B) of the Act.

Respondent is also subject to removal under Section
237(a)(2)(B)(i) of the Act because at any time after admission he
has been convicted of a violation of a law of a state of United
States relating to a controlled substance as defined in Section
102 of the Controlled Substances Act, 21 United States Code,
Section 802, other than a single offense involving possession for
one's own use of 30 grams or less of marijuana.  It is noted that
in order to be 3rd degree felony under Texas law, the offense of
possession of marijuana clearly requires that an individual
unlawfully possess marijuana in an amount of more than 30 grams.
Therefore, the Court concludes that both charges of removability
have been established by clear and convincing evidence.

Respondent selected Mexico as the country for removal
if removal is ordered.

Respondent has requested relief from removal in the
form of cancellation of removal for certain permanent residents
pursuant to Section 240(A)(a) of the Act and, in the alternative,
voluntary departure under Section 240(B) of the Act.

The Court concludes that respondent is not eligible to
be considered for cancellation of removal for certain permanent
residents under Section 240(A)(a) because he has been convicted

A 36 740 936                    10                    March 5, 2002

js

of an aggravated felony as discussed above.

Further, with respect to voluntary departure, respondent's application is considered to be an application for voluntary departure at the conclusion of proceedings under Section 240(B)(b)(1) of the Act because respondent has applied for other relief from removal.  See 8 C.F.R. 240.26(b)(1)(B).  In any event, respondent would not be eligible for voluntary departure under either Section 240(B)(a)(1), which is voluntary departure prior to the conclusion of proceedings, or Section 240(B)(b)(1) of the Act, which is voluntary departure at the conclusion of proceedings because he is deportable under Section 237(a)(2)(A)(iii) of the Act.

Consequently, respondent's applications for cancellation of removal for certain permanent residents under Section 240(A)(a) and voluntary departure under Section 240(B) of the Act will both be denied because respondent is not eligible under the statute to be considered for either of those forms of relief from removal.

ORDERED

Wherefore, it is hereby ordered that respondent's applications for cancellation of removal for certain permanent residents under Section 240(A)(a) of the Act and voluntary departure under Section 240(B) of the Act be denied.

It is further ordered that respondent be removed from

A 36 740 936                    11                    March 5, 2002

ɔjs

the United States to Mexico pursuant to Sections 237(a)(2)(B)(i)

and 237(a)(2)(A)(iii) of the Act.

Dated this 5th day of March 2002.


HOWARD E. ACHTSAM
U.S. Immigration Judge

A 36 740 936                    12                    March 5, 2002



IMMIGRATION COURT
RT 3 BOX 341  BUENA VISTA DR
LOS FRESNOS, TX  78566

In the Matter of

Case No.: A36-740-936

REYNA-MONTOYA, EUGENIO
    Respondent

IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on Mar 5, 2002.
This memorandum is solely for the convenience of the parties.  If the
proceedings should be appealed or reopened, the oral decision will become
the official opinion in the case.

[✓]  The respondent was ordered removed from the United States to
    MEXICO or in the alternative to

[✓]  Respondent's application for voluntary departure was denied and
    respondent was ordered removed to MEXICO or in the
    alternative to

[ ]  Respondent's application for voluntary departure was granted until
      upon posting a bond in the amount of $ _____
    with an alternate order of removal to MEXICO.

[ ]  Respondent's application for asylum was ( )granted  ( )denied
    ( )withdrawn.

[ ]  Respondent's application for withholding of removal was ( )granted
    ( )denied  ( )withdrawn.

[✓]  Respondent's application for cancellation of removal under section
    240A(a) was ( )granted  (✓)denied  ( )withdrawn.

[ ]  Respondent's application for cancellation of removal was ( ) granted
    under section 240A(b)(1)  ( ) granted under section 240A(b)(2)
    ( ) denied  ( ) withdrawn.  If granted, it was ordered that the
    respondent be issued all appropriate documents necessary to give
    effect to this order.

[ ]  Respondent's application for a waiver under section _____ of the INA was
    ( )granted  ( )denied  ( )withdrawn or ( )other.

[ ]  Respondent's application for adjustment of status under section _____
    of the INA was ( )granted  ( )denied  ( )withdrawn.  If granted, it
    was ordered that respondent be issued all appropriate documents necessary
    to give effect to this order.

[ ]  Respondent's status was rescinded under section 246.

[ ]  Respondent is admitted to the United States as a _____ until _____.

[ ]  As a condition of admission, respondent is to post a $ _____ bond.

[ ]  Respondent knowingly filed a frivolous asylum application after proper
    notice.

[ ]  Respondent was advised of the limitation on discretionary relief for
    failure to appear as ordered in the Immigration Judge's oral decision.

[ ]  Proceedings were terminated.

[ ]  Other: _____

Date:  Mar 5, 2002
Appeal:  Waived/Reserved   Appeal Due By: Apr 4, 2002

HOWARD E. ACHTSAM
Immigration Judge

GPI

DACS



**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:  A36-740-936 - Harlingen

Date:

JUL 18 2002

In re:  REYNA-MONTOYA, EUGENIO

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:  Garcia, Thelma O.

ON BEHALF OF SERVICE:  Cheri L. Jones, Assistant District Counsel

RECEIVED
DISTRICT COUNSEL
02 JUL 23 PM 4: 00
HARLINGEN, TX

ORDER:

PER CURIAM.  The Board affirms, without opinion, the results of the decision below.  The decision below is, therefore, the final agency determination.  *See* 8 C.F.R. § 3.1(a)(7).

FOR THE BOARD

XC: Binder
CLT



BORDER PATROL REPORT OF APPREHENSION OR SEIZURE

K-9: Sil
FLF#: 224 / 225

| Office or Agency | File: |
|---|---|
| Sheriff<br>Brooks County Sheriff's Office<br>Falfurrias, Texas | I-44#: 2000FLF0119 |
| | Sector:<br>McAllen, Texas |
| FILE COPY | Date:<br>01/07/2000   Friday |

Patrol Agents   Charles R. Andrews II   of the   Falfurrias, Texas   station

☐ assisted the _____

(Agency)          (City and State)

In the apprehension and seizure of the following:

☒ apprehended / interviewed

| Last Name | First Name | Middle Name | A Number | Date and Place of Birth |
|---|---|---|---|---|
| REYNA | Eugenio | Montoya | A36 740 936 | 07/19/72 (27)  TAMPS, Mexico |
| FLORES | Liliana | Gonzalez | A91 364 267 | 05/27/74 (25)  TAMPS, Mexico |

| Address of person apprehended / interviewed | | Nationality |
|---|---|---|
| P. O. Box 841, Penitas, TX 78576 | Texas DL: 05149423 | I-551 / Mexico   SSN:  466 - 59 - 0344 |
| P. O. Box 841, Penitas, TX 78576 | Texas DL: 16690603 | I-551 / Mexico   SSN:  451 - 95 - 7605 |

☒ and seized / recovered          VESSEL, VEHICLE OR AIRCRAFT

| Description (Year, Make, Model, Color) | Motor or Serial No. | Registry or License No. | Value (Est) |
|---|---|---|---|
| Midnight Blue 1996 Ford Explorer | 1FMDU32PXTZA46335 | TX: YSG 67H | $ 13,750.00 |

CONTRABAND, MERCHANDISE OR OTHER

| Quantity | Description | Value (Est) |
|---|---|---|
| 27 Pounds<br>total est. wgt. | 23 Bundles of Marijuana, Wrapped in Grey Duct Dape<br>Appears to be old and poor in quality, possibly from the Spring harvest. | $ 21,600.00 |

| Place of Apprehension or Seizure | Date and Hour | Offense |
|---|---|---|
| U.S. Border Patrol Checkpoint, 13 miles<br>South of Falfurrias, Texas on Highway 281 | 01/07/2000<br>2030hrs. | Possession of Marijuana<br>With Intent to Distribute |

NARRATIVE:  (include circumstances of apprehension and seizure and facts to which apprehending officers can testify.)

REFER TO REVERSE FOR NARRATIVE

_____

Signature of Reporting Officer

| Details regarding "HOLD" placed | Received above persons and items: |
|---|---|
| | _____ |
| | Signature and Title |
| | _____ |
| | Office or Agency |

Form I-44
(Rev. 2-1-72) N          UNITED STATES DEPARTMENT OF JUSTICE          IMMIGRATION AND NATURALIZATION SERVICE

Date

On 01/07/00, I was assigned traffic check duties at the U. S. Border Patrol Immigration Checkpoint, located approximately thirteen(13) miles South of Falfurrias, Texas, on U. S. Highway 281. At approximately 2030hrs, a Midnight Blue 1996 Ford Explorer, bearing Texas Tag: YSG 67H, pulled into the primary inspection area for an immigration inspection of it's occupants. I asked the driver, later identified as Eugenio REYNA-Montoya, as to his citizenship and he replied that he was a resident alien of the United States. I then asked the front passenger of the vehicle, later identified as Liliana FLORES-Gonzalez, as to her citizenship and she also replied that she was a resident alien of the United States. Both subjects showed me their I-551s as proof of such. She further stated that her minor son, Mark Anthony Reyna / DOB: 08-28-95(4), was a citizen of the United States, who was born in Austin, Texas.

As I was making my immigration inspection of the occupants, SPA Duque was also at the primary inspection area with his service K-9, "Sil". He was making free air inspections of the vehicles as they passed by the primary inspection area. He notified me that Sil was alerting and indicating to the right rear of the vehicle, and directed me to send the vehicle to the secondary inspection area for a further inspection. I asked for and received permission from REYNA to search his vehicle more thoroughly, and then directed him to pull into the secondary inspection area.

Once there, SPA Duque performed another search of the vehicle with Sil, and the spare tire was discovered to contain twenty-one(21) bundles of marijuana. I placed both REYNA and FLORES under arrest for "Possession Of Marijuana With Intent To Distribute" and, in the presence of SPA Duque, read them their Miranda Rights, as per the standard form. They both stated that they understood their rights and placed their initials and signatures on the forms to signify such. When SPA Duque asked REYNA if there were any more narcotics in the vehicle, REYNA replied that there were six more bundles of marijuana concealed in the right rear door of the vehicle. SPA Duque went and verified that as I started to process the subjects.

REYNA was allowed to call for a family member to come and take custody of his son, and the subjects were separated and questioned. REYNA stated that he had purchased the narcotics from an unknown person who he had met at a store on Tom Gill Road, in Penitas, Texas. REYNA stated that he met the person in the parking lot of the store on the night of 01/06/00, and that he paid $ 4500.00 for the narcotics. He further stated that his wife, FLORES, had no knowledge of the narcotics and that he had kept such knowledge to himself so as not to incriminate her if he was apprehended. FLORES stated that she had no knowledge of the narcotics and that they were only on their way to Austin to see a friend.

Sector Radio was notified of the case and record checks were run on both subjects, which were negative in all respects. The vehicle was seized and the Brooks County Sheriff's Office was notified of the case, who stated that they would take over disposition of case. No further action was taken by this agent.

Charles R. Andrews II
Border Patrol Agent