United States District Court
Southern District of Texas
FILED

OCT 0 7 2002

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

EUGENIO REYNA-MONTOYA,        )
                              )
v.                            )     C.A. B-02-144
                              )
AARON CABRERA, INS            )
  ACTING DIRECTOR, HLG/DO and )
                              )
JOHN ASHCROFT, ATTORNEY       )
  GENERAL OF THE UNITED STATES. )
_____)

PETITIONER'S OPPOSITION TO MOTION TO DISMISS,
AND (OPPOSED) MOTION TO HOLD IN ABEYANCE PENDING A DECISION
IN *SALAZAR-REGINO v. TROMINSKI*, C.A. B-02-045

Petitioner Eugenio Reyna, ("Mr. Reyna"), by and through the undersigned, respectfully opposes Respondents' Motion to Dismiss, (herein cited as (INS:___)). As Respondents acknowledge, (INS:1,n.1), "the issues presented and arguments made herein are identical to those presented to this Court in Salazar-Regino v. Trominski et al, Civil Action No. B-02-045." However, Mr. Reyna strenuously disputes INS' contention that these issues "have been decided by the Fifth Circuit Court of Appeals," (INS:1).

I. BACKGROUND AND CERTIFICATE OF CONSULTATION

Since there are already several cases in this series, and will doubtless be many more, the undersigned has spoken with Lisa Putnam, counsel for Respondents, about the possibility of holding these cases in abeyance, pending a decision in *Salazar-Reyna*. Respondents have now taken a definitive position, and oppose Mr. Reyna's motion to hold the case in abeyance. Nonetheless, since the issues are identical, in the interest of brevity, Petitioner would incorporate by reference the Petitioner's Opposition to Respondent's Motion To Dismiss in *Salazar-Regino, supra*.

## II.  THE PERTINENT FACTS

Eugenio Reyna is a native and citizen of Mexico. He entered the United States as a lawful permanent resident on March 8, 1981, and has resided here continuously since that date.  Mr. Reyna's entire family is lawfully in the United States. He has a history of steady employment, and has other significant equities.

On or about January 7, 2000, Mr. Reyna was charged in Brooks County, Texas, with the offense of (simple) possession of marijuana.  On or about November 1, 2001, pursuant to a plea bargain, he was granted deferred adjudication, and placed on probation for a period of three years.  After leaving Court, Mr. Reyna returned to the Rio Grande Valley, to make certain arrangements, and on later that day, on his way home, he was detained at the INS checkpoint, after he truthfully disclosed his legal problems to the officers on duty.

The same day Notice to Appear and Warrant of Arrest were issued. They alleged, and Mr. Reyna conceded, the above facts relating to nationality and entry.   It also alleged that he had been "convicted" of possession of a controlled substance. Removability was initially charged under 8 U.S.C. §1227(a)(2)(B)(i), for conviction of an offense relating to a controlled substance, and later, under §1227(a)(2)(A)(iii), for conviction of an aggravated felony.  Mr. Sandoval urged that he was not subject to removal, in accordance with the principles of *Matter of Manrique,* 21 I&N Dec. 58 (BIA 1995), and, in the alternative, requested an opportunity to seek cancellation of removal, under 8 U.S.C. §1229b(a).

Mr. Reyna argued that it would violate Substantive Due Process to conclusively presume that no LPR given deferred adjudication for a marijuana offense which **could have been** classified as a felony if

the State of Texas had opted to proceed to adjudication, was worthy of remaining in the U.S.. Consequently, he asserted that the BIA was bound to adopt any other reasonable interpretation of the statute, which would avoid that result. *See, Webster v. Reproductive Health Services*, 492 U.S. 490,562 (1989) (where fairly possible, statutes must be construed to avoid serious constitutional problems); *INS v. Cardoza-Fonseca*, 94 L.Ed2d 434,459 (1987) (reaffirming "the long-standing principle of construing any lingering ambiguities in deportation statutes in favor of the alien."). *See also, Zadvydas, v. Davis*, 121 S.Ct. 2491 (2001) reading a "reasonable time" limitation into statute authorizing detention of aliens who could not be promptly deported.

Mr. Reyna also asserted that such a reasonable interpretation exists, notwithstanding the Fifth Circuit's decision in *Hernandez-Avalos*, which criticized *Matter of K-V-D-*, Int. Dec. 3422 (BIA 1999). Mr. Reyna urged that said criticism was *dicta*, [1] and urged

---

[1]   As stated by the Court in *Hernandez-Avalos, id.* at 509 (footnote in original) (emphasis added):

> However, **if we were reviewing Hernandez's removal order on direct appeal, and if the issue of statutory interpretation were properly preserved for review,** we would hold that the BIA's interpretation of section 924(c) is plainly incorrect and that Hernandez was an aggravated felon. We see no reason why the procedural posture of this case requires us to hold that it was fundamentally unfair to treat Hernandez as an aggravated felon because he should have the benefit of an agency's erroneous interpretation of applicable law. [FN3]
>
> FN3. **Because the question presented by this appeal relates only to the fundamental fairness of the proceeding, we need not consider Hernandez's argument that we must defer to the BIA's interpretation of these general criminal statutes.**   *Cf. Chevron U.S.A. v.*

that the Board follow *K-V-D-*, in order to avoid the serious constitutional problems which would otherwise arise. Given his lengthy residence in the U.S., his strong family ties, employment history, and other equities, it is highly likely that Mr. Reyna would have earned cancellation of removal, had he received the opportunity to apply for said form of relief.

These facts, he urges, create serious constitutional problems, under cases such as *INS v. St. Cyr,* 121 S.Ct. 2271 (2001) (construing IIRIRA such as to permit LPRs who pled guilty prior to its enactment to still seek relief under §212(c)), and *BMW of North America v. Gore,* 517 U.S. 559,574 (1996) (holding that, even in the context of *civil* penalties, "Elementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose.) Notably, deportation is a civil penalty.

Consequently, he urges that this Court has an obligation to

---

*Natural Resources Defense Council,* 467 U.S. 837, 842-43 & n. 9, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984) (citations omitted)("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.... The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.").

Such "if we were reviewing" and "if the issue of statutory construction were properly preserved" are classic indicia of *dicta*. Similarly, the Court's acknowledgment that it did not consider the possibility of deference further shows that its criticism of *K-V-D-* was *dicta*, and that said decision continues to be binding herein.

4

interpret the law in a manner which avoids these problems, even if it has to "stretch" to do so, as the Supreme Court did in *INS v. St. Cyr, supra,* and *Zadvydas v. Davis,* 121 S.Ct. 2492 (2001):

> "[I]t is a cardinal principle" of statutory interpretation, however, that when an Act of Congress raises "a serious doubt" as to its constitutionality, "this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." ... We have read significant limitations into other immigration statutes in order to avoid their constitutional invalidation. See United States v. Witkovich, 353 U.S. 194, 195, 202, 77 S.Ct. 779, 1 L.Ed.2d 765 (1957) (construing a grant of authority to the Attorney General to ask aliens whatever questions he "deem[s] fit and proper" as limited to questions "reasonably calculated to keep the Attorney General advised regarding the continued availability for departure of aliens whose deportation is overdue"). For similar reasons, we read an implicit limitation into the statute before us. In our view, the statute, read in light of the Constitution's demands, limits an alien's post-removal- period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention.

This Court must therefore seek a construction of the statute which avoids these problems, even if, as in *Zadvydas,* this requires the Court to read additional limitations into the statute. Here, as in *St. Cyr,* the Court should read into the statute a limitation that it was not intended to be applied to lawful permanent residents who entered pleas to offenses involving the simple possession of a controlled substance at a time when, under BIA precedent, such a disposition rendered them eligible for cancellation of removal for lawful permanent residents under 8 U.S.C. §1229a(a). *See, Matter of L-G-,* 21 I&N Dec. 89 (BIA 1995); *Matter of K-V-D-,* Int. Dec. 3422 (BIA 1999). *See also, Gerbier v. Holmes,* 280 F.3d 297 (3rd Cir. 2002) (State felony drug conviction without a trafficking element constitutes an "aggravated felony" under Immigration and

Naturalization Act, thus rendering alien ineligible for cancellation of removal, only when that same crime would be punishable as a felony under federal Controlled Substances Act).

As previously discussed, the criticism of *Matter of K-V-D-* in *U.S. v. Hernandez-Avalos* was *dicta*. The Court was not then addressing the impact on a lawful permanent resident who pled guilty to an offense in reliance on the availability of relief.

### III.   THE MERITS

As noted, Mr. Reyna incorporates by reference the opposition to the Respondents' Motion to Dismiss in *Salazar-Regino, supra*. Should the Court decline to hold the instant case in abeyance pending a decision therein, he will augment his opposition herein. However, for the time being, he will simply reiterate his claims.

#### 1.   STATUTORY CONSTRUCTION

Mr. Reyna first urges that the Board erred as a matter of law in its conclusion that *U.S. v. Avalos-Hernandez, supra,* controls the resolution of the question of whether his deferred adjudication disposition constitutes an aggravated felony. The language therein disapproving of *Matter of K-V-D-* was clearly *dicta,* and the Board should not have applied it to Mr. Reyna. To the contrary, Mr. Reyna asserts that the Board correctly decided *Matter of K-V-D-,* and that it erred in not applying said decision herein. *See, Gerbier v. Holmes,* 280 F.3d. 297 (3rd Cir. 2002).

INS also argues that the issues raised herein were addressed in *Hernandez-Avalos*. This is incorrect. That case involved someone who had been previously deported, not a lawful permanent resident. The stakes were much lower. The petitioner in that case was

fighting for a lesser sentence: not to remain in the United States with his family. There were no issues of reliance, and no argument that, under cases such as *BMW v. Gore,* 517 U.S. 559,574 (1996), he was entitled to, but deprived of, adequate notice of the scope of civil penalties which might attach to his unlawful conduct. Nor were there issues of Substantive Due Process, based on the claim that the right to remain in the U.S. with one's family is a fundamental right, and may not properly be abridged on the basis of a conclusive presumption such as that involved herein.

Nor, significantly, did the Fifth Circuit consider whether the interpretation of the BIA was entitled to any deference. It is therefore simply not true that the issues raised herein have been resolved by the Fifth Circuit.

## 2. EQUAL PROTECTION
### a. DIFFERING RESULTS IN DIFFERENT JURISDICTIONS

Mr. Reyna also asserts that, given the national character of immigration law, it violates Equal Protection for the result of his case to depend solely on the federal jurisdiction in which it arose, such that, had he been placed in removal proceedings within the Ninth, rather than the Fifth Circuit, he would not be subject to removal at all, and that, had he been placed in such proceedings in any jurisdiction other than the Fifth, and most particularly, within the Third Circuit, he would have been held to qualify for cancellation of removal, which relief, he urges, he would have earned in the exercise of discretion.

### b. DIFFERING RESULTS BASED ON TIMING OF THE PROCEEDINGS

Had Mr. Reyna's case been heard before May 11, 2001, (when the Fifth Circuit decided *Hernandez-Avalos*), he would have been eligible for cancellation of removal, and would have most probably earned such relief in the exercise of discretion. It violates

Equal Protection for the difference between remaining in the U.S. as an LPR, and being removed, and permanently barred from returning lawfully, to be based solely on the timing of the proceedings.

### 3. SUBSTANTIVE DUE PROCESS

As a permanent resident, Mr. Reyna has a fundamental liberty interest in being able to live and work in the United States, and in remaining here with his family. *See,* Dissenting Opinion of Board Member Rosenberg, *Matter of Salazar-Regino,* 23 I&N Dec. 223,238 (BIA 2002). *See also, Landon v. Plasencia,* 459 U.S. 21,34 (1982), citing *Bridges v. Wixon,* 326 U.S. 326 U.S. 135,154 (1945); *Moore v. City of East Cleveland,* 431 U.S. 494,499 (1977), and *Stanley v. Illinois,* 405 U.S. 645, 651 (1972):

> Plasencia's interest here is, without question, a weighty one. She stands to lose the right "to stay and live and work in this land of freedom," ... Further, she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual. ...

*Moore* and *Stanley* are both fundamental rights cases, involving family relationships. *Stanley* struck down a conclusive presumption, similar to that involved herein, and *Moore* simply concluded that the interest advanced by the State was insufficient to justify the particular intrusion into the family unit. As a lawful permanent resident, Mr. Reyna enjoys the same Due Process rights, including substantive Due Process rights, to develop and enjoy intimate family relationships in the United States.

Mr. Reyna asserts that the combination of provisions enacted by IIRIRA, 8 U.S.C. §1101(a)(48)(A), together with the repeal of §212(c) of the Act, and its replacement with 8 U.S.C. §1229b(a), which contains an absolute prohibition on granting discretionary relief to anyone convicted of an "aggravated felony," and the

overly expansive definition of what constitute such "aggravated felonies," constitutes an unconstitutional "conclusive presumption" that all LPRs who have been convicted of any offense in that list are unworthy of being able to stay with their families in the United States, even where the State has deemed it appropriate to grant rehabilitative treatment to a first time offender. Similarly, by failing to permit any showing of countervailing equities, these provisions are unjustifiable, as they are not sufficiently narrowly tailored to meet a compelling state interest.

### 4. PROCEDURAL DUE PROCESS

Mr. Reyna also asserts that the Board's decision deprives him of Procedural Due Process, as seen by another series of Supreme Court cases, involving "fair notice." To apply *U.S. v. Hernandez-Avalos* to Mr. Reyna retroactively converts a disposition which, at the time of his plea bargain, carried a possibility of deportation, into one which requires mandatory deportation. Although not "punishment" for a criminal offense, deportation has long been recognized as a "penalty." *See, Reno v. American-Arab Anti Discrimination Committee,* 525 U.S. 471, 497-98 (1999), Justice Ginsberg, concurring in Part I and the result:

> As this Court has long recognized, "[t]hat deportation is a penalty - at times a most serious one - cannot be doubted." *Bridges,* 326 U.S., at 154, 65 S.Ct. 1443; see also *ibid.* (Deportation places "the liberty of an individual ... at stake.... Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom.")

Deportation then becomes an additional penalty, retroactively attached to the "criminal offense," not by any amendment to the statute, but by virtue of changed judicial interpretation thereof.

Therefore, §1101(a)(48)(A), as interpreted and applied herein, is

unconstitutional in that it retroactively makes qualitative changes in the penalty imposed, in a wholly unexpected manner. *See,* Nancy Morawetz, "Rethinking Retroactive Deportation Laws and the Due Process Clause," NYU Law Rev., Vol 73, No. 1, April 1998. *See also, Arce v. Walker,* 139 F.3d 329, 333-34 (2nd Cir. 1998):

> [T]he Due Process Clause protects against restraints or conditions of confinement that "exceed[ ] the sentence in ... an unexpected manner." *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; see *id.* at 479 n. 4, 115 S.Ct. at 2297 n. 4 (observing that proscribed conditions of confinement must be "qualitatively different from the punishment characteristically suffered by a person convicted of crime, and [have] stigmatizing consequences." (citation and internal quotation marks omitted)); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 493, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980) (holding that "involuntary commitment to a mental hospital is not within the range of conditions of confinement to which a prison sentence subjects an individual"); *Washington v. Harper,* 494 U.S. 210, 221-22, 110 S.Ct. 1028, 1036-37, 108 L.Ed.2d 178 (1990) (holding that inmate has a liberty interest under the Due Process Clause to refuse the involuntary administration of psychotropic drugs).

These protections exist even though deportation, a civil penalty, rather than criminal punishment, is involved. As held in *BMW v. Gore, supra,* (footnote in original):

> Elementary notions of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose. FN22
>
> FN22. See *Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (*Ex Post Facto* Clause violated by retroactive imposition of revised sentencing guidelines that provided longer sentence for defendant's crime); *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) (retroactive application of new construction of statute violated due

>   process); *id.*, at 350-355, 84 S.Ct., at 1701-1703 (citing cases); *Lankford v. Idaho,* 500 U.S. 110, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991) (due process violated because defendant and his counsel did not have adequate notice that judge might impose death sentence). The strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases, but the basic protection against "judgments without notice" afforded by the Due Process Clause, *Shaffer v. Heitner,* 433 U.S. 186, 217, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (STEVENS, J., concurring in judgment), is implicated by civil *penalties*.

For a lawful permanent resident such as Mr. Reyna, there can be not question but that deportation is a "civil penalt[y]" imposed as a result of his criminal "conviction" for possession of marijuana. It therefore violates Due Process as a retroactive application of new construction of a statute, as in *Bouie v. City of Columbia, supra,* and because it imposes a "civil penalt[y]" without prior notice, as in *Shaffer v. Heitner, supra.* And, as in *BNW of North America v. Gore, supra,* it confounds the "[e]lementary notions of fairness enshrined in this Court's constitutional jurisprudence" which "dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose." [2]

### 5. INTERNATIONAL LAW AND TREATY OBLIGATIONS

Finally, Mr. Reyna urges that the instant order violates international law, and treaty obligations between the United States and Mexico, his country of origin.

---

[2] This is very similar to, and is reinforced by, the "void for vagueness" analysis of *Jordan v. DeGeorge,* 341 U.S. 223,231 (1951) (statute relating to deportation would be tested under "void for vagueness" doctrine, notwithstanding that statute was not criminal statute, in view of grave nature of deportation).

Respectfully Submitted,

*/s/ Lisa S. Brodyaga*

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)
Fed. ID. 1178
Texas Bar 03052800

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing, and proposed Order, was mailed, first-class postage prepaid, to Lisa Putnam, SAUSA, P.O. Box 1711, Harlingen TX 78551, this 7th day of October, 2002.

_____