United States District Court
Southern District of Texas
FILED

MAY 0 5 2003

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

EUGENIO REYNA-MONTOYA,            )
                                  )
v.                                )   C.A.  B-02-144
                                  )
AARON CABRERA, et al.             )
                                  )

**PETITIONER'S POST-HEARING POINTS AND AUTHORITIES**

Eugenio Reyna-Montoya, ("Mr. Reyna"), files the instant Post-Hearing Points and Authorities, in support of his contention that he cannot be lawfully removed from the United States, and should be released forthwith from the detention of which he complains.

### I. EXHIBIT "C" IS ENTITLED TO FULL FAITH AND CREDIT.

**A. GIVEN THAT "EXHIBIT C" WAS NOT ISSUED PURSUANT TO AN EXPUNGEMENT OR REHABILITATIVE STATUTE, THIS COURT MAY NOT GO BEHIND THE ORDER TO DETERMINE WHETHER ITS PURPOSE WAS TO AVOID PETITIONER'S REMOVAL.**

As previously shown, the December 3, 2002 Order presented as "Exhibit C" was not issued pursuant to a Texas rehabilitative or expungement statute. There exists no such statute. Rather, its validity flows from the inherent power of the sentencing Court to take whatever action is necessary to preserve its jurisdiction. *See, Shelvin v. Lykos*, 741 S.W.2d 178,184 (CtApp - Houston 1987) (discussing the Court's inherent powers - *e.g.*, "those powers that aid the court in the exercise of its jurisdiction").[1]  Under 28 U.S.C. §1738 (federal courts must accord full faith and credit to state court judgments), and the BIA's construction of 8 U.S.C. §1101(a)(48)(A),[2] to which this Court should grant appropriate deference under *Chevron USA, v. Natural Resources Defense Council*, 467 U.S. 837 (1984) the Order is entitled to Full Faith and Credit.

---

[1] The sentencing Court would lose jurisdiction over Mr. Reyna if he were removed. Therefore, the Order at issue "aid[s] the court in the exercise of its jurisdiction".

[2] *See, In Re Rodriguez-Ruiz*, 22 I&N Dec. 1378 (BIA 2000).

In *Rodriguez-Ruiz,* the BIA declined to "go behind the state court judgment and question whether the [] court acted in accordance with its own state law." Rather, the BIA afforded "full faith and credit" to the state court order, since it was not issued pursuant to either "an expungement statute [or] a rehabilitative statute." The same rule applies herein. As this Court noted at the recent hearing, there **is no** Texas statute authorizing the action taken. None is required. As seen from *Shelvin v. Lykos,* the sentencing Court has broad "inherent powers," and under *Rodriguez-Ruiz,* the inquiry ends once it has been determined that the Order did not derive from an expungement or rehabilitative statute. [3]

Nor would the evidence support a finding that, even without reference to the guilty plea, Mr. Reyna has been convicted, within the meaning of 8 U.S.C. §1101(a)(48)(A), because:

> (i) ...[he] has ... admitted sufficient facts to warrant a finding of guilt, and
> (ii) the judge has ordered some form of punishment, penalty, or restraint on [his] liberty ...

Respondent's "Return" shows that, from the beginning, INS proceeded solely on the basis of Mr. Reyna's plea of guilty, and accompanying restraints on his liberty imposed by the deferred adjudication judgment. That plea has now been erased, *ab initio,* or *nunc pro tunc,* as if it was never entered. There no evidence of anything Mr. Reyna may have said during the criminal proceedings, [4] apart

---

[3] Notably, in its Supplemental Points and Authorities Regarding Habeas Corpus Jurisdiction and the "Vacated" Conviction, filed after the April 29, 2003 hearing, (cited as (INS:___)), Respondents continue to ignore *Rodriguez-Ruiz, supra.* This constitutes an implicit concession that they have no reply. Under *Rodriguez-Ruiz,* there exists no "conviction."

[4] Mr. Reyna's testimony in this Court is not the type of admission referenced in §1101(a)(48)A)(i). The statute as a whole makes it clear that this phrase refers only to judicial admissions

from the entry of a plea of guilty. Precisely this occurred in *Rodriguez-Ruiz, supra*, and the result should be the same.

INS also persists in its argument that the Order of the sentencing Court should not be given Full Faith and Credit because there is no indication that there was "some defect in the underlying criminal proceeding," (INS:7), and points to the language in the order that it was granted "in the interests of justice," and to "avoid a manifest injustice." However, as Petitioner has repeatedly noted, and INS chooses to ignore, this is the self-same argument that INS made, unsuccessfully, in *Rodriguez-Ruiz*. As the BIA held therein, 22 I&N Dec. at 1379-80 (emphasis added): [5]

> The respondent argues that removal proceedings should be terminated because the explicit language of the state court judgment vacated his conviction, and therefore the charge of removability based on that conviction cannot be sustained. The Service contends that, **because the conviction was vacated for purposes of avoiding removal, and not for reasons relating to a constitutional or legal defect in the criminal proceedings, the respondent's conviction remains a "conviction" under the Act, for which he should be found removable as charged.**
>
> Despite the Service's arguments on appeal, we find that the order of the New York court does not constitute a state action which purports to expunge, dismiss, cancel, vacate, discharge, or otherwise remove a guilty plea or

---

made in the context of the criminal proceedings. *See also, In Re Rodriguez-Ruiz, supra*, where the conviction was based on "a plea colloquy dated February 5, 1999," and the Board held that the Order vacating the convictions "in all respects ... as if said conviction had never occurred" was sufficient to erase the conviction, without regard to what may or may not have been said at the plea colloquy.

[5] Notably, if the Attorney General, the Chairman of the BIA, or the Commissioner of Immigration had considered *Rodriguez-Ruiz* to be incorrect, they could have referred the decision to the Attorney General, for his review. 8 C.F.R. §3.1(h). This did not occur.

> other record of guilt or conviction **by operation of a state rehabilitative statute.** *See Matter of Roldan, supra.* **The New York criminal law provision under which the respondent's conviction was vacated is neither an expungement statute nor a rehabilitative statute.**
>
> **The Service urges us to go behind the state court judgment and question whether the New York court acted in accordance with its own state law in the context of these proceedings.** [6] We do not find that we are compelled to do so under *United States v. Campbell,* 167 F.3d 94 (2nd Cir. 1999), a case involving a conviction that was vacated under Texas law in the context of sentence enhancements under federal law. [7] We will instead accord full faith and credit to this state court judgment.

Absent any attempt on Respondents' part to distinguish *Rodriguez-Roldan* in a principled way, and absent even any recognition of its existence and relevance, this Court should conclude that Mr. Reyna is squarely within its terms. The guilty plea not only exists *no longer*, it never existed at all. There is no conviction - period.

---

[6] An examination of Article 440 of the New York Criminal Procedure Law indicates that if INS was correct in its assertion in that case that "the conviction was vacated for purposes of avoiding removal, and not for reasons relating to a constitutional or legal defect in the criminal proceedings," they would also have been correct in their claim that the New York court did not act "in accordance with its own state law in the context" of those proceedings. Section 440.10, relating to post-trial motions to vacate a judgment, sets forth the grounds for such motions. All are based on some legal or constitutional defect.

By contrast, although unnecessary under *Rodriguez-Ruiz,* Mr. Reyna has cited authority which he claims gave the Texas sentencing Court the power to take the action at issue: to wit, the inherent power to take any action in aid of its jurisdiction.

[7] It is clear that *Campbell* involved a Texas rehabilitative statute, allowing the Court to vacate the judgment following successful completion of probation. *See,* Texas Code of Criminal Procedure, Article 42.12.

4

## B. THE ORDER AT ISSUE DOES NOT CONFLICT WITH ANY FEDERAL STATUTE.

The same result is reached by applying principles of federalism. At the hearing, Respondents also argued that the Order should not be given full faith and credit, because it would frustrate federal statutes and regulatory schemes, presumably within the meaning of cases such as *New York v. United States*, 179 F.3d 29,35 (2nd Cir. 1999). However, there is a fundamental difference between the situation at bar, and that involved in *New York v. U.S.*.

In that case, there was a direct conflict between a specific federal statute, [8] which prohibited state and local governmental entities or officials from restricting the voluntary exchange of immigration information with INS, and an Executive Order issued in 1989, by then-Mayor Koch of New York City, which did just that: it prohibited any City officer or employee from voluntarily transmitting information regarding the immigration status of any individual to federal immigration authorities. In *New York v. U.S.*, New York City challenged IIRIRA §642, claiming that it was facially unconstitutional. But the First Circuit found that, under the Supremacy Clause, the statute survived such a facial attack.

Here, there is no such conflict. Petitioner challenges no federal statute on constitutional grounds: the sentencing Court's action is not prohibited by any federal statute. To the contrary, the result reached is the same as would have been the case if Mr. Reyna had initially been placed under pre-trial diversion. This would have avoided problems with INS, and is completely within the prerogative of the State of Texas. While the sentencing Court's action is clearly "unorthodox," and INS officials doubtless find it very "frustrating," this Court need not find any federal statute

---

[8] Section 642 of the Illegal Immigration Reform and Immigrant Responsibility Act, ("IIRIRA").

5

unconstitutional in order to give it the Full Faith and Credit mandated by 28 U.S.C. §1738, and *Rodriguez-Ruiz*.

The Order at issue involves the administration of the criminal laws of the State of Texas, an area over which the State holds primary sway. [9] As such, it is entitled to Full Faith and Credit, notwithstanding its "unorthodox" nature. *See, e.g., Garcia v. San Antonio Metro. Transit*, 469 U.S. 528, 546 (1985) (emphasis added):

> The essence of our federal system is that within the realm of authority left open to them under the Constitution, **the States must be equally free to engage in any activity that their citizens choose for the common weal, no matter how unorthodox or unnecessary anyone else -- including the judiciary -- deems state involvement to be.** Any rule of state immunity that looks to the "traditional," "integral," or "necessary" nature of governmental functions inevitably invites an unelected federal judiciary to make decisions about which state policies it favors and which ones it dislikes.

It is therefore urged that the instant Order must be given Full Faith and Credit, in accordance with the foregoing principles, and for the reasons stated by the BIA in *Rodriguez-Ruiz, supra*.

---

[9] *See. e.g., Screws v. United States*, 325 U.S. 91, 109 (1945):

> Our national government is one of delegated powers alone. Under our federal system the administration of criminal justice rests with the States except as Congress, acting within the scope of those delegated powers, has created offenses against the United States. *Jerome v. United States*, 318 U.S. 101, 105. As stated in *United States v. Cruikshank*, 92 U.S. 542, 553-554, "It is no more the duty or within the power of the United States to punish for a conspiracy to falsely imprison or murder within a State, than it would be to punish for false imprisonment or murder itself."

## II. THIS COURT HAS JURISDICTION OVER THE INSTANT ACTION.

In *Flores-Garza v. Ashcroft*, ___ F.3d ___ (5th Cir. 2003), the Court concluded, as it had in *Lerma de Garcia v. INS*, 141 F.3d 215 (5th Cir. 1998), that the jurisdiction-stripping provisions of IIRIRA, (here, 8 U.S.C. §1252(a)(2)(C)), are absolute with respect to cases within their scope, and preclude consideration even of the constitutional questions raised therein. *Id.* at Headnote 1. [10]

Mr. Reyna contends that *Flores-Garza* controls his case. There is no question but that, when he filed his petition for habeas corpus, he stood "convicted" within the meaning of *Matter of Roldan*, 22 I&N Dec. 512 (1999), and *Moosa v. INS*, 171 F.3d 994 (5th Cir. 1999), of an offense relating to a controlled substance. His statutory claim had merit only as a suggested escape from a constitutional swamp, much as in *Zadvydas v. Davis*, 533 U.S. 678 (2001), where the Supreme Court read a term, ("reasonable"), into a detention statute in order to avoid constitutional problems. And the Fifth Circuit could not have delved into the constitutional issues, unless and until it had determined that he did not fall under 8 U.S.C. §1252(a)(2)(C). Under those circumstances, there would have been no basis for a statutory challenge, and therefore, under *Flores-Garza*, no jurisdiction in the Fifth Circuit to hear his case.

Alternatively, to the extent that *Flores-Garza* did not completely close the door on constitutional challenges which would render the person not subject to removal, such a procedure is foreclosed by the reasoning of *Lerma de Garcia*, and *Max-George*. To adopt it, the

---

[10] Apparently, West "scooped" the Fifth Circuit, and publicized the Opinion before it was released. However, the undersigned has found no differences between the opinion as reported by West on April 17, 2003, and the official one, released May 2, 2003, and for convenience, will cite the West version.

Court would have to repudiate its finding in *Max-George* that the language creating the jurisdictional bar in the permanent rules, (8 U.S.C. §1252(a)(2)(C)), was even **stronger** than that examined in *Lerma de Garcia*. In fact, it would have to find it *weaker,* before it could find that the statutory bar did not forestall consideration of issues that could be addressed in habeas corpus. *See also, Cano-Miranda v. Ashcroft,* 262 F.3d 477 (5th Cir. 2001) (court erred in dismissing a §2241 petition complaining of denial of due process in removal proceedings for want of jurisdiction).

Nor would the scope of review at the Fifth Circuit be co-extensive with that of habeas. [11] Since resolution of some claims requires evidentiary proceedings, [12] and 8 U.S.C. §1252(a)(1) prohibits the Fifth Circuit from remanding for this purpose under 28 U.S.C. §2347(c), [13] it must be presumed that, to the extent that it considered the issue, Congress intended that if an immigrant could not seek statutory review of an order, claims arising in removal proceedings which could only be resolved with extrinsic evidence could be addressed in habeas corpus. [14] Similarly, that Court could

---

[11] *See, Swain v. Pressley,* 430 U.S. 372, 381 (1977) ("the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus").

[12] For example, consideration of the December 3, 2002, Order of the sentencing Court, (Exhibit C), and the refusal of the BIA to reopen proceedings *sua sponte* to address it, (Exhibit D).

[13] *See, Garcia v. Boldin,* 691 F.2d 1172, 1182 (5th Cir. 1982) (where alien alleges Due Process violations which are extrinsic to the record, the Court may remand the case to the agency for further inquiry and findings under 28 U.S.C. §2347(c)).

[14] *See, Turner v. Johnson,* 106 F.3d 1178, 1183 (5th Cir. 1997) ("A federal habeas court must allow discovery and an evidentiary hearing only where a factual dispute, if resolved in the petitioner's favor, would entitle him to relief...").

8

not have reached his claim that it violates Equal Protection where he is ineligible for relief simply because his case arose in the Fifth Circuit, whereas had his removal proceedings been conducted in the Second or Third Circuits, he would have been eligible for cancellation of removal. *See, Gerbier v. Holmes*, 280 F.3d. 297 (3rd Cir. 2002), and *Pornes-Garcia v. INS*, 171 F.3d 142 (2nd Cir. 1999).

The Fifth Circuit would also lack jurisdiction over a petition to review "Exhibit D," the refusal of the BIA to reopen proceedings *sua sponte* to consider the impact of the December 3, 2002 Order Modifying Judgment. Under 8 C.F.R. §3.2(c)(2), a motion to reopen may only be filed within 90 days of the BIA's decision. Said Order did not come into existence until more than 90 days after the BIA's decision, so Mr. Reyna had no "right" to file a motion to reopen at that time. And under 8 C.F.R. §3.2(a) (2002), the power of the BIA to reopen proceedings *sua sponte* is vested in the unfettered discretion of the Board. There are no standards by which to measure the exercise of this discretion, so there can be no judicial review of the Board's refusal to invoke it. *See, Perales v. Casillas*, 903 F.2d 1043,1047 (5th Cir. 1990):

> There is no judicial review of agency action "where 'statutes [granting agency discretion] are drawn in such broad terms that in a given case there is no law to apply.' " *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (quoting S.Rep. No. 752, 79th Cong., 1st Sess. 26 (1945)). An agency's inaction in such a situation is necessarily exempt from judicial review because there are no meaningful standards against which to judge the agency's exercise of discretion. *Heckler v. Chaney*, 105 S.Ct. at 1655.

Nor is this akin to *Navarro-Miranda v. Ashcroft*, 323 F.3d 325 (5th Cir. 2003). There, the Board gave reasons for refusing to exercise its sua sponte powers, and what the Court was reviewing was not an exercise of discretion, but an interpretation of law. Here, the

BIA simply declined to exercise its sua sponte powers. No reasons were given. Therefore, there was nothing to be reviewed by the Fifth Circuit, in statutory judicial review. [15]

Alternatively, since this Court has habeas jurisdiction to hear those issues which could not, under any theory, have been reached in direct review by the Fifth Circuit, (such as consideration of Exhibits C and D), it can also hear all other claims through its supplemental jurisdiction, 28 U.S.C. §1367. This is particularly appropriate to avoid splitting the case into two pieces: one part to be heard initially by the Fifth Circuit, and the other, by this Court. And in the further alternative, given the confusion over the issue of jurisdiction, it is clear that there was no "deliberate by-pass" of Fifth Circuit review within the meaning of *U.S. ex rel Marcello v. INS*, 634 F.2d 964,970 (5th Cir. 1981), cited with approval in *INS v. St Cyr*, 533 U.S. 289,310 (2001), and Mr. Reyna may therefore seek habeas review under 28 U.S.C. §2241.

Indeed, because Mr. Reyna filed his habeas within the thirty day time frame for filing a petition for review, this Court could, as INS urges, transfer it to the Fifth Circuit. However, on transfer, the Fifth Circuit could not consider Exhibits C or D. So transfer would accomplish little more than delay: and in this case, justice delayed would, in all probability, be justice denied. Mr. Reyna has already been detained for eighteen months. It is questionable whether he and his family could tolerate an additional year or so while the case went to the Fifth Circuit, was denied for lack of jurisdiction, and was then returned to this Court to do what he is begging the Court to do now: make a determination on the merits.

### III.  HABEAS REVIEW CAN REACH THE ISSUES RAISED HEREIN

---

[15] Further, unlike the alien in *Navarro-Miranda*, Mr. Reyna has not yet been removed. He may be on the equivalent of immigration "death row," but the removal order has not yet been "executed."

In *St Cyr, supra* at 310, The Court held that the 1961 Immigration Act did not affect the availability of habeas corpus review of deportation orders under 28 U.S.C. §2241. *St. Cyr* also held that IIRIRA did not affect habeas corpus. Therefore, this Court has full habeas jurisdiction. It can, for example, receive evidence, to the extent necessary to resolve Mr. Reyna's claims. *Turner v. Johnson, supra.* As discussed in *Heikkila v. Barber*, 345 U.S. 229 (1953), prior to the 1952 Immigration Act, Congress had removed federal jurisdiction to review *any* deportation order, to the fullest extent permissible under the Constitution. Habeas corpus provided the only relief available during that period. So the scope of habeas review now cannot be more restrictive than it was during the Heikkila period, and encompasses "Due Process" in the broadest sense of that phrase. For example, in *Kwock Jan Fat v. White*, 253 U.S. 454 (1920), decided during the Heikkila period, the Court remanded an exclusion case for a habeas hearing, and gave the following summary of the scope of such habeas review, *id.* at 457-8:

> It is fully settled that the decision by the Secretary of Labor, of such a question as we have here, is final, and conclusive upon the courts, unless it be shown that the proceedings were 'manifestly unfair,' were 'such as to prevent a fair investigation,' or show 'manifest abuse' of the discretion committed to the executive officers by the statute, Low Wah Suey v. Backus, supra, or that 'their authority was not fairly exercised, that is, consistently with the fundamental principles of justice embraced within the conception of due process of law,' Tang Tun v. Edsell, Chinese Inspector, 223 U. S. 673, 681, 682, 32 Sup. Ct. 359, 363 (56 L. Ed. 606). The decision must be after a hearing in good faith, however summary, Chin Yow v. United States, 208 U. S. 8, 12, 28 Sup. Ct. 201, 52 L. Ed. 369, and it must find adequate support in the evidence, Zakonaite v. Wolf, 226 U. S. 272, 274, 33 Sup. Ct. 31, 57 L. Ed. 218.

It would be both "manifestly unfair," and inconsistent "with the fundamental principles of justice embraced within the conception of

due process of law," to deport Mr. Reyna, where, even under recent Board precedent, to wit, *Rodriguez-Ruiz, supra,* he no longer stands "convicted" of any offense. There is no longer "adequate support in the evidence." The fact that the new evidence arose too late for Mr. Reyna to have a **right** to take it to the BIA does not mean that it should not be considered. *See, Garcia v. Boldin, supra,* and *Turner v. Johnson, supra.*

INS still does not seriously contest the **merits** of this claim, but only whether the Court has jurisdiction to consider it, and, in light of Exhibit D, whether it should be permitted where it arose after the BIA's initial decision.[16] In the Motion to Strike, [Dkt. 13], at p. 10, and again in their post-hearing post-hearing Points and Authorities, at pp. 6-7, INS argues that certain *dicta* in *Renteria-Gonzalez,* 310 F.3d 825 (5th Cir. 2002), which references vacated **state** court convictions, renders the sentencing Court's action null for immigration purposes. This reference is clearly *dicta* because the conviction at issue in *Renteria-Gonzalez* was federal, not state. Moreover, in support of this *dicta*, *Renteria-Gonzalez* cited only *Matter of Roldan, supra,* which held that actions taken pursuant to a *rehabilitative* statute were ineffective to expunge a conviction for immigration purposes. *See,* 310 F.3d at 835, n.8. Therefore, even as *dicta,* it does not undermine Petitioner's reliance on *Rodriguez-Ruiz, supra.* Just as they ignore *Rodriguez-Ruiz,* Respondents also ignore this distinction.

In the Motion to Strike, [Dkt. 13], INS also correctly noted that

---

[16] *See,* (INS:5) ("Respondents continue to maintain ... that the Order Modifying Judgment ... should be stricken from the record since it was not considered by the Board of Immigration Appeals before its affirmation of the immigration judge's decision.").

the sentencing Court's Order is "cryptic," and does not specify its basis. *Id.* at p. 9. But under *Rodriguez-Ruiz,* at 1379, so long as the Order was not based on a rehabilitative or expungement statute, the sentencing Court's **motive** is not a proper subject for administrative (or judicial) scrutiny. Notably, *Rodriguez-Ruiz* was decided **after** *Roldan*. It clarified that State Court Orders other than those based on a rehabilitative or expungement statute, such as that involved herein, are to be given Full Faith and Credit, without regard to whether they were issued solely to forestall removal, or even, parenthetically, their validity under state law.

Consequently, it is urged that Mr. Reyna is not subject to removal. Under *Rodriguez-Ruiz,* he has not been "convicted" of any offense. The State Court's Order, issued *nunc pro tunc*, does not conflict with any federal statute, and must be given Full Faith and Credit. The instant petition should be granted, and he should be released forthwith from INS custody, where he has been since November, 2001.

Respectfully Submitted,

Lisa S. Brodyaga, Attorney
17891 Landrum Park Road
San Benito, TX 78586
(956) 421-3226
(956) 421-3423 (fax)
Fed. ID.  1178
Texas Bar 03052800

Thelma O. Garcia, Attorney
301 E. Madison
Harlingen, TX 78550
(956) 425-3701
(956) 428-3731 (fax)

### CERTIFICATE OF SERVICE

I certify that copies of the foregoing and proposed Order were mailed first-class postage prepaid, to Lisa Putnam, SAUSA, P.O. Box 1711, Harlingen, Texas 78551, and Paul Fiorino, Attorney, OIL, P.O. Box 878 Ben Franklin Sta., Washington D.C. 20044, on May 5, 2003.