UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 2 7 2003

Michael N. Milby
Clerk of Court

EUGENIO REYNA-MONTOYA, )
)
v. ) C.A. B-02-144
)
AARON CABRERA, et al. )
_____ )

### PETITIONER'S NOTICE OF ADDITIONAL NEW AUTHORITY

Eugenio Reyna-Montoya, ("Mr. Reyna"), files the instant Notice of Additional New Authority, to wit *U.S. v. Perez*, __ F.3d __ (2nd Cir. May 15, 2003), 2003 U.S. App LEXIS 9412 (Copy attached), in support of his contention that he exhausted his administrative remedies with respect to the December 3, 2002 Order presented as "Exhibit C" by requesting that the BIA utilize its *sua sponte* powers to reopen proceedings to consider said Order. In *Perez*, at II A (Exhaustion Requirement), the Second Circuit noted that although the Petitioner had not appealed the initial deportation order, due to the ineffective assistance of counsel, he had requested reopening, and appealed the denial thereof. The Court found this to be sufficient exhaustion for the purpose of considering a Due Process claim.

Here also, Petitioner did everything that he could. The Order was not issued until after the 90 day window had closed in which Petitioner could have requested reopening in his own name. So he requested that the BIA reopen *sua sponte*, which request was denied.

Respectfully Submitted,

/s/ Lisa S. Brodyaga

Lisa S. Brodyaga, Attorney          Thelma O. Garcia, Attorney
17891 Landrum Park Road             301 E. Madison
San Benito, TX 78586                Harlingen, TX 78550
(956) 421-3226                      (956) 425-3701
(956) 421-3423 (fax)                (956) 428-3731 (fax)

Fed. ID. 1178
Texas Bar 03052800

### CERTIFICATE OF SERVICE

I certify that copies of the foregoing and attachment, were mailed first-class postage prepaid, to Lisa Putnam, SAUSA, P.O. Box 1711, Harlingen, Texas 78551, and Paul Fiorino, Attorney, OIL, P.O. Box 878 Ben Franklin Sta., Washington D.C. 20044, on June 25, 2003.



UNITED STATES OF AMERICA, Appellant, v. SEGUNDO DEJESUS PEREZ, Defendant-Appellee.

Docket No. 02-1517

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

2003 U.S. App. LEXIS 9412

March 19, 2003, Argued
May 15, 2003, Decided

**PRIOR HISTORY:**
[*1] The United States appeals from an order entered on July 29, 2002, in the United States District Court for the Eastern District of New York (Jack B. Weinstein, Judge), dismissing an indictment that charged Segundo DeJesus Perez with illegally reentering the United States, in violation of 8 U.S.C. § § 1326(a) and (b)(2). This court affirms the decision of the district court.

**DISPOSITION:**
Affirmed.

**COUNSEL:**
Steven M. Statsinger The Legal Aid Society, Federal Defender Division, Appeals Bureau, New York, New York, for Appellee.

Emily Berger AUSA, Eastern District of New York (Roslynn R. Mauskopf, United States Attorney, and Peter A. Norling and Catherine W.H. So, Assistant United States Attorneys, on brief), Brooklyn, New York, for Appellant.

**JUDGES:**
BEFORE: VAN GRAAFEILAND, F.I. PARKER, SOTOMAYOR, Circuit Judges.

**OPINIONBY:**
F.I. PARKER

**OPINION:**

F.I. PARKER, Circuit Judge:

The United States appeals from an order entered on July 29, 2002, in the United States District Court for the Eastern District of New York (Jack B. Weinstein, Judge ), dismissing an indictment filed against Segundo DeJesus Perez on the basis that the underlying deportation order [*2] was unlawful. The indictment charged Perez with illegally reentering the United States, in violation of 8 U.S.C. § § 1326(a) and (b)(2).

I.

Perez is a citizen of the Dominican Republic who became a lawful permanent resident of the United States in 1986. On April 30, 1993, he was convicted of the attempted sale of a controlled substance and was sentenced to six months' imprisonment and five years' probation. On August 2, 1993, the Immigration and Naturalization Service ("INS") initiated deportation proceedings by serving Perez with an order to show cause and a notice of hearing. The order included a

form advising him of his right to appeal any subsequent decision of the immigration judge ("IJ").

A deportation hearing was conducted on October 5, 1993. Perez was present, his attorney, John J. Garzon, participated by telephone. After the IJ found that Perez was deportable because of his criminal conviction, the IJ asked Garzon if he sought any relief from deportation. Garzon stated that Perez intended to seek relief under 212(c), referring to Section 212(c) of the Immigration and Naturalization Act, which at that time permitted the Attorney General to grant a discretionary [*3] waiver of deportation. The IJ directed Perez to file an application by October 19, 1993, and said that Perez could be deported if no papers were filed by that time. The IJ also scheduled a hearing on the application for November 1, 1993, and advised Garzon that a personal appearance would be necessary.

No application for discretionary relief was filed by October 19. On October 20, the IJ entered a deportation order, finding that Perez had abandoned his claims under § 212(c). Eight days later, on October 28, 1993, Garzon filed a motion to reopen Perez's deportation hearing. In the motion, he stated that he had told the clerk of the court on October 18 that he would file a motion for continuance, but that he had not done so because he received the IJ's deportation order first. An unfiled motion for continuance dated October 27, 1993, was attached to the motion to reopen Perez's deportation hearing and to stay his deportation pending any decision and any subsequent appeal to the Board of Immigration Appeals ("BIA"). An unsigned application for § 212(c) relief was also attached.

The IJ denied the motion to reopen and to stay the deportation order, finding that Perez had not shown good [*4] cause for his failure to file the § 212(c) application in a timely manner. The IJ also noted that the only § 212(c) application filed was unsigned and that the deportation order had become final upon the expiration of the time to appeal, and thus Perez was no longer a lawful permanent resident of the United States. On November 10, 1993, Garzon appealed the IJ's decision on Perez's behalf to the BIA. On the same day, Perez was deported to the Dominican Republic. The IJ's decision was subsequently affirmed by the BIA on the basis that: 1) the deportation order had become final and thus Perez was not entitled to reopen the hearing because he was no longer a lawful permanent resident, and 2) Perez had failed to show good cause for the failure to file the § 212(c) application in a timely manner. Thus, neither the IJ nor the BIA considered the merits of Perez's § 212(c) application.

On November 24, 2001, petitioner arrived at John F. Kennedy International Airport on a flight from the Dominican Republic. He showed his Dominican Republic passport and his resident alien card at an INS inspection center. He was arrested after a computer check showed that he had been deported following [*5] a criminal conviction, and that he did not have permission to reenter the United States. On December 11, 2001, he was indicted on one count of illegal reentry after having been deported following a conviction for the commission of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). Perez now challenges that indictment on the basis that his underlying deportation order was unlawful.

II.

Under 8 U.S.C. § 1326(d), an alien may only succeed in his or her challenge of the validity of a deportation order as an element of a criminal offense if: 1) all administrative remedies have been exhausted; 2) the deportation proceeding improperly deprived him or her of the opportunity for judicial review; and 3) the entry of the deportation order was fundamentally unfair. See

8 U.S.C. § 1326(d); United States v. Fernandez-Antonia, 278 F.3d 150, 157 (2d Cir. 2002).

A. Exhaustion Requirement

Although Perez did not appeal his deportation order to the BIA, n1 he has satisfied the exhaustion requirement by appealing the denial of his motion to reopen to the BIA. Regardless of whether an appeal [*6] of a denial of a motion to reopen is sufficient to constitute exhaustion of all claims, an issue we need not reach, it is sufficient for due process claims. We have explained that the BIA does not have jurisdiction to adjudicate constitutional issues such as due process claims. See United States v. Gonzalez-Roque, 301 F.3d 39, 48 (2d Cir 2002). Nevertheless, this court generally requires such claims to be first presented to the BIA because "in order to correct these errors, 'the BIA can reopen the proceedings and, in appropriate circumstances, allow the petitioner to supplement the record with additional evidence.'" Id. Thus, petitioner asked the BIA to do the one thing it could do: reopen the proceedings. Therefore, petitioner has satisfied the exhaustion requirement. n2

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n1 While Perez's appeal of the denial of his motion to reopen includes language indicating that Perez was also attempting to appeal his deportation order, that appeal was not perfected within the required time period. See 8 C.F.R. § 3.38(b) (setting the time to perfect an appeal to the BIA as 10 days after service of the decision, or 13 days "if mailed"). [*7]

n2 The fact that Perez did not explicitly state that he was claiming ineffective assistance of counsel does not mean that he did not exhaust his remedies because the BIA was fully aware of Perez's contention that his lawyer knew of the deadline for Perez's § 212(c) waiver and yet failed to file the waiver. See Rabiu v. INS, 41 F.3d 879, 882 (2d Cir. 1994).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

The government also argues that Perez did not exhaust his administrative remedies because he did not appeal the BIA's decision affirming the denial of the motion to reopen and to stay deportation to the Fifth Circuit Court of Appeals. This argument is clearly without merit because 8 U.S.C. § 1326(d) explicitly requires exhaustion only of *administrative* remedies, not *judicial* ones. n3

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n3 In any event, by the time any judicial remedy might have been pursued, Perez had already been deported. Accordingly, under 8 U.S.C.A. § 1105a(c)(1993), the federal courts had no jurisdiction to conduct a direct review.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -
[*8]

B. Deprivation of the Opportunity for Judicial Review Requirement

Perez was deprived of judicial review because, as a result of his counsel's failure to timely file the § 212(c) application, neither the IJ nor the BIA ever considered the merits of Perez's § 212(c) application.

More importantly, Perez was also deprived of the opportunity for judicial review. Deprivation of the opportunity for judicial review can be established by

demonstrating ineffective assistance of counsel, and the failure of counsel to file a § 212(c) application can constitute ineffective assistance of counsel. See Rabiu v. INS, 41 F.3d 879, 883 (2d Cir. 1994). As deportation proceedings are civil in nature, aliens in such proceedings are not protected by the Sixth Amendment right to counsel. See Saleh v. United States Dep't of Justice, 962 F.2d 234, 241 (2d Cir. 1992). Instead, for an alien to prevail on a claim of ineffective assistance of counsel, he or she "must show that his counsel's performance was so ineffective as to have impinged upon the fundamental fairness of the hearing in violation of the fifth amendment due process clause." Id. (internal formatting [*9] omitted). To show fundamental unfairness, an alien must "allege facts sufficient to show 1) 'that competent counsel would have acted otherwise,' and 2) 'that he was prejudiced by his counsel's performance.'" Rabiu, 41 F.3d at 882 (quoting Esposito v. INS, 987 F.2d 108, 111 (2d Cir 1993)).

In Rabiu, we held that failure of an attorney to file a § 212(c) application on his client's behalf rose to the level of ineffective assistance of counsel because a competent attorney would have filed such a motion, there was a prima facie showing of eligibility for § 212(c) relief, and the alien "could have made a strong showing in support of his application." Rabiu, 41 F.3d at 883.

Perez has satisfied the test set forth in Rabiu and has therefore shown that a Fifth Amendment violation deprived him of the opportunity for judicial review.

First, Garzon's failure to file the section 212(c) application after stating that he would at the deportation hearing, and without later informing his client otherwise, fell below the level of performance expected of competent counsel. In Rabiu, this court stated that "in our view, a competent attorney [*10] would have filed a motion pursuant to § 212(c) after his or her client requested permission to do so at the deportation hearing." Rabiu, 41 F.3d at 882. Like Rabiu, Perez requested permission, albeit through counsel.

Second, Perez has shown prejudice because he has shown that he was eligible for § 212(c) relief and that he could have made a strong showing in support of his application for such relief. In determining whether to grant discretionary relief under § 212(c), an immigration law judge "'must balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of section 212(c) relief appears in the best interests of this country.'" See Lovell v. INS, 52 F.3d 458, 461 (2d Cir. 1995). Adverse factors include: 1) the nature and circumstances of the exclusion ground; 2) the presence of additional immigration law violations; 3) the existence of a criminal record and its nature, recency and seriousness; and 4) the presence of other evidence indicative of an alien's bad character or undesirability as a permanent resident. [*11] Id. Favorable factors, by comparison, include: 1) family ties within this country; 2) residence of long duration in this country; 3) evidence of hardship to the alien and the alien's family upon deportation; 4) Armed Forces service; 5) a steady employment history; 6) community service; 7) property or business ties; 8) evidence attesting to good character; and 9) proof of genuine rehabilitation. Id. Here, several factors weighed in Perez's favor: he had a steady history of employment, a wife who was a permanent resident, and a son who was a United States citizen. The government does not claim that any negative factors other than his conviction would have weighed against him at the time of his deportation. Accordingly, Perez could have made a strong showing in favor of § 212(c) relief.

The government tries to distinguish Rabiu on the grounds that it involved a direct, not a collateral, attack. To support this argument, the government relies on United States v. Crown, 2000 U.S. Dist. LEXIS 4499, 2000 WL 364890, at *7 (S.D.N.Y. 2000), aff'd United States v. Crown, 12 Fed. Appx. 59 (2d Cir.

2001). Crown concerned an alien who, like Perez, was challenging an indictment [*12] for illegal reentry on the basis that his deportation order was not valid because he had been denied effective assistance of counsel during the underlying deportation proceedings. The district court in Crown found that the petitioner had not been deprived of the opportunity for judicial review and that, in any event, any such denial would not have prejudiced him. This court affirmed for "substantially the same reasons." Id. at 61. In finding that the petitioner had not been deprived of judicial review, the district court distinguished Rabiu on two grounds. First, Crown's counsel, unlike Rabiu's counsel, had applied for § 212(c) relief and Crown had a § 212(c) hearing after which his application for relief was denied. n4 Second, the Crown court distinguished Rabiu on the grounds that the "requested remedy in this case reaches far beyond the remedy granted in Rabiu" because Crown was requesting "dismissal of a criminal indictment with prejudice" and not a mere remand. Crown, 2000 U.S. Dist. LEXIS 4499, 2000 WL at *7. Ultimately, however, the district court concluded that "the fact that defendant was merely 'eligible' for Section 212(c) relief and was denied it after a [*13] hearing, standing alone, is insufficient to find that he was deprived of his right to judicial review warranting dismissal of the exclusion order." Id.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n4 Crown claimed that his counsel was ineffective because he did not adequately prepare witnesses for the § 212(c) hearing, failed to show Crown's HIV infection at the hearing, and failed to file a brief in support of the appeal.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

To the extent that the language of Crown suggests that the standard for establishing deprivation of the opportunity for judicial review on collateral attack may be higher than that on direct attack, it is incorrect. In United States v. Mendoza-Lopez, 481 U.S. 828, 95 L. Ed. 2d 772, 107 S. Ct. 2148 (1987), the Supreme Court found that collateral review of deportation orders may be required before an alien can be convicted of illegal reentry following deportation. The Supreme Court stated that the availability of collateral review is critical because of the seriousness of the crime of unlawful entry after deportation [*14] (a felony). Id. at 838-39. The court then stated that "even with this safeguard [i.e., collateral review], the use of the result of an administrative proceeding to establish an element of a criminal offense is troubling." Id. at 838 n.15. The Supreme Court thus suggested that there is more concern about the validity of a deportation order when it is used as the basis for a criminal conviction than when it is used as the basis for deportation, a civil matter. Accordingly, it would not be logical to subject a deportation order to less scrutiny in the criminal context than in the civil context of deportation, and we therefore hold that the standard of review is not higher on collateral attack than on direct attack.

Moreover, on its facts Crown is clearly distinguishable from the case at hand in that in Crown the alien was deported several weeks after his BIA appeal was dismissed, and thus he could have sought direct review in the district court prior to deportation. By contrast, Perez was deported before his BIA appeal was finalized, thus eliminating his appeal to the district court. n5

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n5 As noted previously, once Perez was deported, the federal courts no longer had jurisdiction to directly review his deportation order. See 8 U.S.C.A. §

1105a(c) (1993). Accordingly, once in the Dominican Republic, Perez no longer had the opportunity for judicial review.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[*15]

Thus, we find that petitioner has satisfied the requirement that he show that he was deprived of the opportunity for judicial review.

C. Fundamental Unfairness Requirement6

In United States v. Fernandez-Antonia, 278 F.3d 150, 157 (2d 7 Cir. 2002), this court held that "for an alien to succeed in collaterally attacking his deportation order, he 'must show . . . that the administrative proceedings were fundamentally unfair in some respect that would have entitled him to relief on direct appeal.'" To show fundamental unfairness, a defendant "must show both a fundamental procedural error and prejudice resulting from that error." Id. at 159. In considering earlier in this opinion whether Perez was deprived of the opportunity for judicial review, we found that he had shown that he had been deprived of effective assistance of counsel (i.e., that a fundamental procedural error had occurred) and that prejudice had resulted because he was eligible for § 212(c) relief and could have made a strong showing in support of such relief. Accordingly, he has satisfied the "fundamental unfairness" requirement. We therefore need not consider whether or not [*16] the fundamental unfairness requirement could be met by a lesser showing of prejudice, although our previous opinion in Fernandez-Antonia suggests that it might be. n6

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n6 In Fernandez-Antonia, 278 F.3d at 159-60, this court "declined to state the quantum of proof necessary for an alien to succeed in his demonstration of prejudice" on collateral review but suggested that a showing that there was a "reasonable likelihood" that an alien would not have been deported or a "plausible" showing of such might be sufficient.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

III.

For the reasons stated above, Perez has exhausted his administrative remedies, Perez was denied the opportunity for judicial review, and the entry of the deportation order against Perez was fundamentally unfair. Therefore, his indictment for illegal reentry cannot stand and we hereby AFFIRM.