United States District Court
Southern District of Texas
FILED

JUN 3 0 2003

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

EUGENIO REYNA-MONTOYA,            )
                                  )
v.                                )    C.A.  B-02-144
                                  )
AARON CABRERA, et al.             )
_____)

PETITIONER'S SUPPLEMENTAL AUTHORITY
RELATING TO *MATTER OF PICKERING*, 23 I&N Dec (BIA 2003)

Eugenio Reyna-Montoya, ("Mr. Reyna"), files the instant Notice of New Authority, relating to *Matter of Pickering*, 23 I&N Dec. 621 (BIA 2003). Specifically, he would provide the Court with an article from the July 1, 2003 edition of Bender's Immigration Bulletin, by Lory Diana Rosenberg, former Member of the Board of Immigration Appeals. (Copy attached).

Respectfully Submitted,



Lisa S. Brodyaga, Attorney            Thelma O. Garcia, Attorney
17891 Landrum Park Road               301 E. Madison
San Benito, TX 78586                  Harlingen, TX 78550
(956) 421-3226                        (956) 425-3701
(956) 421-3423 (fax)                  (956) 428-3731 (fax)
Fed. ID. 1178
Texas Bar 03052800

CERTIFICATE OF SERVICE

I certify that copies of the foregoing and attachment, were mailed first-class postage prepaid, to Lisa Putnam, SAUSA, P.O. Box 1711, Harlingen, Texas 78551, and Paul Fiorino, Attorney, OIL, P.O. Box 878 Ben Franklin Sta., Washington D.C. 20044, on June 29, 2003.

8 Bender's Immigration Bulletin 1103 July 1, 2003

# SEPARATE OPINION
## by Lory Diana Rosenberg

### RECOGNITION OF VACATION OF CONVICTION AND *MATTER OF PICKERING*: COMITY OR TRAGEDY?

In 1980, Christopher Pickering was fined $300 for unlawful possession of lysergic acid diethylamide ("LSD") under section 41(1) of the now-repealed Canadian Food and Drugs Act. Twenty-three years later, the Board of Immigration Appeals ruled that, despite the fact this conviction had been quashed by the Ontario Court of Justice (General Division) on June 20, 1997, it still remained a conviction for United States immigration purposes and rendered Mr. Pickering ineligible for adjustment of status as a permanent resident of the United States.

*Matter of Pickering*[1] reaffirms the BIA's ruling in *Matter of Rodriguez-Ruiz*[2] that a vacation of judgment based on a legal defect in the underlying criminal proceeding does not constitute a conviction under section 101(a)(48)(A) of the Immigration and Nationality Act. However, the BIA found that, although Pickering claimed that he sought relief for a violation of his rights under the Canadian Charter for Rights and Freedoms, the quashing of Pickering's conviction "appears to have been entered solely for immigration purposes,"[3] and it upheld the immigration judge's finding that a conviction existed despite the Canadian court's order.

In this article, I examine the BIA's reasoning in *Pickering* in relation to selected prior precedent, the rule of full faith and credit, and the notion of comity in immigration adjudications. Based on these factors, I address important considerations for effective practice in cases involving post-conviction judicial action.

**Factors Relevant to Recognition of a Vacated Conviction Under Immigration Law**

The administrative case law addressing the effect of a court's vacation of conviction on deportation or removal proceedings is not comprehensive. Many earlier cases involved expungements[4] or vacations of judgment obtained to restart the 30-day deadline during which a convicted noncitizen could obtain a "judicial recommendation against deportation" from the sentencing judge.[5] Current cases confront a statutory definition, which provides that a conviction is

> a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—
>
> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
>
> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.[6]

Nevertheless, both historically, and, in recent years, in relation to INA § 101(a)(48)(A), the BIA has recognized the principle of comity and the rule of full faith and credit[7] in giving effect to the orders of other courts. At the same time, the BIA has consistently taken exception when such judicial actions are deemed to be "for immigration purposes."

### *Matter of Pickering*

The underlying offense in *Matter of Pickering* was a twenty-year-old conviction for possession of a controlled

---

[1] 23 I&N Dec. 621 (BIA 2003).

[2] 22 I&N Dec. 1378 (BIA 2000).

[3] Matter of Pickering at 625.

[4] Prior to the definition of "conviction" introduced in 1996, an expunged conviction did not support deportability. *See* Matter of Luviano, 21 I&N Dec. 235, 237 (BIA 1996); Matter of Ibarra-Obando, 12 I&N Dec. 576, 578 (BIA 1966; A.G. 1967); Matter of G-, 9 I&N Dec. 159, 161 (BIA 1960; A.G. 1961). However, a drug conviction expunged under a rehabilitative statute was not so eliminated. *See* Matter of A-F-, 8 I&N Dec. 429, 432 (BIA; A.G. 1959).

[5] Former INA § 241(b), repealed, § 505 of the Immigration Act of 1990, Pub. L. No. 101-649, § 505, 104 Stat. 4978, 5050 (1990) ("1990 Act").

[6] INA § 101(a)(48)(A), 8 U.S.C. § 1101(a)(48)(A).

[7] 28 U.S.C. § 1738.

8 Bender's Immigration Bulletin          1104          July 1, 2003

substance. It was a foreign conviction. No jail time was imposed unless a $300 fine was not paid, and only a 30-day period was to be imposed under those circumstances. The conviction had been the subject of a Canadian pardon, but foreign pardons are not recognized for immigration purposes.[8] An immigration judge declined to give effect to the Canadian order "quashing" the conviction, which he found to have been "for *rehabilitative purposes* to allow the respondent to live permanently in the United States."[9] Accordingly, the conviction prevented Mr. Pickering from establishing admissibility and eligibility for adjustment of status.

The headnotes to the decision state that "If a court vacates an alien's conviction *for reasons solely related to rehabilitation or immigration hardships*, rather than on the basis of a procedural or substantive defect in the underlying criminal proceedings, the conviction is not eliminated for immigration purposes," and that "Where the record indicated that the respondent's conviction for possession of a controlled substance was quashed by a Canadian court *for the sole purpose* of avoiding the bar to his acquisition of permanent residence, the court's action was not effective to eliminate the conviction for immigration purposes."[10]

The BIA differentiated Pickering's case from *Matter of Roldan*,[11] in which it had addressed "circumstances where an alien has been the beneficiary of a state rehabilitative statute which purports to erase the record of guilt."[12] The BIA also distinguished its decision in *Matter of Pickering* from that in *Matter of Rodriguez-Ruiz*,[13] which involved a statute authorizing the vacation of a conviction based on the legal merits of the underlying proceedings and a court order reiterating that the conviction was vacated on the legal merits.

The BIA ruled that, in applying the definition of a conviction under INA § 101(a)(48)(A), "there is a significant distinction between convictions vacated on the basis of a procedural or substantive defect in the underlying proceedings and those vacated because of post-conviction events, such as rehabilitation *or immigration hardships.*"[14] In particular, "if a court with jurisdiction vacates a conviction based on a defect in the underlying criminal proceedings, the respondent no longer has a 'conviction' within the meaning of section 101(a)(48)(A)."[15] If, however, a court vacates a conviction for reasons unrelated to the merits of the underlying criminal proceedings, the respondent remains "'convicted' for immigration purposes."[16]

In its decision, the BIA states quite specifically that its finding on the issue of whether the Canadian court's order "vitiates the conviction" is limited to the "facts of this case."[17] According to the BIA's opinion, the "facts of this case" apparently involve the absence of an affirmative statement by the Canadian court in its order indicating that its action was taken on the merits or in response to a legal defect. The BIA did not determine the significance of a "quashed" conviction or examine the purposes for which a conviction might be quashed under the Canadian court's authority, noting that the judgment in the record referred only to Pickering's request.

### *Matter of Roldan*

In *Matter of Roldan*, the BIA held that under the definition of a conviction in INA § 101(a)(48)(A), no effect is to be given in immigration proceedings to a state action which purports to expunge, dismiss, cancel, vacate, discharge, or otherwise remove a guilty plea or other record of guilt or conviction by operation of a state rehabilitative statute. The BIA limited its holding in *Roldan* to "those circumstances where an alien has been the beneficiary of a state rehabilitative statute which purports to erase the record of guilt."[18]

This decision overruled the BIA's prior holding, in *Matter of Werk*,[19] that a conviction expunged under a

---

[8] INA § 237(a)(2)(A)(v); Matter of B-, 7 I&N Dec. 166 (BIA 1956).

[9] Matter of Pickering at 622 (emphasis added). The immigration judge's finding that the quashing of the conviction was for a rehabilitative purpose, or that allowing the respondent to live in the United States somehow serves a rehabilitative purpose, is unfounded and did not form the basis of the BIA's dismissal of the respondent's appeal.

[10] *Id.* at 621 (emphasis added).

[11] 22 I&N Dec. 512 (BIA 1999).

[12] *Roldan* at 523.

[13] 22 I&N Dec. 1378 (BIA 2000).

[14] *Pickering* at 624 (emphasis added).

[15] *Id.*

[16] *Id.*

[17] *Id.* at 622. *See also id.*, at 625.

[18] *Roldan* at 523.

[19] 16 I&N Dec. 234 (BIA 1977).

8 Bender's Immigration Bulletin    1105    July 1, 2003

state law counterpart to the Federal First Offender Act[20] constituted an exception to the Attorney General's ruling in *Matter of A-F-*.[21] *Matter of Roldan* also overruled the BIA's decision in *Matter of Manrique*,[22] which held that a first-time drug offender whose state adjudication was deferred and who would be eligible for federal first offender treatment under 18 U.S.C. § 3607 if he or she were prosecuted in federal court is not to be considered convicted for immigration purposes.[23]

The United States Court of Appeals for the Ninth Circuit vacated *Matter of Roldan* with respect to the characterization of a first offense of simple possession of a controlled substance, which could have been adjudicated under 18 U.S.C. § 3607 had the crime been subject to prosecution and disposition under federal law.[24] In addition, as the BIA acknowledged in *Matter of Rodriguez-Ruiz*, the Ninth Circuit concluded that, in providing a federal definition of a conviction, "Congress did not intend that a conviction subsequently overturned on the merits . . . could serve as the basis for deportation."[25] However, the BIA declined to amend *Roldan* or to extend the ruling in *Lujan-Armendariz v. INS* outside of the Ninth Circuit.[26]

In such cases arising within the Ninth Circuit, a state disposition that has been or will be expunged does not constitute a conviction. Furthermore, according to the law of the Ninth Circuit, a foreign disposition that could have been adjudicated under 18 U.S.C. § 3607 if the crime had been prosecuted in the United States would not constitute a conviction for immigration purposes.[27] Had Christopher Pickering's hearing been conducted before an Immigration Judge sitting within the jurisdiction of the Ninth Circuit, the BIA may have been precluded from considering his 1980 Canadian conviction for possession of LSD a "conviction" for immigration purposes, whether or not it was quashed in response to a legal defect.

*Matter of Rodriguez-Ruiz*

In *Matter of Rodriguez-Ruiz*, the BIA determined that a conviction that had been vacated under Article 440 of the New York Criminal Procedure Law did not constitute a conviction for immigration purposes within the meaning of the statute. As stated in *Matter of Pickering*, the statute at issue in *Rodriguez-Ruiz* authorized the vacation of a conviction based on the legal merits of the underlying proceedings.[28]

Although the government had argued that the New York conviction had been vacated "for purposes of avoiding removal, and not for reasons relating to a constitutional or legal defect in the criminal proceedings," the BIA rejected that contention because the law under which the conviction was vacated was "neither an expungement nor a rehabilitative statute."[29] The BIA held that it would not look behind the state court judgment to ascertain whether the court acted in accordance with its own law in vacating the conviction. Rather, the BIA afforded "full faith and credit" to the state court judgment,[30] concluding that, "because we agree that the state court order vacating the conviction does not constitute a state rehabilitative action under *Matter of Roldan, supra*, there is no current basis to find the respondent removable as charged."[31]

Thus, the factors on which the BIA's decision in *Rodriguez-Ruiz* turned are whether the state court acted under a provision allowing vacation on the legal merits,

---

[20] 18 U.S.C. § 3607 (1994).

[21] 8 I&N Dec. 429 (BIA; A.G. 1959).

[22] 21 I&N Dec. 58 (BIA 1995).

[23] *See* Matter of Salazar, 23 I&N Dec. 223, 228 (BIA 2002) ("We therefore concluded that *Matter of Manrique* had been superseded by the statute"). Notably, the BIA did not decide the effect to be given first offender treatment actually accorded in federal prosecutions under 18 U.S.C. § 3607 by a federal court. *See* Matter of Roldan at 16, n.9.

[24] *See* Lujan-Armendariz v. INS, 222 F.3d 728 (9th Cir. 2000). *See also* Cardenas-Uriarte v. INS, 227 F.3d 1132, 1136 n.4 (9th Cir. 2000) ("In other words, *Matter of Manrique* survives AEDPA and IIRIRA.").

[25] *Rodriguez-Ruiz* at 1379 *(quoting Lujan-Armendariz* at 746-47).

[26] *Salazar* at 227.

[27] Dillingham v. INS, 267 F.3d 996 (9th Cir. 2001) (concluding that "there is no rational basis for precluding Dillingham from eligibility for adjustment of status, while permitting aliens convicted domestically of identical offenses (and rehabilitated under similar state and federal rehabilitative statutes) to seek such relief.").

[28] *Pickering* at 623.

[29] *Rodriguez-Ruiz* at 1379.

[30] *See* 28 U.S.C. § 1738 (requiring federal courts to accord full faith and credit to state court judgments).

[31] *Rodriguez-Ruiz* at 1380.

and whether it issued an order stating that the conviction was vacated on the merits. The BIA did not look at or require evidence of the court's specific reasons for vacating the conviction.

### Matter of Sirhan

In *Matter of Sirhan*,[32] the BIA addressed the fundamental questions of whether the BIA could determine whether the California state courts had jurisdiction to enter the post-conviction orders being challenged by the Immigration and Naturalization Service, and if so, whether noncitizens who were the subject of such orders were deportable on the basis of their original convictions? The BIA determined that California criminal courts have statutory and inherent powers to modify orders, and that the continuing inherent power to vacate or correct a judgment is exercised through the writ of coram nobis.[33]

The INS contended that the post-conviction orders vacating judgments allegedly were made to circumvent deportation provisions and should be of no effect.[34] Noting that it had responded to -- and rejected -- such claims seven years before in *Matter of O'Sullivan*,[35] the BIA pointed out only that "while the inference can be drawn that the courts here were motivated by a desire to remove the aliens from liability to deportation, it is possible that *other considerations* entered into their deliberations.[36]

The BIA expressly distinguished expungements as state rehabilitative processes, which remove most of the disabilities imposed on a convicted person, from vacated judgments, in which no convictions exist. The BIA ruled definitively that "[t]here is . . . no authority holding that a conviction exists where there is no finding by a criminal court that a person is guilty of a crime. On the contrary, when a court acts within its jurisdiction and vacates an original judgment of conviction, its action must be respected."[37]

### Matter of O' Sullivan

In *Matter of O' Sullivan*,[38] Michigan statutory law provided that the court in which the trial of any indictment should be had could grant a new trial to the defendant for any cause for which by law a new trial may be granted or when it appeared to the court that justice had not been done, and on such terms or conditions as the court should direct. The BIA ruled that, absent an affirmative showing of lack of jurisdiction, the trial judge's order granting the respondent's motion for a new trial and then dismissing the cause *nolle prosequi* was effective to remove the ground of the respondent's deportability for a conviction involving addiction to unlawful use of narcotic drugs. The BIA upheld the special inquiry officer's differentiation between the state judicial act under which the respondent's conviction was set aside and the ministerial expungement procedure addressed by the Attorney General in *Matter of A-- F--*, ruling that,

> Whatever on this record the requirements of full faith and credit may be, it is evident the action of the trial court may be disregarded, as the Service urges, only if the court exceeded it power under state law, or if its action, regardless of whether proper under state law, is ineffective in the federal proceedings, because of a federal standard based upon overriding national interest. It is also evident that if the action of the trial court is given effect the deportation proceedings no longer have any basis.[39]

In *O'Sullivan*, the respondent's attorney "pointed out that considerations other than respondent's liability to deportation may have moved the court and the prosecution." The BIA acknowledged that, "However desirable we might consider a detailed record setting forth the reasons for the court's action, a judge in Michigan does not appear to be under any compulsion to provide one."[40] The BIA contrasted this situation to "a technical expungement which the Attorney General found ineffective for deportation purposes in *Matter of A- F-*."[41]

---

[32] 13 I&N Dec. 592, 594 (BIA 1970).

[33] *Id.* at 597.

[34] *Id.* at 599.

[35] 10 I&N Dec. 320 (BIA 1963).

[36] 13 I&N Dec. at 599 (emphasis added).

[37] *Id.* at 600.

[38] 10 I.&N. Dec. 320 (BIA 1963).

[39] *Id.* at 322.

[40] *Id.* at 330 (footnote omitted).

[41] *Id.* at 327.

*Matter of H-*

In *Matter of H-*,[42] the BIA addressed the effect of a subsequent action by a justice of the peace in vacating a judgment of conviction that had been entered two years earlier by the justice court of Dearborn Township, Michigan. The BIA held that the general rule was that a criminal court judgment could be attacked collaterally only for lack of jurisdiction. Looking to the authority of the justice court of Michigan, the BIA found it was a court of limited jurisdiction without common law powers, in which the justice of the peace could not alter a sentence once imposed, and could not grant a new trial. Accordingly, the BIA gave the vacation of judgment no effect in immigration proceedings

### The Reach of Comity and Full Faith and Credit

Comity is defined as "courtesy among political entities (as nations or courts of different jurisdictions)."[43] The full faith and credit clause, in either its federal constitutional form[44] or its statutory form,[45] refers to a duly attested record of judgment of a state court, which is entitled to the same effect in every court within United States as it has by law and usage in the state from which it was taken.[46] State factual determinations also are usually presumed to be correct in habeas corpus proceedings.[47]

This does not mean that a judgment entitled to full faith and credit must mean only what we would have it mean if we had written the law in that state or country, and it does not mean that the court issuing the judgment must reveal its reasons for acting, or justify its action in issuing the judgment. As the United States Supreme Court stated well over a century ago in *Voorhees v. Jackson*,[48]

There is no principle of law better settled, than that every act of a court of competent jurisdiction shall be presumed to have been rightly done, till the contrary appears: and this rule applies as well to every judgment or decree, rendered in the various stages of their proceedings, from the initiation to their completion, as to their adjudication that the plaintiff has a right of action. Every matter adjudicated, becomes a part of their record; which thenceforth proves itself, without referring to the evidence on which it has been adjudged.

In *Matter of O'Sullivan,* the BIA found that "Congress in setting up the statutory rules covering deportation has not specifically dealt with new trials, or other proceedings to reopen or otherwise affect final judgments, the results of which could affect deportability." Similarly, in interpreting Congress' 1996 amendment of the statute to provide a definition of conviction in *Matter of Roldan* and *Matter of Rodriguez,* the BIA specifically distinguished vacations of judgments on the merits from expungement or other rehabilitative measures. Similarly, it is well settled that equitable vacations of judgment obtained *solely* to avoid immigration consequence are distinct from quashed or vacated convictions under a state court's statutory or inherent powers to remedy constitutional or other legal defects in a conviction.[49]

The federal court decisions addressed in *Pickering* do not contradict these standards. For example, the First Circuit's decision in *Herrera-Inirio v. INS*[50] addressed "state rehabilitative programs that have the effect of vacating a conviction *other than* on the merits or on a basis tied to the violation of a statutory or constitutional right," finding that these "have no bearing in determining whether an alien is to be considered 'convicted' under section 1101(a)(48)(A)."[51] Moreover, the Second Circuit's decision in *United States v.*

---

[42] 9 I. & N. Dec. 460 (BIA 1961).

[43] Bryan A. Garner, Oxford University Press, Inc., *A Dictionary of Modern Legal Usage* 174 (2d ed. 2001).

[44] Constitution of the United States, Article IV, § 1.

[45] 28 U.S.C. § 1738.

[46] Adam v. Saenger, 303 U.S. 59 (1938); Pennoyer v. Neff, 95 U.S. 714 (1878).

[47] *See also* 21 U.S.C. § 2254.

[48] 35 U.S. 449, 472, 9 L. Ed. 490 (1836).

[49] *See e.g.,* Beltran-Leon v. INS, 134 F.3d 1379, 1380-81 (9th Cir. 1998) (finding that a vacated conviction remained a conviction where the state court's action, pursuant to a writ of audita querela, was undertaken "solely in order to prevent deportation and the subsequent hardship to [the alien] and his family"); *cf.* United States v. Bravo-Diaz, 312 F.3d 995 (9th Cir. 2002) (finding that audita querela and the All Writs Act are unavailable to undo a conviction in order to avoid deportation on equitable grounds where there is no legal defect in the conviction).

[50] 208 F.3d 299, 305 (1st Cir. 2000).

[51] *Id.* (emphasis added).

8 Bender's Immigration Bulletin | 1108 | July 1, 2003

*Campbell*[52] does not simply declare that INA §101(a)(48)(A) includes no provision excepting a conviction that has been vacated, but states specifically that "the vacatur order was not based on any showing of innocence or on any suggestion that the conviction had been improperly obtained."[53] Furthermore, in *Sandoval v. INS*,[54] not mentioned in the *Pickering* decision, the Seventh Circuit held that a state conviction vacated to remedy a constitutional violation is *not* a conviction under INA § 101(a)(48)(A).

Although the INS argued in *Matter of Rodriguez-Ruiz* that the conviction had been vacated to avoid removal and not due to a legal defect,[55] the BIA gave effect to the state court's order, which stated only that the conviction had been vacated on the legal merits, for two reasons. First, the BIA determined that the order was not based on an expungement or a rehabilitative statute. Second, despite the INS' allegations, the BIA invoked statutory full faith and credit authority and declined to "look behind the state court judgment to ascertain whether the court acted in accordance with its own law in vacating the conviction."[56]

In following that two-pronged approach in *Matter of Pickering*, the BIA emphasized the need for *affirmative* evidence that the quashing of Pickering's conviction was due to a legal defect in the underlying proceedings.[57] The BIA did not examine the effect under Canadian law of the court's "quashing" the conviction, and did not address whether the Canadian court's action "purports to expunge, dismiss, cancel, vacate, discharge, or otherwise remove a guilty plea or other record of guilt or conviction *by operation of a state rehabilitative statute.*"[58] Rather, the BIA noted the absence of any reference to the "law pursuant to which the conviction was vacated," and looked to the wording of the judgment to determine the basis for the court's order.[59] Finding no independent statement of the court's authority or the bases for its action, the BIA instead effectively looked behind the court's order to the respondent's affidavit to determine the court's reasons for quashing the conviction. In contrast, in *Matter of Rodriguez-Ruiz*, where the court's order simply stated that the vacation under the state statute was "on the legal merits," the court's order was given effect.[60]

The affidavit submitted by the respondent indicated both that (1) he sought relief under the Canadian Charter of Rights and Freedoms, and that (2) his controlled substance conviction was a bar to his obtaining United States residence. Although the respondent argued that the purpose of the Charter is to provide remedies for violation of Charter rights, the BIA found itself unable "to discern such a purpose from the official documentation," and concluded that, "*Under these circumstances* . . . the quashing of the conviction was not based on a defect . . . but instead appears to have been entered solely for immigration purposes."[61]

### Lesson to Learn: How to Respond to *Matter of Pickering*

Why did the BIA refuse to look behind the court's action in *Matter of Rodriguez-Ruiz* and presume in *Matter of Pickering* that the court acted solely for the immigration reason included in Pickering's affidavit? Does the decision undermine the BIA's obligation to treat the judgments of other courts with full faith and credit? Or is the distinction in *Matter of Pickering* merely an evidentiary one? How should future cases involving vacations of convictions be handled?

Early reports indicate that the government attorneys representing the BICE in various parts of the country are energetically invoking *Matter of Pickering* to challenge non-rehabilitative vacations of judgment issued by courts of competent jurisdiction, contending that the decision essentially overrules *Matter of Rodriguez-Ruiz*. Reportedly, some government attorneys have gone so far as to (inaccurately) characterize *Matter of Rodriguez-Ruiz* as a decision made by liberals who have since been swept off of Ashcroft's BIA. As should be clear to anyone who reads *Matter of Pickering*, the BIA has not effectively overruled *Rodriguez-Ruiz* in *Pickering*, but instead, has endorsed that decision, relying on it to differentiate the evidentiary circumstances presented in Pickering's case.

*Take the BIA at its word in* Matter of Pickering *and*

---

[52] 167 F.3d 84, 98 (2d Cir. 1999).

[53] *Id.* at 98.

[54] 240 F.3d 577, 583-84 (7th Cir. 2001).

[55] *Rodriguez-Ruiz* at 1379. *See also Sirhan* and *O'Sullivan*.

[56] *Rodriguez-Ruiz* at 1379-80.

[57] *Pickering* at 625.

[58] *Rodriguez-Ruiz* at 1379 (emphasis added) (citing *Roldan*, 22 I&N Dec. 512 (BIA 1999)).

[59] *Pickering* at 625.

[60] *Rodriguez-Ruiz* at 1379.

[61] *Pickering* at 625.

Matter of Rodriguez-Ruiz

As indicated above, the headnotes[62] to the decision in *Pickering* state that, "If a court vacates an alien's conviction for reasons *solely related to* rehabilitation or immigration hardships, rather than on the basis of a procedural or substantive defect in the underlying criminal proceedings, the conviction is not eliminated for immigration purposes."[63] In addition, in *Matter of Rodriguez-Ruiz*, the BIA expressly agreed with the Ninth Circuit's position that a conviction subsequently overturned on the merits cannot "serve as the basis for deportation."[64]

The fact that a violation complained of is failure to follow a state law requiring that all defendants be advised of immigration consequences does not preclude giving effect to a vacation of judgment under *Pickering* or any of the prior administrative or federal court decisions holding that a vacation of a conviction *solely* "for immigration purposes" is of no effect. It does not follow that merely because a vacation of judgment may affect immigration consequences, the court vacated the conviction solely for that purpose. In such cases, the vacation of judgment is principally, or at least equally, issued to redress violations of the state statute that are intended to govern state practice standards meant to afford fair criminal proceedings, and indeed, in many cases, such a failure to inform may render a plea involuntary.

*Affirmatively state why the vacation is warranted and should be respected*

Clearly, the record must contain affirmative evidence that the court's action was based on a defect in the proceedings or the legal merits of the case. Although this may relate to constitutional infirmities in some cases, it may also relate to statutory or procedural violations that call into question the validity or legality of the conviction. If a respondent's attorney is not involved in the case until after the vacation of conviction has been issued, then this information should be provided in the papers presented to the Immigration Judge or the BIA.

The motion to the court seeking vacation should affirmatively state the harm – apart from immigration consequences – that is or will be suffered by the defendant. This might include: misadvice or failure to provide a state statutory advisory that might render a plea unknowing or involuntary. It might involve procedural infirmities, such as a failure of proper translation or interpretation. It might involve offering a defendant a plea and time served in lieu of appointing counsel. It might otherwise go directly to the voluntariness of a plea of guilty.

*Provide authoritative constructions of terminology and foreign law*

The BIA makes clear that it found the evidence lacking in *Matter of Pickering*. The record contained no explanation of the provisions of Canadian law or the procedure followed by the court in Pickering's case. In fact, a violation of rights under the Canadian Charter may be comparable to a violation of rights under the United States Constitution. In addition, to quash means "(1) to suppress or subdue; to crush out, beat into pieces; (2) to annul; to make void (as a writ or indictment); to put an end to (as legal proceedings)."[65] This suggests, at a minimum, that the original conviction has been wiped off the record. One could argue that, in actuality, it does not exist. To the extent the BIA's decision reflects the evidence in the record before it, it does not appear that any authoritative construction of either the Canadian Charter or the judicial action to "quash" was provided.

A request or motion to a court to review the proceedings and vacate the prior judgment should set forth explicitly the legal authority for the court to take the action requested. This motion should set forth the specific terms of the statute and the scope of the court's authority. Preferably, this information also should be recited in the court's order, and the actual statute and any significant interpretive authority should be attached to the materials later presented to the BIA as appendices to an appeal or motion to reopen. If the court ordering the vacation of judgment does not write an opinion, ask the court to incorporate by reference, or attach as an appendix to the order, the statute authorizing vacation of conviction. When submitting a motion or appeal on this question to the BIA, attach not only the court's order and the actual statute, but any local authority interpreting the statute to reflect the court's judicial, rather than ministerial, authority. If available, include any case law demonstrating that the court's orders under the statute in question remedy substantive or procedural violations relating to the merits of the conviction.

---

[62] BIA headnotes are drafted and/or approved by the BIA, not an unassociated clerk or reporter, as may be true in the case of headnotes from other courts.

[63] *Pickering*.

[64] Lujan-Armendariz v. INS at 746-47.

[65] *Dictionary of Modern Legal Usage*, supra, at 725.

## Conclusion

The BIA's decision in *Matter of Pickering* contains some questionable aspects. For example, the BIA could have simply concluded that the absence of affirmative evidence of the authority under which the Canadian court quashed the conviction precluded its finding that the conviction had been properly vacated. The BIA did not need to resort to the respondent's affidavit or the court's reference to it as a basis to selectively rely on the affidavit to reach a conclusion concerning the court's purpose in quashing the conviction.

Nevertheless, this decision does not disturb the well-established principle that a conviction vacated or quashed pursuant to an act by a court that is taken within its judicial authority no longer exists. Courts are presumed to operate within the bounds of their judicial authority, and the BIA has previously extended full faith and credit to such judgments and declined to look behind the court's order to guess at the reasons for its action.

The BIA itself expressly limited the reach of this decision to the facts of this case. Such a limitation unquestionably leaves the legal principles surrounding vacations of convictions intact and invites presentation of a full and complete record covering all of the necessary bases – jurisdiction, authority, defect, merits, and at least partial non-immigration basis – of a court's judicial action. Properly vacated convictions still should be honored under the statute and the BIA case law, and, if not properly or fairly determined, petitions for review of improperly decided cases raising such issues should be taken to the federal courts.

**Author's Note:** *The analyses and suggestions offered in this column do not create a lawyer-client relationship and are not a substitute for the individual legal research and personalized representation that is essential to every case. This column does not disclose any confidential or classified information acquired in my former position as a Board Member at the Board of Immigration Appeals in the Department of Justice. Unless otherwise attributed, the insights and opinions in this column are mine alone.*